**ZUCKERMAN SPAEDER LLP**
JON R. FETTEROLF (*Pro Hac Vice*)
jfetterolf@zuckerman.com
MARGARITA K. O'DONNELL (*Pro Hac Vice*)
modonnell@zuckerman.com
IVANO M. VENTRESCA (*Pro Hac Vice*)
iventresca@zuckerman.com
1800 M Street NW, Suite 1000
Washington, DC 20036-5807
Telephone:   (202) 778-1800
Facsimile:   (202) 822-8106

**CADER ADAMS LLP**
YASMIN CADER (State Bar No. 250762)
yasmincader@caderadams.com
CHRISTINE ADAMS (State Bar No. 172876)
christineadams@caderadams.com
865 S Figueroa St, 31st Floor
Los Angeles, California 90017
Telephone: (213) 408-4081
Facsimile: (213) 408-4084

Attorneys for Defendant Yasiel Puig

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JANE ROE,<br><br>Plaintiff,<br><br>v.<br><br>YASIEL PUIG; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 2:20-cv-11064-FLA-MRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YASIEL PUIG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:   February 26, 2021<br>Time:   1:30 pm<br>Place:   Courtroom 6B<br><br>Trial Date:  None Set |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YASIEL PUIG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................3

    A.    Relevant Allegations in the Amended Complaint ..................................3

    B.    Background Relevant to Inappropriateness of Anonymous Proceedings ............................................................................................5

ARGUMENT.........................................................................................................8

I.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT BECAUSE IT FAILS TO STATE A CLAIM UNDER RULE 12(B)(6).........8

    A.    Plaintiff's Vague Allegations Fail To Allege Severe Or Extreme Emotional Distress. ............................................................................8

    B.    Plaintiff's Conclusory Allegations Regarding Damages Also Fail To State A Claim For Negligence.........................................................10

    C.    The Court Should Dismiss The Fictious Defendants Under Rule 12(b)(6). ..............................................................................................12

II.    THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 10 BECAUSE PLAINTIFF IS NOT ENTITLED TO ANONYMITY. ...................................................................................14

    A.    Plaintiff Must Clear A High Legal Bar To Establish That Anonymity Is Necessary. ...............................................................15

    B.    Plaintiff Cannot Establish That Anonymity Is Appropriate In These Circumstances.............................................................................16

    C.    Mr. Puig Is Prejudiced By Allowing Plaintiff To Proceed Anonymously. ...................................................................................18

    D.    The Public Interest Is Served By Requiring Plaintiff To Litigate Under Her Own Name. ......................................................................21

CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*4 Exotic Dancers v. Spearmint Rhino*,
  2009 WL 250054 (C.D. Cal. Jan. 29, 2009).....................................................14, 19

*Allied Trend Int'l, Ltd. v. Parcel Pending, Inc.*,
  2019 WL 4137605 (C.D. Cal. June 3, 2019).........................................................10

*Anonymous v. Lerner*,
  124 A.D.3d 487 (N.Y. App. Div. 2015) ...............................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................8

*Bass v. City of Fremont*,
  2013 WL 891090 (N.D. Cal. Mar. 8, 2013) ...........................................................9

*Doe K.G. v. Pasadena Hosp. Ass'n*,
  2019 WL 1612828 (C.D. Cal. Apr. 15, 2019)................................................14, 18

*Doe v. Ayers*,
  789 F.3d 944 (9th Cir. 2015) ...............................................................................15

*Doe v. City of Las Vegas*,
  2019 WL 2601554 (D. Nev. June 25, 2019) ...................................................17, 22

*Doe v. Del Rio*,
  241 F.R.D. 154 (S.D.N.Y. 2006)...............................................................15, 19–20

*Doe v. Delta Airlines, Inc.*,
  310 F.R.D. 222 (S.D.N.Y. 2015) ..........................................................................19

*Doe v. Family Dollar Stores, Inc.*,
  2007 WL 9706836 (N.D. Ga. Oct. 17, 2007) ........................................................21

*Doe v. JBF RAK LLC*,
  2014 WL 5286512 (D. Nev. Oct. 15, 2014) ..........................................................18

*Doe v. Kamehameha Schools*,
  596 F.3d 1036 (9th Cir. 2010) .......................................................................20–21

ii

*Doe v. NFL Enters., LLC*,
  2017 WL 697420 (N.D. Cal. Feb. 22, 2017) ........................................................22

*Doe v. Rose*,
  2016 WL 9150620 (C.D. Cal. Sept. 22, 2016) ...............................................18–19

*Doe v. Shakur*,
  164 F.R.D 359 (S.D.N.Y. 1996) .........................................................................20

*Doe v. Skyline Autos. Inc.*,
  375 F. Supp. 3d 401 (S.D.N.Y. 2019) .................................................................20

*Doe v. Solera Capital LLC*,
  2019 WL 1437520 (S.D.N.Y. Mar. 31, 2019).....................................................21

*Doe v. UNUM Life Ins. Co. of Am.*,
  164 F. Supp. 3d 1140 (N.D. Cal. 2016)...............................................................23

*Does I thru XXIII v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000) ..........................................................15–16, 18, 19

*Duronslet v. Cnty. of Los Angeles*,
  266 F. Supp. 3d 1213 (C.D. Cal. 2017) ..................................................................8

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) .................................................................................3

*Gillespie v. Civiletti*,
  629 F.2d 637 (9th Cir. 1980) ...............................................................................13

*Gould v. Orange Cty. Sheriff's Dep't*,
  2018 WL 6016161 (C.D. Cal. June 20, 2018)................................................12, 13

*Holly v. Alta Newport Hosp., Inc*,
  2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) ......................................................11

*Holly v. Alta Newport Hospital, Inc.*,
  2020 WL 1853308 (C.D. Cal. Apr. 10, 2020).................................................11–12

*Hughes v. Pair*,
  46 Cal. 4th 1035 (2009) .....................................................................................8, 9

*Jordache Enters., Inc. v. Brobeck, Phleger & Harrison*,
  18 Cal. 4th 739 (1998) ........................................................................................11

*Jordan v. Gardner*,
    986 F.2d 1521 (9th Cir. 1993) ................................................................. 18

*Kandi v. Langford*,
    2018 WL 6016974 (C.D. Cal. May 17, 2018) .................................... 12, 13

*Khan v. 7-Eleven, Inc.*,
    2014 WL 12601018 (C.D. Cal. Nov. 3, 2014) .......................................... 9

*Lawler v. Montblanc N. Am., LLC*,
    704 F.3d 1235 (9th Cir. 2013) ............................................................. 8–9

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) .................................................................. 6

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) .............................................................................. 20

*Rose v. Beaumont Indep. Sch. Dist.*,
    240 F.R.D 264 (E.D. Tex. 2007) ................................................. 17–18, 20

*Ruiz v. Gap, Inc.*,
    380 F. App'x 689 (9th Cir. 2010) .......................................................... 11

*Safari Club Int'l v. Rudolph*,
    2014 WL 12577408 (C.D. Cal. May 14, 2014) ...................................... 12

*Sam Rubin Entm't, Inc. v. AARP, Inc.*,
    2016 WL 7336554 (C.D. Cal. Dec. 15, 2016) ....................................... 13

*San Bernardino Cnty. Dep't of Pub. Soc. Servs. v. Superior Court*,
    232 Cal. App. 3d 188 (1991) ................................................................. 20

*Sawhney v. Allstate Ins. Co.*,
    1995 WL 500531 (C.D. Cal. June 23, 1995) ...................................... 9–10

*United States v. Stoterau*,
    524 F.3d 988 (9th Cir. 2008) ....................................................... 15, 21–22

*Von Saher v. Norton Simon Museum of Art*,
    592 F.3d 954 (9th Cir. 2010) .................................................................. 6

*Wong v. Jing*,
    189 Cal. App. 4th 1354 (2010) ............................................................. 12

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YASIEL PUIG'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT

**RULES**

Fed. R. Civ. P. 10................................................................................1, 3, 14, 15, 22, 23

Fed. R. Civ. P. 12(b)(6) ....................................................................................1, 3, 8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YASIEL PUIG'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT

**INTRODUCTION**

Plaintiff "Jane Roe" alleges that over two years ago, Mr. Puig forced her into a public bathroom at a Lakers game, held her down, and masturbated in front of her. In asserting these extraordinary claims against Mr. Puig, Plaintiff has filed an anonymous bare-bones First Amended Complaint ("Amended Complaint") that relies on conclusory and boiler plate language containing little detail about how Plaintiff was allegedly injured.

Dismissal is appropriate for two principal reasons. The first basis for dismissal is that the Amended Complaint contains three fundamental pleading deficiencies under Federal Rule of Civil Procedure 12(b)(6). *First*, the Amended Complaint's conclusory and insufficient allegations regarding Plaintiff's alleged injuries do not rise to the level of "severe emotional distress" for an intentional infliction of emotional distress claim. *Second*, those same conclusory allegations are also insufficient to establish actual damages, as required for a claim for negligence. *Third*, there is no basis on which Plaintiff can proceed against the ten fictitious defendants, who are grouped together without any specificity and described generally as "Does 1-10."

A second and independent basis for dismissal is that Plaintiff—who filed this suit under a pseudonym but has not yet sought the Court's permission to proceed anonymously—cannot meet her burden to establish that anonymity is appropriate. A plaintiff may use a pseudonym only in the rare case where the need for anonymity outweighs the prejudice to the defendant and the right to open courts. Although plaintiffs may, in extraordinary circumstances, obtain anonymity in private matters, Plaintiff's unusual and highly public actions during this litigation undermine any claim for anonymity. Since filing her original complaint, Plaintiff and her counsel have repeatedly publicized the case in national and local news outlets, disparaging Mr. Puig and bringing attention to the lawsuit. These statements, including by Plaintiff herself, have gone so far as to taint public perception by improperly alleging that there

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YASIEL PUIG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

are other potential claimants against Mr. Puig and advertising that the purpose of the lawsuit is to encourage others to come forward against Mr. Puig. The effect of all of these statements is to convict Mr. Puig in the court of public opinion, before Mr. Puig even has an opportunity to defend himself. And by these actions, Plaintiff has not exhibited the need for privacy that courts require from a plaintiff seeking to proceed anonymously. Notably, many of these statements were made by Plaintiff herself, either as reported to the press or in a lengthy telephone interview *in her own voice*. Plaintiff's interview is particularly notable because she is a well-known social media figure with more than twenty-five thousand followers and hours of personal video footage publicly posted on social media, some of which garner over 150,000 views.

Allowing the Plaintiff to proceed anonymously in these circumstances is not only contrary to the well-established constitutional principles of a public and open judicial system, but causes severe prejudice to Mr. Puig and significantly impacts his ability to defend himself. Anonymity gives unjustified credence to Plaintiff's allegations and suggests that Plaintiff needs protection from Mr. Puig, which is unsupported by any evidence. Moreover, anonymity also limits Mr. Puig's ability to learn information about the Plaintiff from witnesses who may come forward if Plaintiff's identity is known. Preventing other witnesses from contacting Mr. Puig with information about the Plaintiff—particularly where *Plaintiff* has made public statements stating that she wants others to come forward to help—is fundamentally prejudicial and unfair to Mr. Puig. A plaintiff should not be permitted to use a pseudonym as a sword—by attacking Mr. Puig and impacting the public's perception of Mr. Puig—and a shield, to claim anonymity. Accordingly, the Court should dismiss the Amended Complaint and require that Plaintiff refile under her true name.

# BACKGROUND[1]

## A.     Relevant Allegations in the Amended Complaint

Plaintiff alleges that this incident occurred on October 31, 2018. Am. Compl. ¶ 6. Nearly two years later, on October 29, 2020, Plaintiff filed a Complaint in the Superior Court for the State of California alleging four causes of action: (1) "assault and battery/sexual battery," (2) intentional infliction of emotional distress, (3) negligence, and (4) false imprisonment. *See* Dkt. 1-1 Plaintiff filed her Complaint anonymously as "Jane Roe." *Id.* at Preamble. In addition to Mr. Puig, Plaintiff initially named "Does 1-100" as defendants. *Id.* ¶ 1. The Amended Complaint reduced this number to "Does 1-10." Am. Compl. ¶ 1.

Plaintiff's Amended Complaint, like the first Complaint, provides few details about Plaintiff's alleged injuries. Plaintiff included the following allegations of emotional injury:

> Due to the events as alleged herein, JANE ROE has suffered severe and lasting emotional distress. Ever since the event, there has not been a day that has gone by that she has not relived the events that occurred on October 31, 2018. Even when she briefly forgets about what happened the events sneak back up on her to steal whatever moment she has for herself. She won't go to the bathroom in public places and is paranoid everywhere she goes, for fear of what may happen. She feels like her life went from a happy, driven place, to a place of fear. She feels empty on the inside. She has become more irritable and tends to snap quickly, which has caused difficulty in her relationship. Every part of her life from the moment she wakes up is tainted. She is scared, feels disgusted, and feels she has no way to undo and remove these feelings.

*Id.* ¶ 6.

---

[1] For purposes of Mr. Puig's request to dismiss the Amended Complaint under Federal Rule of Civil Procedure 10 for Plaintiff's failure to use her real name, Mr. Puig has included facts outside the Amended Complaint. Mr. Puig does not seek to use those facts in support of his request to dismiss the complaint under Rule 12(b)(6), for which all facts alleged in the Amended Complaint must be taken as true. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017).

The Amended Complaint also offers the same conclusory statements regarding Plaintiff's alleged injuries that were present in the original Complaint:

> Plaintiff was injured and hurt in her health, strength and activity, sustaining injuries to his [sic] body, and shock and injury to his [sic] nervous system and person, as well as psychological and emotional injuries, all of which said injuries have caused and continue to cause Plaintiff great physical, mental and nervous pain and suffering. Plaintiff is informed and believes and thereupon alleges that said injuries will result in some permanent disability . . . .

*Id.* ¶ 18. This same recitation is included in nearly identical fashion in each cause of action. *See also id.* ¶¶ 26, 32, 40.

The Amended Complaint, like the original Complaint, also alleges that Plaintiff has been "compelled to employ the services of hospitals, physicians, surgeons, nurses and the like, to care for and treat her, and has incurred hospital, medical, professional and incidental expenses . . . ." *Id.* ¶ 19; *see also id.* ¶¶ 27, 33, 41. There are no allegations describing the nature of the "injuries to her body," including where and how Plaintiff was allegedly physically injured. There are also no specific allegations about treatment that Plaintiff allegedly received for any alleged injuries.

The Amended Complaint names "DOES 1-10" as Defendants in every cause of action. The Amended Complaint groups the ten Does together, and contains no information or detail regarding the *identity* of these purported Doe Defendants or what they allegedly *did*. For example, in the sexual battery claim, Plaintiff alleges that Mr. Puig forced her into the bathroom and committed a battery. *Id.* ¶ 8. As to "Does 1 through 10," Plaintiff offers nothing more than the generic statement that these ten fictious defendants "assisted, aided, abetted, and/or ratified the actions of [Mr. Puig]." *Id.* ¶ 9. Elsewhere Plaintiff alleges that "[Mr. Puig] and/or Defendants Does 1 through 10, inclusive and each of them touched Plaintiff with the intent to harm and/or offend Plaintiff." *Id.* ¶ 13. Plaintiff does not attempt to clarify the discrepancy in these allegations or provide any specific facts for a specific Doe Defendant. The remaining allegations in the Amended Complaint are essentially the same: with Plaintiff vaguely

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YASIEL PUIG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

stating that "DOES 1-10" participated in the incident and including the "DOES 1-10" in the recitation of the causes of actions. *Id.* ¶¶ 1, 2, 9–20, 23–28, 31–42.

**B.  Background Relevant to Inappropriateness of Anonymous Proceedings**

The conclusory allegations in the Amended Complaint are a stark contrast to the multiple statements that Plaintiff and counsel have made to the press about Mr. Puig and the detail revealed by records of communications between Plaintiff and Mr. Puig. That evidence shows that on October 31, 2018, Plaintiff and Mr. Puig chatted over Instagram during a Los Angeles Lakers game that they both attended. During that conversation, Plaintiff sent a heart emoji to Mr. Puig, and a few seconds later, her cell phone number. *See* Ex. A-1 to Decl. of Yasiel Puig.[2]

Plaintiff alleges that at some point when she was at the game, Mr. Puig pulled her into a bathroom, touched her, pinned her down, and masturbated. Am. Compl. ¶ 8. Mr. Puig denies Plaintiff's claims that he assaulted her and that they engaged in non-consensual sexual activity. In the days following the assault, Mr. Puig messaged Plaintiff using the phone number that she had provided. Plaintiff responded via Instagram, sending Mr. Puig a heart emoji, Ex. A-1, and indicating that she wished to meet up with Mr. Puig. Over the next few months, Mr. Puig and Plaintiff exchanged occasional messages. Ex. A-2 to Decl. of Yasiel Puig. Plaintiff reached out again to Mr. Puig in February 2019. *Id.* None of those messages contain any evidence of threats or any retaliation. *See* Exs. A-1, A-2.

Nearly two years to the day of the Lakers game, Plaintiff filed this anonymous lawsuit against Mr. Puig, alleging that he assaulted her at the Lakers game on October 31, 2018. Dkt. 1. Plaintiff is a successful entrepreneur with a significant social media

_____

[2] To protect Plaintiff's identify in the publicly-filed materials in this case until this Court has made a determination regarding whether Plaintiff may proceed anonymously, Mr. Puig has filed certain exhibits with redactions. On January 21, 2021, Mr. Puig filed an Unopposed Application to File Under Seal, Dkt. 23.

following. Plaintiff has social media platforms on Instagram, Twitter, and YouTube, where she has over 25,000 followers. Exs. B-1–4 to Decl. of Margarita K. O'Donnell. On a YouTube Channel that Plaintiff manages either alone or with her partner, there are over 4,400 subscribers and regular video posts about her personal and professional life. Ex. B-4. Some of these videos, which provide hours of online content, have been viewed more than 18,000 times, and two videos have been viewed more than 145,000 times. Ex. B-4. Plaintiff also uses her social media platforms to promote her professional work, including a sponsorship with a major athleticwear company.

The filing of Plaintiff's lawsuit was followed by a barrage of media attention to the lawsuit with multiple public comments by Plaintiff and her counsel.[3] The very same day that Plaintiff filed the first Complaint, her counsel confirmed to major news outlet TMZ that the "Yasiel Puig mentioned in [Plaintiff's] lawsuit is in fact the MLB star." Ex. C.[4] The next day, October 30, 2020, Plaintiff and her counsel continued their press offensive. Plaintiff reported to TMZ, *in her own words* but using the anonymous pseudonym, "I was in complete shock because it all happened so fast" and "[i]t was terrifying and humiliating and I don't want anyone else to have to suffer the same kind of trauma that I'm experiencing." *Id.*

According to two other news outlets, which reported on the Complaint on October 30, "Roe said she is coming forward and filing the lawsuit because she believes she is not Puig's only such victim, and suspects more women

---

[3] Relevant publicly available news articles, including Plaintiff's video interview, and social media pages are attached as Exhibits C through I. Mr. Puig requests that the Court take judicial notice of those materials. The Court may take judicial notice "to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013) (quoting *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010)).

[4] https://www.tmz.com/2020/10/29/yasiel-puig-sued-alleged-sexual-battery-false-imprisonment-staples-center-lakers-game/.

have suffered from similar assaults." Exs. D, E.[5] This statement was attributed directly to "Roe" and not to her counsel. The Facebook page for Plaintiff's counsel's then-law firm also publicized the lawsuit. The day after filing the lawsuit, the law firm posted a link to an NBC Los Angeles news article, stating that "[i]n a recent interview with NBC Los Angeles, Attorney Taylor Rayfield commented on our legal advocacy for our client who alleges she was sexually assaulted in 2018 by Yasiel Puig, former Los Angeles Dodgers outfielder." Ex. F.

On November 2, 2020, Plaintiff gave a full interview—this time *using her own voice*—with yet another news outlet. Exs. I (video), G[6]. Plaintiff's voice was not distorted or otherwise concealed during this interview, making it highly likely that any of her thousands of YouTube or Instagram followers would recognize her. Plaintiff spoke at length about the alleged incident, adding assertions not present in her Complaint, such as that Mr. Puig said "come on baby and weird things like that." *Id.* The anchor for that interview also reported that Plaintiff stated that she believes there are "other victims out there" and that "she's hoping that this would pave the way for [others] to come forward." *Id.*

Plaintiff's counsel, who was also interviewed in this report, drew attention to Mr. Puig's status as a professional baseball player when she stated, "so many times, these people think that because they are some big star that they are able to get away and do these things to others. We know that there are other victims." *Id.* Plaintiff's counsel went so far as to say that Mr. Puig "admit[ted] that something happened"—implying that Mr. Puig confessed that something inappropriate took place—and that

---

[5] https://www.fox35orlando.com/news/woman-sues-former-dodger-outfielder-yasiel-puig-for-alleged-sexual-assault (Ex. D); https://www.nbclosangeles.com/news/sports/woman-sues-former-dodger-outfielder-for-alleged-sexual-assault/2452225/ (Ex. E).

[6] Exhibits G and I are both also available at https://ktla.com/news/local-news/woman-accuses-former-dodgers-player-yasiel-puig-of-sexual-assault/.

Mr. Puig was "obsessed" with Plaintiff. *Id.* The news report reiterated Plaintiff's statement that they were "encouraging others to come forward." *Id.*

News outlets in the days after the lawsuit also noted that Plaintiff was using a pseudonym to "protect her identity." Ex. C; *see also* Ex. H[7] ("In court documents the woman, identified as Jane Roe to protect her identity . . . .").

## ARGUMENT

### I.   The Court Should Dismiss The Amended Complaint Because It Fails To State A Claim Under Rule 12(b)(6).

The Court should dismiss the intentional infliction of emotional distress (IIED) claim, the negligence claim, and Does 1 through 10 from the Amended Complaint for failure to state a claim under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Under *Iqbal*, "naked assertions devoid of further factual enhancement" cannot satisfy a plaintiff's burden. *Id.* (citation omitted). In addition, "a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). The application of those principles in *Iqbal* led to dismissal, as they should here.

### A.   Plaintiff's Vague Allegations Fail To Allege Severe Or Extreme Emotional Distress.

Plaintiff's Second Cause of Action alleges an IIED claim. Am. Compl. ¶¶ 21–29. An IIED claim requires that Plaintiff adequately plead the "severe or extreme emotional distress" that she endured. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). To satisfy this element, plaintiff must clear a "high bar." *Duronslet v. Cnty. of Los Angeles*, 266 F. Supp. 3d 1213, 1220 (C.D. Cal. 2017) (quoting *Hughes*, 46 Cal. 4th at 1051). Severe emotional distress "means 'emotional distress of such substantial

---

[7] https://www.dailymail.co.uk/news/article-8896939/Yasiel-Puig-accused-sexual-battery-woman.html.

quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1246 (9th Cir. 2013) (quoting *Hughes*, 46 Cal. 4th at 1051). The Ninth Circuit has held that "[a]nxiety, sleeplessness, [and] upset stomach . . . [c]learly . . . do not rise to the level of 'severe.'" *Id.*; *see also Hughes*, 46 Cal. 4th at 1051 (holding, in sexual harassment case, that plaintiff's "discomfort, worry, anxiety, upset stomach, concern, and agitation" were not sufficiently "severe").

Plaintiff has failed to adequately plead severe or extreme emotional distress. She first alleges, in paragraph 6 as part of the "general allegations" of the Amended Complaint that the alleged incident has caused her to "become more irritable," and that she "tends to snap," "is scared [and] feels disgusted," and feels "paranoid everywhere she goes." Am. Compl. ¶ 6. Such allegations do not satisfy the "high bar" of pleading facts showing "severe" emotional distress. The Ninth Circuit in *Lawler*, the California Supreme Court in *Hughes*, and California federal district courts have rejected similar allegations of distress. *See Lawler*, 704 F.3d at 1246; *Hughes*, 46 Cal. 4th at 1051; *Bass v. City of Fremont*, 2013 WL 891090, at *7 (N.D. Cal. Mar. 8, 2013) (holding, in excessive force case, that allegations of "fear, terror, anxiety, humiliation, embarrassment, anger, indignity, loss of freedom, [and] a sense of helplessness" did not adequately plead severe emotional distress); *Khan v. 7-Eleven, Inc.*, 2014 WL 12601018, at *6 (C.D. Cal. Nov. 3, 2014) ("The Court finds that simply pleading the phrases 'severe emotional fear and suffering' and 'persistent paranoia' is insufficient to satisfy the 'severe emotional distress' prong for an IIED claim.").

The allegations that Plaintiff includes in the recitation of the IIED claim itself (Am. Comp. ¶¶ 21–29) are similarly insufficient. There, Plaintiff alleges—without any additional factual support or detail—that "Plaintiff suffered humiliation, mental anguish, and emotional and physical distress." *Id.* ¶ 25. This sentence is nothing more than a generic allegation that merely reiterates the elements of an IIED claim. Therefore, in deciding whether Plaintiff has adequately alleged "severe emotional

distress," the Court must set aside this generic allegation altogether. *See Sawhney v. Allstate Ins. Co.*, 1995 WL 500531, at *5 (C.D. Cal. June 23, 1995) (dismissing where "Plaintiffs do little more than conclusorily allege that they suffered extreme emotional distress without stating any facts to support these allegations").

Plaintiff's second assertion of a laundry list of vague and catch-all injuries is also insufficient to state a claim for IIED. Am. Compl. ¶ 26. (This exact same recitation is included in each of the four causes of action. *Id.* ¶¶ 18, 32, 40.) In the subsequent paragraph, Plaintiff alleges that she was "injured and hurt in her health, strength and activity, sustaining injuries to her body, and shock and injury to her nervous system and person, as well as psychological and emotional injuries, all of which said injuries have caused and continue to cause Plaintiff great physical, mental, and nervous pain and suffering." *Id.* ¶ 26. These allegations are insufficient to state a claim for IIED.

A recent Central District decision dismissed an IIED claim based on virtually identical allegations. *Allied Trend Int'l, Ltd. v. Parcel Pending, Inc.*, 2019 WL 4137605, at *4 (C.D. Cal. June 3, 2019). In *Allied Trend*, the plaintiff alleged that defendant's conduct "injured her in health, strength, and activity, sustaining substantial shock and injury to her nervous system and person" and that she suffered "great mental distress, pain and suffering." *Id.* These allegations were "too vague and diffuse to be plausible," and "even if plausible," they were not "sufficient under California law to show severe distress." *Id.* The *Allied Trend* plaintiff also failed to "allege that she sought any treatment." *Id.* Plaintiff's allegations of damages are virtually indistinguishable from those in *Allied Trend* and the Court should dismiss the IIED claim.

## B. Plaintiff's Conclusory Allegations Regarding Damages Also Fail To State A Claim For Negligence.

Plaintiff's Third Cause of Action alleges a claim for negligence on the basis that "[Mr. Puig] and Does 1-10 failed to use ordinary care when he entered the

restroom . . . and proceeded to masturbate in front of Plaintiff . . . and negligently blocked Plaintiff's ability to leave." Am. Compl. ¶ 31. Plaintiff then relies on the same generic recitation of vague and unspecific injuries to establish the damages required for a negligence claim, stating that Plaintiff was:

> injured and hurt in her health, strength and activity, sustaining injuries to her body, and shock and injury to her nervous system and person, as well as psychological and emotional injuries, all of which said injuries have caused and continue to cause Plaintiff great physical, mental, and nervous pain and suffering. Plaintiff is informed and believes and thereupon alleges that said injuries will result in some permanent disability . . . .

*Id.* ¶ 32.

Negligence requires a showing of "actual damage." *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 691 (9th Cir. 2010) ("California has long held that it is fundamental that a negligent act is not actionable unless it results in injury to another." (citation omitted)). Under California law, "nominal damages, speculative harm, and the mere threat of future harm are not actual injury." *Jordache Enters., Inc. v. Brobeck, Phleger & Harrison*, 18 Cal. 4th 739, 743 (1998). Thus, to sustain a negligence claim, Plaintiff must proffer more than the generalized and conclusory allegations of damages that are set forth in the Amended Complaint.

The Central District's recent decision in *Holly v. Alta Newport Hospital, Inc.*, 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020), is instructive. There, the plaintiff alleged that "she suffered 'emotional harm and distress and has been injured in her mind and body'" and she "was 'injured in her health, strength and activity, sustaining injury to her nervous system and person, all of which injuries have caused and continue to cause [Holly] great mental, physical, emotional and nervous pain and suffering.'" *Id.* In addition, the plaintiff asserted that she "experienced fear of identity theft, embarrassment, anxiety, emotional pain and upset." *Id.* The district court held that "[t]hese conclusory and vague allegations are not sufficient to establish that Holly suffered actual damages to support her . . . negligence claim[]." *Id.*; *see also Holly v.*

11

Case No. 2:20-cv-11064-FLA-MRW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YASIEL PUIG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Alta Newport Hosp., Inc*, 2020 WL 6161457, at \*4 (C.D. Cal. Oct. 21, 2020) (dismissing amended complaint in same action for same conclusory damage allegations).

Plaintiff's allegations of damages are essentially indistinguishable from those in *Holly. See* Am. Compl. ¶¶ 6, 32. Plaintiff has alleged that she was "injured and hurt in her health, strength and activity, sustaining injuries to her body, and shock and injury to her nervous system and person, as well as psychological and emotional injuries, all of which said injuries have caused and continue to cause Plaintiff great physical, mental, and nervous pain and suffering." *Id.* ¶ 32. In an earlier paragraph in the Amended Complaint, Plaintiff also asserts vague claims of being "paranoid" and "irritable." *Id.* ¶ 6. Those allegations, like those in *Holly*, are also insufficient to sustain a claim for negligence.

In addition, to the extent Plaintiff's negligence damages rely only on emotional distress damages, her claim fails for the same reasons as the IIED claim. Where a negligence claim is based on emotional injury with no accompanying physical injury, a plaintiff must plead the same severe emotional distress as under IIED. *See Safari Club Int'l v. Rudolph*, 2014 WL 12577408, at \*9 (C.D. Cal. May 14, 2014) (citing *Wong v. Jing*, 189 Cal. App. 4th 1354, 1377–78 (2010)). For the reasons above, those allegations do not adequately plead severe emotional distress.

**C.   The Court Should Dismiss The Fictious Defendants Under Rule 12(b)(6).**

Plaintiff's Amended Complaint is peppered with references to "Does 1 through 10," but contains no individualized or specific factual allegations about those fictious defendants, much less any that would provide even a clue about their identity or their alleged role in the incident. *See supra* 4–5. Although there are instances where a plaintiff can properly include fictious defendants until she determines their identity through discovery, a complaint must nonetheless justify a claim against unknown fictious defendants with sufficient individualized factual allegations. *See Gould v.*

*Orange Cty. Sheriff's Dep't*, 2018 WL 6016161, at *12 (C.D. Cal. June 20, 2018); *Kandi v. Langford*, 2018 WL 6016974, at *11 (C.D. Cal. May 17, 2018). The Amended Complaint does not satisfy that standard, and "Does 1-10" must be dismissed from the Amended Complaint.

The "use of fictitiously named parties is generally disfavored in federal court." *Langford*, 2018 WL 6016974, at *11 (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Where a plaintiff nonetheless decides to include fictitious defendants in her complaint, she must make "individualized allegations" about those defendants to avoid dismissal. *Id.* at *11. "[N]ot know[ing] the name of some defendants" does not excuse a plaintiff from the requirement that she must "make individualized allegations about each such unnamed defendant and may not merely allege that an indistinguishable group . . . caused [her] injuries." *Gould*, 2018 WL 6016161, at *12.

The Amended Complaint alleges no information about the identity of the Does. *See supra* 4. Moreover, the Amended Complaint contains no specific factual allegations about the actions of any of the individual Does. *Id.* Instead, "Does 1-10" are consistently grouped together in allegations that offer nothing more than a recitation of the elements of the claims or cursory generalizations about the Does. *Id.* Furthermore, these vague allegations—including some that contradict each other as to how many individuals allegedly touched her, *id.*—do not provide Mr. Puig with fair notice as to the claims against him. Accordingly, the allegations against the Doe defendants are insufficient to state a claim and require dismissal of the ten fictious defendants. *See Sam Rubin Entm't, Inc. v. AARP, Inc.*, 2016 WL 7336554, at *9 (C.D. Cal. Dec. 15, 2016) (conclusory allegations that "the 'true names and capacities' of Does 1-10 are 'presently unknown to Plaintiff . . . [but] each of the Doe defendants is in some way responsible for the damages herein alleged'" required dismissal of fictious defendants); *Langford*, 2018 WL 6016974, at *11 (dismissing Doe defendants where "plaintiff has not made individualized allegations about any of the Doe Defendants").

13

## II.    The Amended Complaint Should Be Dismissed Under Rule 10 Because Plaintiff Is Not Entitled To Anonymity.

The Court must expressly grant a plaintiff permission to proceed anonymously because a plaintiff does not simply obtain the unusual status of proceeding anonymously merely by filing a complaint under a pseudonym. *See 4 Exotic Dancers v. Spearmint Rhino*, 2009 WL 250054, at *1 (C.D. Cal. Jan. 29, 2009) ("Plaintiffs could proceed pseudonymously only by seeking leave to do so."). Here, Plaintiff has not sought permission from this Court to proceed anonymously and therefore the Court has not yet had the opportunity to determine whether it is appropriate for Plaintiff to remain anonymous in this judicial proceeding. It is true that Plaintiff's claims include allegations regarding sexual assault, and that courts have granted anonymity in cases where a plaintiff makes a claim of sexual assault. *See, e.g.*, *Doe K.G. v. Pasadena Hosp. Ass'n*, 2019 WL 1612828, at *1 (C.D. Cal. Apr. 15, 2019). However, the circumstances in this case—including Plaintiff's active use of the media in this litigation and the prejudice to Mr. Puig—are readily distinguishable.

The circumstances demonstrate that Plaintiff's own actions following the filing of the complaint—including litigating this case in the press and making multiple public statements about the purpose of the lawsuit against Mr. Puig and the alleged events—undercut any claims about the need for anonymity in this case. At the same time, proceeding anonymously causes significant prejudice to Mr. Puig, who cannot defend himself against the implications that Plaintiff needs unusual protections. Anonymity creates an uneven playing field, where Plaintiff uses the press to seek additional witnesses, while Mr. Puig is deprived of access to the thousands of people who know Plaintiff as a popular social media figure, and who may be able to offer relevant information regarding her claims. Moreover, anonymity is inconsistent with the constitutional principles underpinning the public nature of judicial proceedings. Thus, the Court should dismiss the Amended Complaint and require that if Plaintiff wishes to proceed with this litigation, she re-file her complaint under her true name.

### A.  Plaintiff Must Clear A High Legal Bar To Establish That Anonymity Is Necessary.

Federal Rule of Civil Procedure 10(a) does not authorize anonymity. It requires that "[e]very pleading" in federal court "name all the parties." Fed. R. Civ. P. 10(a). Although the Federal Rules do not provide for anonymous plaintiffs, the Ninth Circuit allows anonymity in the "exceptional case," emphasizing that the "deviation from our normal practice remains the rare exception rather than the rule." *Doe v. Ayers*, 789 F.3d 944, 946 (9th Cir. 2015); *see also United States v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008) ("As a general rule, the identity of the parties in any action, civil or criminal, should not be concealed except in an unusual case, where there is a need for the cloak of anonymity.") (citation omitted). The rarity of proceeding anonymously is not only due to the absence of express authority in the Federal Rules, but also because "Plaintiffs' use of fictitious names runs afoul of the public's common law right of access to judicial proceedings." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). That right "is supported by the First Amendment." *Doe v. Del Rio*, 241 F.R.D. 154, 156 (S.D.N.Y. 2006).

As a result, the Ninth Circuit thus directs that a plaintiff satisfy a "high bar for proceeding under a pseudonym." *Ayers*, 789 F.3d at 946 (concluding that the case was an "unusual" one where anonymity was appropriate because of "Petitioner's truly extreme history and expert evidence," including "graphic evidence regarding repeated sexual assault in prison" and "credible evidence that he would likely be subjected to more violence if his name was revealed"). To clear that high bar, a plaintiff must show that her "need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing [her] identity." *Advanced Textile*, 214 F.3d at 1068. In *Advanced Textile*, the Ninth Circuit recognized three situations where a plaintiff may reach this "high bar:" "(1) when identification creates a risk of retaliatory physical or mental harm, (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature; and (3) when the anonymous party is compelled

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YASIEL PUIG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution." *Id.* at 1068 (citations omitted).

**B.     Plaintiff Cannot Establish That Anonymity Is Appropriate In These Circumstances.**

Plaintiff cannot carry her burden under any of these limited exceptions. First, there is no evidence of any risk of retaliation. Plaintiff communicated for months with Mr. Puig following the alleged incident in October 2018, including asking Mr. Puig where he was and sending him heart emojis. Exs. A-1, A-2. Even as late as February 2019, Plaintiff voluntarily contacted Mr. Puig. Ex. A-2. There is no evidence of any retaliation during this time or at any time. In fact, the last time Mr. Puig saw Plaintiff was on October 31, 2018, and the two have not communicated since nearly two years ago. Second, there is no evidence that Plaintiff has been compelled to admit an intention to engage in illegal conduct. Accordingly, these factors do not weigh in favor of allowing Plaintiff to use a fictitious name.

As for the third scenario, Plaintiff's own actions demonstrate that anonymity is not appropriate "to preserve privacy in a matter of sensitive and highly personal nature." *Advanced Textile*, 214 F.3d at 1068. Plaintiff has intentionally placed this case, and her allegations, in the public eye, forfeiting any claim to anonymity.

Beginning with the filing of the Complaint, Plaintiff through her actions has deliberately put this case, Plaintiff, and Mr. Puig in the public eye. Plaintiff gave a videotaped phone interview to the press, *using her own voice*. Ex. I.[8] That interview guaranteed that those who know her, including her thousands of social media followers, would be able to recognize her. *See supra* 6–7. The interview contained assertions that tarnished the image of Mr. Puig and were not even part of the Complaint. Ex. I. Plaintiff also apparently gave a written statement to the media in which she expanded upon the allegations in her complaint and Plaintiff and her

---

[8] https://ktla.com/news/local-news/woman-accuses-former-dodgers-player-yasiel-puig-of-sexual-assault/.

counsel sought to publicize the case seemingly for the purpose of encouraging new lawsuits to be filed or alleged witnesses to come forward against Mr. Puig. Exs. C-I.

Plaintiff has also sought to maximize the publicity of this case. She has broadcasted this story to national and local news organizations, both in print and video, and over social media. Ensuring that the story received a broad audience, Plaintiff's counsel confirmed to TMZ that this lawsuit involved a high-profile celebrity athlete. Counsel stated that "[t]he defendant is a professional athlete who used his celebrity status to intimidate and sexually assault a stranger [and] [h]is brazen attack has caused emotional and psychological injuries to our client which have severely impacted her life." Ex. C. And counsel—on camera during the telephone interview with Plaintiff—went so far as to suggest that Mr. Puig "admitted" that his conduct was wrongful. Ex. I. That statement is not supported by any evidence.

In understanding how a plaintiff's assertive press strategy undercuts a claim for anonymity, *Doe v. City of Las Vegas*, 2019 WL 2601554, at *3 (D. Nev. June 25, 2019) is instructive. There, the court denied anonymity in a sexual harassment case in which the plaintiff's employer "permitted and participated" in distributing and showing a sexually explicit video of her at her work. *Id.* Defendants argued that the plaintiff should not proceed anonymously because she had "undertook to put her case in the public eye." *Id.* at *1. The district court agreed, explaining that the plaintiff's "actions do not indicate the desire to maintain privacy," as is required where a plaintiff seeks anonymity on this ground, including because she "purposefully availed herself of news media broadcasting the case and putting it in the public eye" in a variety of ways. *Id.* at *3. Even though the plaintiff had not used her name in the media, she "facilitated others' ability to learn of the existence of the case." *Id.* This factor weighed so heavily against anonymity that the court denied anonymity without a showing of prejudice by the defendants. *Id.* at *3. Other courts similarly deny anonymity when a plaintiff presses their case in the media. *See Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D 264, 268 (E.D. Tex. 2007) (finding it significant in

17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YASIEL PUIG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

denying anonymity that plaintiff had "participat[ed] in an interview as part of the local newspaper's article . . . help[ing] to promote media coverage of the events"); *Anonymous v. Lerner*, 124 A.D.3d 487, 487–88 (N.Y. App. Div. 2015) (no anonymity in case involving transmission of genital herpes where plaintiff "report[ed] her story to the media before serving defendant with process").

Giving multiple statements and interviews to the media, both in person and through counsel, reveals a desire to publicize this lawsuit and not to maintain anonymity. *See Doe v. JBF RAK LLC*, 2014 WL 5286512, at *4 (D. Nev. Oct. 15, 2014) (denying anonymity in sexual assault case where court found plaintiff's credibility was undermined). These deliberate press efforts distinguish this case from those sexual assault cases in which courts have granted anonymity. *See Pasadena Hosp.*, 2019 WL 1612828, at *1 (anonymity appropriate where there are multiple sexual assaults); *see also Jordan v. Gardner*, 986 F.2d 1521, 1525 & n.4 (9th Cir. 1993) (en banc) (using plaintiffs' initials in prison body-search case where there were "shocking histories of verbal, physical, and, in particular, sexual abuse endured by many of the inmates"). Unlike in those cases, Plaintiff here repeatedly and unfortunately used the shield of anonymity to litigate the case in the press and disparage Mr. Puig. For these reasons, Plaintiff fails to satisfy the high bar for anonymity.

**C.   Mr. Puig Is Prejudiced By Allowing Plaintiff To Proceed Anonymously.**

In determining whether anonymity is appropriate, this Court must also consider the prejudice to Mr. Puig. *Advanced Textile*, 214 F.3d at 1068–69. Here, the substantial prejudice to Mr. Puig from Plaintiff's use of a pseudonym requires Plaintiff to use her real name.

First, allowing Plaintiff to proceed anonymously gives unwarranted credence to Plaintiff's allegations and casts an unjustifiable shadow of guilt over Mr. Puig. *See Doe v. Rose*, 2016 WL 9150620, at *3 (C.D. Cal. Sept. 22, 2016). As the *Rose* court

18

explained, a court's permission for a plaintiff to use a pseudonym at trial communicates an "overt suggestion" about the "harm the alleged encounter with the defendant has caused the plaintiff." *Id.* at *3 (citation omitted). The pseudonym gives a plaintiff's "claims greater stature or dignity." *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015) ("Were Doe permitted to proceed on a no-name basis, one or more jurors might conclude that she, for unknown reasons, merited extra-solicitous treatment."). For that reason, courts do not permit a plaintiff to proceed anonymously at trial. *See id.*; *Rose*, 2016 WL 9150620 at *3.

That same prejudice is present before trial. If the Court allows Plaintiff to proceed anonymously, Mr. Puig would be forced to litigate—including seeking out witnesses, conducting discovery, and defending himself—under an unfair and prejudicial cloud of suspicion that the plaintiff required protection from him. Of note, several of the articles about the lawsuit have stated that Plaintiff is using a pseudonym to "protect her identity." Ex. C[9]; *see also* Ex. H[10] ("In court documents the woman, identified as Jane Roe to protect her identity . . . ."). This purported justification leads to the unfair suggestion that anonymity is necessary to protect Plaintiff against Mr. Puig, when there is no indication that Plaintiff's alleged fear would be a basis for granting anonymity. This prejudice is particularly significant because Plaintiff's lawsuit has been widely reported.

Second, Plaintiff's anonymity would disadvantage Mr. Puig in the litigation. "The Ninth Circuit has acknowledged that the use of pseudonyms can impair defendants' ability to mount a defense." *4 Exotic Dancers*, 2009 WL 250054, at *3 (citing *Advanced Textile*, 214 F.3d at 1072). In this case, Plaintiff's anonymity deprives Mr. Puig and the court "of the chance that a yet unknown witness would,

---

[9] https://www.tmz.com/2020/10/29/yasiel-puig-sued-alleged-sexual-battery-false-imprisonment-staples-center-lakers-game/.

[10] https://www.dailymail.co.uk/news/article-8896939/Yasiel-Puig-accused-sexual-battery-woman.html.

upon learning the fact about the case, know to step forward with valuable information about the events or the credibility of the witnesses." *Del Rio*, 241 F.R.D. at 159 ("Public trials come to the attention of key witnesses unknown to the parties.") (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 596–97 (1980) (Brennan, J., concurring)); *see also San Bernardino Cnty. Dep't of Pub. Soc. Servs. v. Superior Court*, 232 Cal. App. 3d 188, 202 (1991) ("open proceedings discourage perjury and might encourage other witnesses to come forward which in turn leads to more accurate fact-finding").

This consideration is significant here because Plaintiff is a well-known person who regularly posts information about her personal life online and who has tens of thousands of social media followers, and thus it is likely that, were the general public to know her identity, Mr. Puig would be able to obtain new information that would be relevant to his defense. Anonymity makes it impossible for those potential witnesses to learn about the suit and come forward with information that may be relevant for the defense, including information about Plaintiff's claims regarding her injuries. *See Doe v. Skyline Autos. Inc.*, 375 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) (stating that plaintiff's anonymity makes it "more difficult to obtain witnesses and witness testimony"). This is particularly unfair because Plaintiff has explicitly sought to publicize this lawsuit to "pave the way for [others] to come" and "encourage" others to file suit against Mr. Puig. *See supra* 7. There is no possibility, meanwhile, that Mr. Puig would learn of any witnesses with information regarding Plaintiff's claims. This disparate and fundamentally unfair approach not only prejudices Mr. Puig, but magnifies the cloud of suspicion under which he must defend himself in this case.

Third, Mr. Puig's reputation has been severely prejudiced by Plaintiff's anonymity, in particular her use of the press. As a general matter, it is inappropriate to require defendants to "defend themselves in the public arena, while [Plaintiff] could hurl accusations at them from behind a 'cloak of anonymity.'" *Rose*, 240 F.R.D 267–68 (quoting *Doe v. Shakur*, 164 F.R.D 359, 361 (S.D.N.Y. 1996)); *see also Doe v.*

20

*Kamehameha Schools*, 596 F.3d 1036, 1045 n.7 (9th Cir. 2010) ("the district court did not abuse its discretion by finding that defendants would have been hindered in their efforts . . . in defending the high-profile case in the media, if not in the courts" if plaintiffs were granted anonymity).

Here, the reputational damage goes beyond the allegations in the Complaint, and extends to the multiple press appearances across national and local news outlets that disparage Mr. Puig and threaten his future professional opportunities as he is currently a Major League Baseball free agent seeking a contract with an MLB Club. Although Plaintiff could have filed her Complaint against Mr. Puig as an anonymous defendant, she chose not to do so, as is her prerogative. She publicly named Mr. Puig, confirmed to the media that Mr. Puig is a high-profile athlete, gave statements and interviews about the alleged conduct, and suggested to the general public that there were other women who should come forward against Mr. Puig. *See supra* 6–7. These statements were intended to publicize Plaintiff's accusations against Mr. Puig and give them unwarranted credence. There is no justifiable reason why making these statements was necessary for Plaintiff to litigate her case. Those actions, asserted behind the cloak of anonymity, prejudiced Mr. Puig. *See Doe v. Solera Capital LLC*, 2019 WL 1437520, at *7 (S.D.N.Y. Mar. 31, 2019) (highlighting "the fundamental unfairness of [defendants] sustaining reputation damage while Doe stands behind the cloak of anonymity causes prejudice to Defendants"); *Doe v. Family Dollar Stores, Inc.*, 2007 WL 9706836, at *3 (N.D. Ga. Oct. 17, 2007) (denying anonymity in sexual assault and harassment case because it "is only equitable that, if Plaintiffs are allowed to bring damaging and highly-embarrassing charges against Defendants using their true names, they be required to identify themselves as well").

### D.   The Public Interest Is Served By Requiring Plaintiff To Litigate Under Her Own Name.

Finally, in determining whether anonymity is appropriate, the Ninth Circuit looks at the public's interest in "hav[ing] a right to know who is using their courts."

*Stoterau*, 524 F.3d at 1013 ("[i]dentifying the parties to the proceeding is an important dimension of publicness") (citations omitted). The public interest is served by Plaintiff using her real name. Plaintiff has already ensured that this case garners maximum media attention by confirming that Mr. Puig is a celebrity, providing statements to multiple news outlets, giving an audio interview using her real voice, and prejudicially stating to the general public that others should come forward against Mr. Puig. Given the publicity of this case from Plaintiff's own making, the public has an interest in knowing who is bringing this suit against Mr. Puig.

*City of Las Vegas* is again instructive. That court held that where a plaintiff has "put the case in the public's eye," that action "undermin[es] the need to proceed anonymously and strengthen[s] the public's interest in the case." 2019 WL 2601554, at *4. The "openness in judicial proceedings fosters the press' ability to research the litigants' backgrounds (which may bear on matters pertaining to credibility) and the potential motivations for suing," which "may be central to the public's broader understanding of the case." *Id.* The same fundamental principles are at issue in this matter, and allowing Plaintiff here "to proceed without using her true name undermines these important values." *See id.*

Plaintiff and her counsel have made clear to the press and to the general public that they are using this suit to encourage others to file suit against Mr. Puig. The public has a right to know the identity of the person who is encouraging this approach. *See Doe v. NFL Enters., LLC*, 2017 WL 697420, at *2 (N.D. Cal. Feb. 22, 2017) ("[O]ur courts belong to the people, and the public and press have a right to look over our shoulders to see how their court system is being used. This consideration counsels in favor of requiring true names of those who seek to sue others.").

In conclusion, a grant of anonymity is a rare exception to the public nature of legal proceedings, even when the allegations involve sexual assault. In this case, the public interest requires Plaintiff to use her name. And because all three factors demonstrate that Plaintiff is not entitled to anonymity, the Court should grant Mr.

Puig's motion to dismiss the Amended Complaint under Rule 10. *See, e.g.*, *Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1143 (N.D. Cal. 2016) (granting motion to dismiss under Rule 10(a) for failure to use real name). If the Court gives Plaintiff leave to file a second amended Complaint, it should compel Plaintiff to use her true name.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Amended Complaint.

DATED:  January 22, 2021                     Respectfully submitted,


By: *<u>/s/ Margarita K. O'Donnell</u>*
Jon R. Fetterolf (*Pro Hac Vice*)
Margarita K. O'Donnell (*Pro Hac Vice*)
Ivano M. Ventresca (*Pro Hac Vice*)
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036

Yasmin Cader (State Bar No. 250762)
Christine Adams (State Bar No. 172876)
CADER ADAMS LLP
865 S Figueroa St, 31st Floor
Los Angeles, California 90017

*Attorneys for Yasiel Puig*

Case No. 2:20-cv-11064-FLA-MRW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YASIEL PUIG'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January 2021, I caused a true and correct copy of the foregoing Memorandum of Points and Authorities in Support of Defendant Yasiel Puig's Motion to Dismiss First Amended Complaint and accompanying declaration and exhibits to be served via electronic mail, ECF, and mail, on the following:

Taylor Rayfield
MANLY, STEWART, AND FINALDI
19100 Von Karman Avenue
Suite 800
Irvine, California 92612

/s/ *Margarita K. O'Donnell*
Margarita K. O'Donnell