1   ALAN JACKSON (State Bar No. 173647)
    CALEB MASON (State Bar No. 246653)
2   WERKSMAN JACKSON & QUINN, LLP
3   888 W. 6th St. Fourth Floor
    Los Angeles, CA 90017
4   213-688-0460
5     *ajackson@werksmanjackson.com*
      *cmason@werksmanjackson.com*
6
7   REED ALJIAN (State Bar No. 211010)
    DAILY ALJIAN LLP
8   100 Bayview Circle, Suite 5500
    Newport Beach, CA  92660
9   Telephone:  949.861.2524
10    *ra@dallp.com*
11
    Attorneys for Defendant and
12  Counter-Complaint YASIEL PUIG

13

**UNITED STATES DISTRICT COURT**

14

**CENTRAL DISTRICT OF CALIFORNIA**

15

**WESTERN DIVISION**

16

17

| | |
|---|---|
| JANE ROE, | CASE NO. 2:20-cv-11064-FMO-MRW |
| Plaintiff, | **DEFENDANT YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS AGAINST PLAINTIFF JANE ROE FOR DAMAGES** |
| v. | |
| YASIEL PUIG; and DOES 1-10, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | Action Filed:  Oct. 29, 2020<br>FAC Filed:  Dec. 30, 2020<br>Trial date:  May 3, 2022 |

27

28

COMES NOW Defendant YASIEL PUIG ("PUIG") who amends his answer and counterclaims to Plaintiff JANE ROE's First Amended Complaint in Case No. 2:20-cv-11064-FMO-MRW as follows:

**ANSWER**

1.   In response to Paragraph 1 of the First Amended Complaint, PUIG lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein, and therefore denies them.

2.   In response to Paragraph 2 of the First Amended Complaint, PUIG lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein, and therefore denies them.

3.   In response to Paragraph 3 of the First Amended Complaint, PUIG lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein, and therefore denies them.

4.   In response to Paragraph 4 of the First Amended Complaint, PUIG denies the allegations.

5.   In response to Paragraph 5 of the First Amended Complaint, PUIG admits that he was in Los Angeles County on October 31, 2018. PUIG denies the remaining allegations therein, including any assertion that he caused Plaintiff any injuries.

6.   In response to Paragraph 6 of the First Amended Complaint, PUIG denies that the "events as alleged" in the First Amended Complaint occurred.  With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

**ANSWER TO FIRST CAUSE OF ACTION**

**Alleged Assault and Battery / Alleged Sexual Battery**

7.   In response to Paragraph 7 of the First Amended Complaint, PUIG incorporates by reference each and every admission, denial, and allegation contained in Paragraphs 1-6 contained herein.

8.     In response to Paragraph 8 of the First Amended Complaint, PUIG denies the allegations therein.

9.     In response to Paragraph 9 of the First Amended Complaint, PUIG denies the allegations therein.

10.    In response to Paragraph 10 of the First Amended Complaint, PUIG admits that he was in Los Angeles County on October 31, 2018. He denies all remaining allegations contained therein.

11.    In response to Paragraph 11 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

12.    In response to Paragraph 12 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

13.    In response to Paragraph 13 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

14.    In response to Paragraph 14 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

15.    In response to Paragraph 15 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

16.     In response to Paragraph 16 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

17.     In response to Paragraph 17 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

18.     In response to Paragraph 18 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

19.     In response to Paragraph 19 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

20.     In response to Paragraph 20 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

## ANSWER TO SECOND CAUSE OF ACTION

### Alleged Intentional Infliction of Emotional Distress

21.     In response to Paragraph 21 of the First Amended Complaint, PUIG incorporates by reference each and every admission, denial, and allegation contained in Paragraphs 1-20 contained herein.

22.     In response to Paragraph 22 of the First Amended Complaint, PUIG denies the allegations.

YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

23.     In response to Paragraph 23 of the First Amended Complaint, PUIG denies the allegations.

24.     In response to Paragraph 24 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

25.     In response to Paragraph 25 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

26.     In response to Paragraph 26 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

27.     In response to Paragraph 27 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

28.     In response to Paragraph 28 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

29.     In response to Paragraph 29 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

## ANSWER TO THIRD CAUSE OF ACTION

### Alleged Negligence

30.     In response to Paragraph 30 of the First Amended Complaint, PUIG incorporates by reference each and every admission, denial, and allegation contained in Paragraphs 1-29 contained herein.

31.     In response to Paragraph 31 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

32.     In response to Paragraph 32 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

33.     In response to Paragraph 33 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

34.     In response to Paragraph 34 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

## ANSWER TO FOURTH CAUSE OF ACTION

### Alleged False Imprisonment

35.     In response to Paragraph 35 of the First Amended Complaint, PUIG incorporates by reference each and every admission, denial, and allegation contained in Paragraphs 1-34 contained herein.

36.     In response to Paragraph 36 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

37.     In response to Paragraph 37 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

38.     In response to Paragraph 38 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

39.     In response to Paragraph 39 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

40.     In response to Paragraph 40 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

41.     In response to Paragraph 41 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

42.     In response to Paragraph 42 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations

YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

43.     In response to Paragraph 43 of the First Amended Complaint, PUIG denies the allegations that refer or relate to him. With respect to the remainder of the allegations contained therein, PUIG lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

The remainder of the First Amended Complaint contains Plaintiff's request for relief, to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to the relief sought.

All allegations stated in the complaint that have not been specifically denied, that require a response, and that are not otherwise expressly admitted herein, are hereby expressly denied.

## AFFIRMATIVE DEFENSES

PUIG states the following affirmative and other defenses to the First Amended Complaint and reserves the right to raise additional affirmative defenses prior to or at the time of trial. Further, by alleging these defenses, PUIG is not in any way agreeing or conceding that he has the burden of proof or burden of persuasion that would otherwise rest with Plaintiff.

As a separate affirmative defense to each alleged claim for relief of the First Amended Complaint, PUIG alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

1.     For a first and separate affirmative defense, PUIG alleges that: The First Amended Complaint fails to state facts sufficient to constitute a cause of action against PUIG.

### SECOND AFFIRMATIVE DEFENSE

2.     For a second and separate affirmative defense, PUIG alleges that: Plaintiff has failed to state a claim upon which relief may be granted.

### THIRD AFFIRMATIVE DEFENSE

3.      For a third and separate affirmative defense, PUIG alleges that: Plaintiff consented to each and every one of Defendant's acts and or ratified his conduct as being consensual.

### FOURTH AFFIRMATIVE DEFENSE

4.      For a fourth and separate affirmative defense, PUIG alleges that: Any alleged tortious conduct by PUIG was induced by the Plaintiff's own conduct.

### FIFTH AFFIRMATIVE DEFENSE

5.      For a fifth and separate affirmative defense, PUIG alleges that: Any alleged tortious conduct by PUIG was the result of a reasonable but mistaken belief that his conduct was justified.

### SIXTH AFFIRMATIVE DEFENSE

6.      For a sixth and separate affirmative defense, PUIG alleges that: Plaintiff's claim is barred by the doctrine of laches.

### SEVENTH AFFIRMATIVE DEFENSE

7.      For a seventh and separate affirmative defense, PUIG alleges that: Plaintiff's claims are barred by the equitable doctrine of unclean hands.

### EIGHTH AFFIRMATIVE DEFENSE

8.      For an eighth and separate affirmative defense, PUIG alleges that: Plaintiff has suffered no harm or damages as the result of the acts and events alleged.

### NINTH AFFIRMATIVE DEFENSE

9.      For a ninth and separate affirmative defense, PUIG alleges that: Plaintiff has failed to mitigate her damages.

### TENTH AFFIRMATIVE DEFENSE

10.      For a tenth and separate affirmative defense, PUIG alleges that: At all times relevant to this litigation, PUIG acted in good faith and did not directly, or indirectly,

perform any acts which would constitute the breach of any duty towards Plaintiff or violate any rights that Plaintiff possessed.

### ELEVENTH AFFIRMATIVE DEFENSE

11.    For an eleventh and separate affirmative defense, PUIG alleges that: At all times relevant to this litigation, Plaintiff engaged in provocative acts, conduct, and/or words such that the conduct of PUIG relating to the Plaintiff was reasonable under the circumstances.

### TWELFTH AFFIRMATIVE DEFENSE

12.    For a twelfth and separate affirmative defense, PUIG alleges that: If any damages were sustained by Plaintiff, which PUIG denies, said damages were proximately caused by the negligence of Plaintiff and/or third parties other than PUIG and the liability of all responsible parties, named or unnamed, should be apportioned according to their relative degrees of fault.

### THIRTEENTH AFFIRMATIVE DEFENSE

13.    For a thirteenth and separate affirmative defense, PUIG alleges that: None of the alleged acts or omissions of PUIG were, if they occurred, a substantial factor in bringing about the alleged damages and losses alleged by Plaintiff and, therefore, were not a contributing cause, but instead, were superseded by the acts and/or omissions of Plaintiff and others which were independent, intervening, and proximate causes of the damages and losses alleged by Plaintiff.

### FOURTEENTH AFFIRMATIVE DEFENSE

14.    For a fourteenth and separate affirmative defense, PUIG alleges that: Plaintiff's First Amended Complaint is frivolous and made in bad faith, thereby entitling PUIG to all reasonable expenses incurred in the defense of this action, including

1  attorney's fees and costs, from both Plaintiff and Plaintiff's counsel, pursuant to Code of

2  Civil Procedure section 128.5.

### FIFTEENTH AFFIRMATIVE DEFENSE

4       15.    For a fifteenth and separate affirmative defense, PUIG alleges that:

5  Defendant is not legally responsible for the acts and/or omissions of those additional

6  defendants named in the First Amended Complaint as DOE defendants.

### SIXTEENTH AFFIRMATIVE DEFENSE

8       16.    For a sixteenth and separate affirmative defense, PUIG alleges that: Plaintiff

9  claims are barred by Plaintiff's acts of fraud.

### SEVENTEENTH AFFIRMATIVE DEFENSE

11      17.    For a seventeenth and separate affirmative defense, PUIG alleges that:

12  Defendant has not acted with malice, reckless indifference or fraud toward Plaintiff and,

13  therefore, Defendant cannot be liable for punitive damages.

### EIGHTEENTH AFFIRMATIVE DEFENSE

15      18.    For an eighteenth and separate affirmative defense, PUIG reserves future

16  affirmative defenses where PUIG presently has insufficient knowledge or information on

17  which to form a belief as to whether he may have additional, as yet unstated defenses

18  available. He accordingly reserves the right to assert additional defenses that are revealed

19  by further investigation or discovery.

### COUNTERCLAIMS AGAINST PLAINTIFF JANE ROE

21      Defendant and Counter-Complainant YASIEL PUIG ("PUIG") brings these

22  counterclaims against Plaintiff and Counter-Defendant JANE ROE as follows:

### NATURE OF ACTION

24      1.    PUIG brings these counterclaims against JANE ROE for defamation relating

25  to false statements made by JANE ROE, through her counsel of record, about PUIG in

26  interviews and/or press releases with local and national reporters.

27

28

YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

2.       PUIG is a talented professional baseball player in the prime of his career. On November 2, 2020, JANE ROE deliberately and intentionally broadcast maliciously false statements about PUIG through a local news station, falsely claiming that PUIG had, among other things, sexually assaulted her in a crowded VIP section of the Staples Center after a Lakers game.  Furthermore, during that same interview, JANE ROE's counsel of record, on JANE ROE's behalf, deliberately and intentionally broadcast maliciously false and defamatory statements about PUIG, claiming that she and/or JANE ROE had text messages from PUIG proving he committed sexual assault and that they had text messages wherein he admitted that "something happened." In the context of the interview, these statements were clearly intended to deceive the public into believing that PUIG had admitted, in writing, to sexually assaulting JANE ROE. These statements by JANE ROE and her counsel, on JANE ROE's behalf, were knowingly false statements and maliciously intended to support JANE ROE's false allegations against PUIG, to prejudice PUIG in these proceedings, and to impact PUIG's livelihood, reputation, and career. Indeed, PUIG did not sexually assault JANE ROE. Further, as JANE ROE and her counsel know, no such text messages exist. PUIG is informed, believes, and on that basis alleges that he has been unable to acquire a contract with a Major League Baseball team because of these false statements. He now seeks compensation for the harm caused to him.

## THE PARTIES

3.       PUIG was, at all times relevant to this litigation, a resident of Miami-Dade County, Florida.

4.       PUIG is informed, believes, and on that basis alleged that JANE ROE was, at all times relevant to this litigation, a resident of Los Angeles County, California.

## JURISDICTIONAL ALLEGATIONS

5.       This counterclaim is timely brought pursuant to Fed. Rule Civ. Proc. 13 and this court has supplemental jurisdiction over this counterclaim under 28 USC § 1367.

6.  Jurisdiction in this court exists under 28 U.S.C. § 1332, because PUIG is a citizen of Florida, while JANE ROE is a citizen of California, and the matter in controversy exceeds $75,000.  As set forth herein, JANE ROE's false and defamatory statements have caused PUIG economic harm of at least $10 million, subject to proof at trial.

## FACTUAL BACKGROUND

7.  PUIG is a professional baseball player.

8.  In 2013, he made his Major League debut with the Los Angeles Dodgers, playing his first game on June 3, 2013. During that season, he took the sport by storm. In his first month in the Major Leagues, he won both the National League Rookie of the Month Award and the National League Player of the Month Award, the first time someone had won both awards in their first month in major league history. He finished that season batting .319 with 19 homeruns.

9.  In his six years in the Major Leagues, playing outfield for the Los Angeles Dodgers, Cincinnati Reds, and Cleveland Indians, he has a lifetime batting average of .277 with 132 home runs, 415 runs batted in, and 79 stolen bases. In 2019, he had an outstanding statistical season, batting .297, with 24 home runs and 19 stolen bases.

10.  PUIG has also participated in charitable endeavors off the field.

11.  Despite these accomplishments and his talents, PUIG has not been able to obtain a Major League contract for the 2021 season.

12.  PUIG is informed, believes, and on that basis alleges that the teams in Major League Baseball will not offer him a contract because of the malicious false statements made about him by JANE ROE.

## JANE ROE INITIATES A SEXUAL ENCOUNTER WITH PUIG

13.  On October 31, 2018, PUIG attended a Lakers basketball game.

YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

14.     JANE ROE was also at the game. At halftime and after the game concluded, PUIG went to the Chairman's Room, a private section of the Staples Center, together with many other fans, including JANE ROE.

15.     During and after the game, JANE ROE initiated communications with PUIG, both electronically and in person. She approached him, she messaged him on Instagram, sent him photos of herself, and sent him her phone number.

16.     In the Chairman's Room, JANE ROE approached PUIG's table, sat down, and engaged him in conversation, touching and flirting with him. She then invited him to a bathroom near the door of the Chairman's Room for a sexual encounter.

17.     PUIG agreed, went to the hall, and checked that the bathroom was empty. JANE ROE followed a few seconds later and they entered the bathroom together. In the bathroom, they had consensual sex, which she initiated. After the encounter, PUIG and JANE ROE went back to the Chairman's Room.

18.     After October 31, 2018, and over the course of the next four months, JANE ROE continued to message PUIG by text message and Instagram.

19.     Although she now claims she was sexually assaulted, she did not make any such claims on the night in question, never made such claims to him in the months that followed, never contacted Staples Center security on that night or at any time thereafter, and never contacted the police on the night in question or any time thereafter. However, beginning in the summer of 2019, approximately eight months after the sexual encounter, she began demanding money from PUIG.

**JANE ROE'S MESSAGES WITH PUIG**

20.     On October 31, 2018, between 9:15 and 9:17 pm, JANE ROE sent PUIG four messages over Instagram, including two photos or videos of herself, a heart emoji, and her phone number.

21.     On October 31, 2018 and November 1, 2018, PUIG sent JANE ROE several text messages expressing an interest in seeing her again.  She responded, telling him the neighborhood she lived in and asking where PUIG was living.

22.     On November 1, 2018, PUIG texted her that he was at a hotel in Studio City and asked her to meet him.

23.     On November 2, 2018, he texted her again, stating that he was still at the hotel and proposing they get together.  She responded: "I [am] working it out!! I didn't forget about you[.]"

24.     They also messaged over Instagram.  On November 1, 2018, PUIG sent JANE ROE a message on Instagram saying "Hey," with a waving hand emoji.

25.     On November 3, 2018, JANE ROE sent PUIG an Instagram message with another heart emoji.

26.     On November 21, 2018, PUIG messaged JANE ROE on Instagram, saying "Hey you forget about me[?]"

27.     On November 22, 2018, JANE ROE responded to PUIG on Instagram by "sharing her story" with him, sending him a photo or video of herself.

28.     On November 23, 2018, PUIG wrote to JANE ROE, "You [do] not have time for me," with a sad-face emoji.

29.     That same day, November 23, 2018, JANE ROE messaged PUIG again on Instagram, asking "When do you come back?"

30.     PUIG messaged her three more times on the December 6, 2018 ("Hey how you been"), February 1, 2019 ("Hola"), and February 9, 2019 ("Hey").

31.     On February 18, 2019, JANE ROE contacted PUIG via text message, saying "Where'd you go[?]"

32.     PUIG responded "Who is this[?]"

33.     JANE ROE identified herself in response, sending her name and two descriptive emojis.

YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

34. PUIG did not recognize her name and asked her "[ROE] from where[?]"

35. Apparently dissatisfied with PUIG's response, JANE ROE did not respond.

36. Since that time, the two have not exchanged any further messages.

### THE KTLA INTERVIEW

37. On or about November 2, 2020, more than two years after the night of their encounter at Staples Center, JANE ROE contacted the television station KTLA, either on her own or through her counsel of record, and requested an interview. Later that day, she and her counsel of record participated in an interview with reporter Mary Beth McDade, with JANE ROE appearing by telephone and her counsel appearing in person.

38. During that interview, JANE ROE made the following statements referring to the night of October 31, 2018: "[PUIG] grabbed me and he was touching himself, which (*sic*) he pulled himself really close to me and wouldn't let me go . . .  I walked into the restroom and felt someone behind me, next thing I know the door was slammed. I really had no way of getting out . . .  He was just saying, like, come on baby, like weird things like that. It was traumatic. It was very, very traumatic." Then, JANE ROE's counsel of record, on JANE ROE's behalf, claimed that they are in possession of text messages proving PUIG sexually assaulted JANE ROE and that they are in possession of text messages wherein PUIG admitted that "something happened," thereby representing there are text messages from PUIG wherein he admits he sexually assaulted JANE ROE.

39. These statements about PUIG, including but not limited to that PUIG sexually assaulted JANE ROE, that there are text messages proving PUIG sexually assaulted JANE ROE, and that there are text messages wherein PUIG admitted to sexually assaulting JANE ROE, were all knowingly false statements. Indeed, PUIG did not sexually assault JANE ROE. Furthermore, it is indisputable that there are no text messages from PUIG proving he sexually assaulted JANE ROE and there are no text messages containing an admission that he sexually assaulted JANE ROE.

40.     PUIG is informed, believes, and on that basis alleges that these false statements, aired publicly on KTLA on November 2, 2020, were viewed by hundreds of thousands of people in the Los Angeles area. As of June 17, 2021, that report remains posted to the internet at: https://ktla.com/news/local-news/woman-accuses-former-dodgers-player-yasiel-puig-of-sexual-assault/.

### THE ESPN INTERVIEW

41.     PUIG is informed, believes, and on that basis alleges that after the KTLA interview, and before March 11, 2021 (when the ESPN story referenced below appeared), JANE ROE met with reporters for ESPN.

42.     PUIG is informed, believes, and on that basis alleges that JANE ROE made the following statements to ESPN: that PUIG physically restrained JANE ROE in the bathroom of the Chairman's Room, that he did so by pinning her with his forearm, that he tried to take her clothes off, that he groped her, that he exposed himself to her and that he masturbated in front of her.

43.     On Thursday, March 11, 2021, ESPN published an article entitled: "Sexual assault allegations cloud Yasiel Puig's future in MLB" (available at: https://www.espn.com/espn/print?id=31044776).

44.     JANE ROE's statements about PUIG, their encounter on October 31, 2018, and the existence of the text messages referenced herein, were knowingly false and malicious.

### STATEMENTS ISSUED IN THE CINCINNATI ENQUIRER

45.     PUIG is informed, believes, and on that basis alleges that, on or around April 13, 2021, JANE ROE authorized her counsel to release a statement to the Cincinnati Enquirer, which was later picked up by multiple other news outlets.

46.     PUIG is informed, believes, and on that basis alleges that JANE ROE, through her counsel, made the following statements to the Cincinnati Enquirer: that "After [PUIG] allegedly sexually assaulted [JANE ROE], he sent her at least 18 text

1  messages begging to see her. Fearful of a further attack or retribution by [PUIG], our

2  client attempted to de-escalate his behavior by providing curt responses to the texts and

3  later ignoring him. Our client did nothing to encourage this behavior. This is another

4  event in a pattern of violent and brutish behavior by [PUIG], while attempting to breathe

5  new life into his dying career.”

6      47.    JANE ROE's statements issued to the Cincinnati Enquirer as described

7  above were knowingly false and malicious.

8                          **OTHER FALSE STATEMENTS**

9      48.    PUIG is informed, believes, and on that basis alleges that JANE ROE and/or

10  her counsel of record on her behalf, made the same, or substantially the same, false

11  statements relating to JANE ROE to other persons and entities, including to Major

12  League Baseball and its representatives, to Major League Baseball franchises and their

13  representatives, and to other third parties, all in an effort to prejudice and cause damage

14  to PUIG.

15                  **THE DAMAGE CAUSED BY THE FALSE STATEMENTS**

16      49.    Prior to the November 2, 2020 interview with KTLA, MLB.com reported

17  that PUIG was ready to play and drawing interest by Major League Baseball teams. This

18  report is available online at https://www.mlb.com/news/yasiel-puig-ready-to-play-2021-

19  mlb-season.  MLB.com further reported that "Multiple club executives believe that Puig

20  will land a Major League contract this winter, . . .”

21      50.    However, after JANE ROE's interview with KTLA, that interest has

22  evaporated and PUIG did not receive any contract offers from any of the Major League

23  baseball teams. As ESPN reported in its aforementioned article, "A number of teams that

24  reportedly expressed interest in Puig this spring have factored the allegations into their

25  decisions. 'Nobody wants the headache,' the front-office source told ESPN." (available at

26  https://www.espn.com/mlb/story/_/id/31044776/sexual-assault-allegations-cloud-yasiel-

27  puig-future-mlb).

28

**YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS**

51.     PUIG is informed, believes, and on that basis alleges that, if not for the false and defamatory statements made by JANE ROE and her counsel of record on JANE ROE's behalf, in particular those involving sexual assault of JANE ROE and written proof of sexual assault and admissions of sexual assault of JANE ROE, PUIG would be under contract with a Major League Baseball team, earning a multi-million dollar salary, earning endorsement income, and earning income from personal appearances and speaking engagements.

52.     These false and defamatory statements have caused PUIG monetary harm equal to his lost income that he would have earned from playing baseball, endorsements, and personal appearances but for JANE ROE's false and defamatory statements.  This amount is greater than the jurisdictional threshold. 28 U.S.C. § 1332.  Based on PUIG's prior earnings and the likely contract he would have received, his monetary harm is at least $10 million.

53.     In sum, the widely-published but untruthful statements, made by JANE ROE and her counsel of record on her behalf, have brought PUIG's career to a standstill and caused him significant monetary harm.

**FIRST CLAIM FOR RELIEF**

**(Defamation Per Se)**

54.     PUIG incorporates each and every preceding and succeeding paragraph of his counterclaims as if fully set forth herein.

55.     PUIG alleges the following defamatory statements:

a.     JANE ROE stated to Mary Beth McDade and KTLA producers on November 2, 2020 that PUIG sexually assaulted her;

b.     JANE ROE's counsel of record, on JANE ROE's behalf, represented to Mary Beth McDade and KTLA on November 2, 2020 that JANE ROE has text messages proving PUIG sexually assaulted JANE ROE; and

        c.     JANE ROE's counsel of record, on JANE ROE's behalf, represented to Mary Beth McDade and KTLA on November 2, 2020 that JANE ROE has text messages wherein PUIG admitted "something happened," and, in the context of the interview, that she claimed to have text messages wherein PUIG admitted to sexually assaulting JANE ROE.

56.     These statements were made to Mary Beth McDade and KTLA producers, and were then broadcast on television and via the internet.

57.     PUIG is informed, believes, and on that basis alleges that Mary Beth McDade and KTLA producers understood that these statements were about PUIG.

58.     PUIG is informed, believes, and on that basis alleges that Mary Beth McDade and KTLA producers understood these statements to mean that PUIG sexually assaulted JANE ROE, thereby committing a crime, JANE ROE had text messages proving PUIG sexually assaulted JANE ROE and proving PUIG admitted to sexually assaulting JANE ROE.

59.     These statements were false. PUIG did not sexually assault JANE ROE and no such text messages exist.

60.     JANE ROE and her counsel of record knew that these statements were false when made.

61.     PUIG has suffered harm to his reputation, profession, and occupation.

62.     These false statements were made with actual malice. Indeed, PUIG did not sexually assault JANE ROE and the text messages proving sexual assault or an admission of sexual assault of JANE ROE do not exist. Therefore, the statements were knowingly false or, at a minimum, made with a reckless disregard for the truth.

63.     These statements are not privileged.

64.     These statements were a substantial factor in causing PUIG to suffer harm, including loss of income and loss of reputation, as well as hatred, contempt, and ridicule.

65.   PUIG seeks recovery of compensatory damages against JANE ROE for loss of income, loss wages, loss of reputation, shame, mortification, and expenses, in an amount to be determined at trial.

66.   JANE ROE's conduct, on her own behalf and through her counsel of record, including the knowingly false and defamatory statements that PUIG's text message prove he committed a crime of sexual assault and that he made admissions of such acts, was intentional, willful, malicious, despicable, made in bad faith, with ill will towards PUIG, and in conscious disregard for PUIG's rights. Therefore, PUIG seeks recovery of punitive damages against JANE ROE in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Defamation Per Quod)

67.   PUIG incorporates each and every preceding and succeeding paragraph of his counterclaims as if fully set forth herein.

68.   PUIG alleges the following defamatory statements:

a.   JANE ROE stated to Mary Beth McDade and KTLA producers on November 2, 2020 that PUIG sexually assaulted her;

b.   JANE ROE's counsel of record, on JANE ROE's behalf, represented to Mary Beth McDade and KTLA on November 2, 2020 that JANE ROE has text messages proving PUIG sexually assaulted JANE ROE; and

c.   JANE ROE's counsel of record, on JANE ROE's behalf, represented to Mary Beth McDade and KTLA on November 2, 2020 that JANE ROE has text messages wherein PUIG admitted "something happened," and, in the context of the interview, that she claimed to have text messages wherein PUIG admitted to sexually assaulting JANE ROE.

69.   These statements were made to Mary Beth McDade and KTLA producers, and were then broadcast on television and via the internet.

70.    PUIG is informed, believes, and on that basis alleges that Mary Beth McDade and KTLA producers understood that these statements were about PUIG.

71.    That because of the facts and circumstances known to the Mary Beth McDade, KTLA Producers, and the listeners and/or readers of the statements, JANE ROE and her counsel intended to injure PUIG in his occupation, to expose him to hatred, contempt, ridicule, or shame, or to discourage others from associating or dealing with him.

72.    The statements by JANE ROE and her counsel of record, on JANE ROE's behalf, regarding sexual assault of JANE ROE and text messages proving sexual assault and admissions of sexual assault of Jane ROE, were false. PUIG did not sexually assault JANE ROE and the referenced text messages do not exist.

73.    JANE ROE and her counsel of record knew that these statements were false and made them with actual malice. Indeed, PUIG did not sexually assault JANE ROE and the text messages proving sexual assault or an admission of sexual assault do not exist. Therefore, the statements were knowingly false or, at a minimum, made with a reckless disregard for the truth.

74.    These statements are not privileged.

75.    PUIG has suffered harm to his reputation, profession, and occupation.

76.    These statements were a substantial factor in causing PUIG to suffer harm, including loss of income and loss of reputation, as well as hatred, contempt, and ridicule.

77.    PUIG seeks recovery of compensatory damages against JANE ROE for loss of income, loss wages, loss of reputation, shame, mortification, and expenses, in an amount to be determined at trial.

78.    JANE ROE's conduct, on her own behalf and through her counsel of record, including the knowingly false and defamatory statements that PUIG's text message prove he committed a crime of sexual assault and that he made admissions of such acts, was intentional, willful, malicious, despicable, made in bad faith, with ill will towards PUIG,

1  and in conscious disregard for PUIG's rights. Therefore, PUIG seeks recovery of punitive

2  damages against JANE ROE in an amount to be proven at trial.

3  **PRAYER**

4     WHEREFORE, Defendant and Counter-Complainant YASIEL PUIG prays for

5  judgment against Plaintiff JANE ROE as follows:

6     1.  That JANE ROE take nothing from her First Amended Complaint;

7     2.  That the Court enter judgment in favor of YASIEL PUIG and against JANE

8  ROE on each and every claim in JANE ROE's First Amended Complaint;

9     3.  That the Court enter judgment in favor of YASIEL PUIG and against JANE

10  ROE on each and every claim in YASIEL PUIG's Counter-Complaint;

11     4.  That YASIEL PUIG be awarded damages against JANE ROE for lost wages

12  in an amount according to proof at trial;

13     5.  That YASIEL PUIG be awarded damages against JANE ROE for lost

14  endorsement revenue in an amount according to proof at trial;

15     6.  That YASIEL PUIG be awarded damages for lost future public appearances

16  and speaking engagements in an amount according to proof at trial;

17     7.  That YASIEL PUIG be awarded punitive damages against JANE ROE in an

18  amount to be proven at trial for her willful, wanton, fraudulent, malicious and despicable

19  conduct;

20     8.  That YASIEL PUIG be awarded costs of suit; and

21  / / /

22  / / /

23  / / /

24

25

26

27

28

1        9.    That YASIEL PUIG be awarded such other relief as this Court deems fair
2    and just.

3    Dated:      June 17, 2021            WERKSMAN, JACKSON, & QUINN LLP

4

5                                      By: /s/ Alan Jackson
6                                        ALAN JACKSON
7                                        Attorneys for Defendant and Counter-
                                         Complainant YASIEL PUIG

8    Dated:      June 17, 2021            DAILY ALJIAN LLP
9

10

11                                     By: /s/ Reed Aljian
12                                       Reed Aljian
                                         Attorneys for Defendant and Counter-
13                                       Complainant YASIEL PUIG

14   / / /
15   / / /
16   / / /

YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

1

## **DEMAND FOR JURY TRIAL**

2       Defendant and Counter-Complainant YASIEL PUIG hereby demands a trial by

3 jury on all issues so triable pursuant to Federal Rules of Civil Procedure, Rule 38, and

4 Central District of California Local Rules, Rule 38-1.

5 Dated:       June 17, 2021            WERKSMAN, JACKSON, & QUINN LLP

6

7                                         By: /s/ Alan Jackson

8                                            ALAN JACKSON
                                           Attorneys for Defendant and Counter-

9                                            Complainant YASIEL PUIG

10 Dated:       June 17, 2021            DAILY ALJIAN LLP

11

12

13                                         By: /s/ Reed Aljian

14                                            Reed Aljian
                                           Attorneys for Defendant and Counter-

15                                            Complainant YASIEL PUIG

16

17

18

19

20

21

22

23

24

25

26

27

28

YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

# PROOF OF SERVICE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CASE NAME:**     *JANE ROE v. YASIEL PUIG; and DOES 1-10, inclusive*

I am employed in the City of Newport Beach, County of Orange, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 100 Bayview Circle, Suite 5500, Newport Beach, California 92660. On **June 17, 2021**, I caused the foregoing document(s) to be served on:

**DEFENDANT YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS AGAINST PLAINTIFF JANE ROE FOR DAMAGES; DEMAND FOR JURY TRIAL**

on the following parties:

## SEE ATTACHED SERVICE LIST

[X]    (BY CM/ECF ELECTRONIC FILING) I caused such document(s) listed above to be served through this Court's electronic transmission facilities via the Notice of Electronic Filing (NEF) and hyperlink, to the parties and/or counsel who are determined this date to be registered CM/ECF Users set forth in the service list obtained from this Court on the Electronic Mail Notice List.

[X]    (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on **June 17, 2021**, at Newport Beach, California.


_____*/s/* Courtney Dorner_____
Courtney Dorner

YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

# SERVICE LIST

Ashley Taylor Rayfield
   *trayfield@manlystewart.com*
Courtney Pauline Pendry
   *cpendry@manlystewart.com*
Jane Elizabeth Reilley
   *jreilley@manlystewart.com*
John C Manly
   *jmanly@manlystewart.com*
MANLY STEWART AND FINAlDI
19100 Von Karman Avenue, Suite 800
Irvine, CA 92612
   *Attorneys for Plaintiff, Jane Roe*

Alan J. Jackson
   *ajackson@werksmanjackson.com*
Caleb E. Mason
   *cmason@werksmanjackson.com*
Dennis Shawn Burkley
   *dsburkley@werksmanjackson.com*
WERKSMAN JACKSON & QUINN LLP
888 W 6th St, Fourth Floor
Los Angeles, CA 90017
   *Attorneys for Defendant and Counter-Complainant, Yasiel Puig*

YASIEL PUIG'S FIRST AMENDED ANSWER AND COUNTERCLAIMS