JOHN C. MANLY (State Bar No. 149080)
jmanly@manlystewart.com
TAYLOR RAYFIELD (State Bar No. 272300)
trayfield@manlystewart.com
COURTNEY P. PENDRY (State Bar No. 327382)
cpendry@manlystewart.com
**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990
Facsimile: (949) 252-9991

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JANE ROE,<br><br>    Plaintiff,<br><br>    v.<br><br>YASIEL PUIG, and DOES 1-10, inclusive,<br><br>    Defendant. | Case No. 2:20-cv-11064-FMO-MRW<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEFING IN SUPPORT OF JOINT DISCOVERY STIPULATION**<br><br>Judge:   Hon. Michael R. Wilner<br><br>Trial Date:         May 3, 2022 |

This Supplemental Memorandum is brought pursuant to Local Rule 37-2.3, following the June 11, 2021 Status Conference.

## I. BRIEF SUMMARY OF DISCOVERY DISPUTE

Plaintiff, Jane Roe, ("Jane Roe"), seeks production of and information related to prior settlement agreements and/or non-disclosure agreements ("NDA") entered into by Defendant Yasiel Puig, ("Puig") related to allegations of sexual misconduct. Further, Jane Roe seeks production of, and information related to Puig's disciplinary history in Major League Baseball ("MLB"), in support of her defenses to Puig's recently filed counterclaim seeking $10 million for lost employment opportunities in MLB. As set forth herein, the information sought by way of these Requests and Interrogatories are relevant, discoverable, and reasonably calculated to lead to the discovery of admissible evidence.

## II. SETTLEMENT AGREEMENTS ARE NOT PRIVILEGED UNDER NINTH CIRCUIT LAW

Federal Rule of Evidence 408(a) prohibits the ***admission*** of compromises or offers to compromise as evidence when offered to "prove or disprove the validity or amount of a dispute claim or to impeach by a prior inconsistent statement or a contradiction." Fed.R.Evid. 408. By its very terms, Rule 408(a) limits the ***admissibility*** of settlement agreements – not their discovery. *Id*. In fact, Rule 408(b) expressly states that it does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). *Id*. While Rule 408 seeks to promote public policy in encouraging settlement agreements, the Ninth Circuit has cautioned parties not to "make [] too much of the 'policy' behind Rule 408," noting that "[w]hen statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the rule is not injured." *Big Baboon Corp. v. Dell, Inc.*, 2010 WL 395583, at *2 (C.D. Cal. Oct. 8, 2010); *see also Matsushita Elec. Industrial Co. v. Mediatek, Inc.*, 2007 WL 963975 at *5 (N.D.Cal2007)("[I]t is clear that when Congress approved Rule 408 to promote settlements, it chose to do so by

limiting admissibility – and not by limiting discovery.").

The "simple fact that the parties to the settlement agreement agreed to its confidentiality 'does not shield it from discovery." *Board of Trustees of Leland Stanford Jr. Univ. v. Tyco Int't., Ltd.,* 253 F.R.D. 521,523 (C.D.Cal.2008). Allowing settlement agreements to remain cloaked in secrecy promotes the practice of using money to bury the unlawful and egregious misconduct alleged in Jane Roe's complaint. See *Zucchella v. Olympusat, Inc.* 2020 WL 8483772 (C.D.Cal. Nov. 2, 2020). Moreover, a party is not permitted to use Rule 408 as a "screen for curtailing his adversary's right of discovery." *Id*. There simply is no federal privilege preventing the discovery of settlement agreements or other such related documents. *Id*.; see also *JZ Buckingham Invest. LLC, v. United States,* 78 Fed.Cl. 15, 22 (Fed.Cl.2007)("The Court of Appeals for the Federal Circuit has provided little guidance on the extent from which settlement documents are protected from discovery as privileged.") However, courts in this circuit frequently allow the production of confidential settlement agreements. *See O'Brien v. Johnson & Johnson Med. Devices Co*., 2020 WL5215384, at *3-5 (C.D. Cal. June 24, 2020) (compelling production of settlement agreement with non-party); *Peters v. Equifax Info. Servs. LLC*, 2013 WL 12169355, at *3 (C.D. Cal. Dec. 13, 2013) (settlement agreement not privileged); *In re Cathode Ray Tube (CRT) Antitrust Litig*., 2015 WL 13756260, at *3-4 (N.D. Cal. Jul. 31, 2015) (holding that under California law, settlement agreements are discoverable under California Evidence Code section 1123).

This is simply a request for discovery, not a request for admission into evidence. As such the standards are different. Jane Roe seeks to identify the *existence of* other *allegations* of sexual misconduct which culminated in a settlement agreement or NDA, and identification of potential third party witnesses. This information is not only discoverable under Rule 408 but is directly relevant to Jane Roe's case, as explained below.

### III. THE INFORMATION SOUGHT BY PLAINTIFF RELATED TO PRIOR ALLEGATIONS OF SEXUAL MISCONDUCT IS RELEVANT AND REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

#### A. Relevance and Admissibility

In accordance with the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). As set forth *infra*,

"Ninth Circuit law generally favors a broad scope of discovery." *Big Baboon Corp.* 2010 WL 395583, at *2; *see also Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995)("[W]ide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth.") This broad scope of discovery, may be limited by any privileges that apply; however, any proposed privilege must promote a public interest that is "sufficiently important… to outweigh the need for probative evidence." *Id*.

Many courts have held that evidence of the type sought by Jane Roe, is admissible under rule 404(b) of the Federal Rules of Evidence to show intent or motive. In sexual harassment cases, evidence of other acts or wrongs (i.e., "me too" evidence) may be admitted at trial to demonstrate motive or intent via FRE 404(b); where the "me too" evidence is relevant and probative to the needs of the case, it may be admissible. *Zuchella*, at *9 (holding that "defendants shall produce all [settlement agreements] . . . that reflect factual allegations made against [defendants] relating to sexual harassment . . . whether or not they involve defendant Mohler. . ." assuming that the documents are relevant to plaintiff's claims) The Ninth Circuit held in *Heyne v. Caruso* (9th Cir. 1995) 69 F.3d 1475, 1480: "Evidence of [defendant's] sexual harassment of other female workers may be used, however, to

prove his motive or intent in discharging [plaintiff]. The sexual harassment of others, if shown to have occurred, is relevant and probative of [defendant's] general attitude of disrespect toward his female employees, and his sexual objectification of them…. The probative value of the employer's sexual harassment of other female employees is especially high '***because of the inherent difficulty of proving state of mind***.'" (emphasis added)

While the issues in *Heyne* arose in an employment context, the principles still apply. In not only denying that he sexually assaulted Jane Roe, but alleging that ***she*** initiated a ***consensual*** encounter, Puig has placed the issue of consent at the heart of this case[1]. *See* Dkt. No. 67. Accordingly, by the very nature of the parties claims and defenses, Jane Roe must be able to conduct discovery into Puig's intent and motive – i.e., his state of mind. Specifically, Jane Roe contends that Puig has a long established pattern and practice of engaging in non-consensual sexual contact with women. As such, Jane Roe seeks to discover admissible evidence – such as identification of other alleged victims – to establish that on the night of October 31, 2018, Puig had the motive, intent, and plan of sexually assaulting Jane Roe. Fed.R.Evid. 404(b)(2). Moreover, given that the parties dispute as to whether or not Jane Roe consented to a sexual encounter with Puig, Jane Roe seeks to discover - and ultimately admit - evidence that Puig did not mistakenly believe Jane Roe consented to any sexual contact with him. Rather, that Puig has a pattern and practice of engaging in non-consensual sexual contact with unwilling victims, just as he did with Jane Roe.

---

[1] Puig's counsel even seems to concede that the issue of consent is central to his case: "With respect to consent, what is at issue in the present matter is whether Jane Roe was a willing participant in the encounter occurring on October 31, 2018." *See* Joint Stipulation pg. 24. Accordingly, the parties apparently agree that the crux of this case is whether Jane Roe consented and was a "willing participant in a sexual encounter" or a victim of a sexual assault.

As noted *supra*, Jane Roe has no interest in discovering the terms or amount of any prior settlement agreement or NDA Puig has entered into. Rather, Jane Roe simply seeks to discover the factual allegations underlying any settlement agreements or NDA's and any potential witnesses. At a minimum, the portions of any agreements that set forth *facts* supporting allegations made against Puig may not be shielded from discovery, as the underlying facts contained within settlement agreements are discoverable[2]. *Zucchella* at *7-8. This is particularly true in instances where the conduct underlying the settlement agreements was similar to those alleged in the instant litigation. *Id*. (citing *Kalinauskas v. Wong*, 151 F.R.D. 363, 365-66 (D.Nev. 1993)).

These same rules have been applied to a sitting President of the United States. In a sexual harassment suit brought by a woman named Paula Jones, then sitting President William Clinton was twice ordered to answer questions concerning his conduct toward women other than the plaintiff, including a woman named Monica Lewinsky. *In Jones v. Clinton* (E.D. Ark. 1999) 36 F.Supp.2d 1118, 1127, the Court noted: "On two separate occasions, this Court ruled in clear and reasonably specific terms that plaintiff was entitled to information regarding any individuals with whom the President had sexual relations or proposed or sought to have sexual relations and who were during the relevant time frame state or federal employees." Surely Puig is entitled to no greater immunity from discovery in a suit alleging sexual misconduct than was afforded to the President of the United States.

### B.    Elevated Standard for Admissibility of Settlement Agreements

Though there is no broad federal privilege that applies to discoverability of settlement agreements, courts in the Central District of California "generally employ

---

[2] Even if the Court finds that Jane Roe is not entitled to the settlement agreements or NDA's themselves, she is surely entitled to any other documents that evidence or relate to any allegations that Puig engaged in sexual misconduct with anyone, pursuant to RFP No. 6.

an elevated standard in the settlement context, by placing the burden on the requesting party… to make a particularized heightened showing that the settlement information is relevant and likely to lead to admissible evidence." *Zucchella*, at *8. While Jane Roe contends that she has presented sufficient evidence demonstrating relevance to meet the heightened showing requirement, this heightened requirement is not necessarily required for much of the information sought by Jane Roe. "While a party may have to establish a compelling need to obtain discovery of the ***specific terms*** of a settlement agreement… allowing the deposition of a settler regarding the ***underlying facts does not require a showing of compelling need and would likely… lead to discovery of relevant evidence*** where the conduct was similar in the two lawsuits." *Zucchella*, at *12 (citing *Kalinauskas*, 151 F.R.D at 365-66)(emphasis added). As discussed at the parties June 11, 2021 Status Conference, throughout the deposition of Puig, counsel objected to all questions related to prior allegations of sexual misconduct or settlement agreements/NDA's related to the same, on the basis of the objections asserted in his discovery responses at issue here.

      Jane Roe is entitled to the factual information underlying any settlement agreements or NDA's entered into by Puig related to prior allegations of sexual misconduct. However, Jane Roe maintains that the information sought by way of Jane Roe's discovery requests is not only likely to lead to the discovery of admissible evidence, but it almost certainly will[3]. Specifically, Jane Roe seeks information related to prior allegations of similar conduct and identification of potential witnesses, to show (1) that it was Puig's motive, intent, and purpose to engage in non-consensual sexual contact with Jane Roe on the night of the subject incident; and (2) Puig did not mistakenly believe that Jane Roe consented to any

---

[3] To the extent Puig contends any settlement agreements/NDA's related to allegations of sexual misconduct are not relevant, Jane Roe notes that *in camera* review of such documents is often utilized in order to determine relevancy. *See Big Baboon Corp.*, *supra*, F.Supp.2d at *4.

sexual contact with Puig on the night of the subject incident. Fed.R.Evid. 404(b)(2).

Moreover, the information sought by Jane Roe is undoubtedly relevant in light of the allegations contained in Puig's Amended Counterclaim. *See generally* Dkt. No. 67. Puig now alleges that Jane Roe and her counsel made defamatory statements to the media, detailing the sexual assault. *Id*. Because Puig is a public figure, he must establish Jane Roe and her counsel's statements were made with actual malice – i.e. that the statements were made with "knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80, 285-86 (1964); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 155 (1967); *Gertz v. Welch*, 418 U.S. 323, 342, 344 (1974). During the parties meet and confer conference on June 11, 2018 related to Jane Roe's expressed intent to file a Motion to Strike Pursuant to C.C.P § 425.16 and a Motion to Dismiss, counsel for Puig represented that he intended to hold Jane Roe's counsel liable for an alleged defamatory statement made in the KTLA interview, wherein counsel represented that she was aware of other victims of Puig. Notably, despite bringing it up on multiple occasions during the meet and confer process, Puig left this direct quote out of his Amended Counterclaim, and instead inserted a general "catchall" allegation that Jane Roe and/or her counsel made other unspecified statements that Puig alleges were defamatory and made in an effort to "prejudice and cause damage to PUIG." *See* Dtk. No. 67 ¶ 48. The omission of this direct statement and the inclusion of a general "catchall" allegation in its place is a clear attempt by Puig to thwart Jane Roe's discovery into allegations made by other victims in order to substantiate her statement. Puig cannot be permitted to continue to engage in such transparent gamesmanship and wield vague threats and allegations in order to avoid producing relevant and discoverable information that is adverse to his case.

### C. Privacy Concerns

As previously detailed, any privacy rights asserted by Puig are outweighed by the compelling state interest of the ascertainment of truth in connection with the

7
PLAINTIFF SUPPLEMENTAL BRIEFING IN SUPPORT OF JOINT DISCOVERY STIPULATION

underlying legal proceedings and ensuring that Jane Roe receives full redress for her injuries. *See Planned Parenthood Golden Gate v. Superior Ct.*, 83 Cal.App.4th 347 (2000). Additionally, Jane Roe meet and conferred with Puig's prior counsel over a protective order and was willing to enter into a protective order, which these agreements could be produced under[4].

Moreover, since the filing of the parties Joint Stipulation, counsel for Puig has represented that Puig contends statements made by Jane Roe's counsel of her knowledge of other victims of Puig are actionable defamatory statements, attributable to Jane Roe. Puig cannot be permitted to sue Jane Roe for these statements and then attempt to bar Jane Roe from discovering information in support of her defenses to these claims.

## IV. IN LIGHT OF HIS $10 MILLION COUNTERCLAIM FOR DEFAMATION, JANE ROE IS ENTITLED TO DISCOVERY INTO PUIG'S MLB DISCIPLINARY HISTORY

In his counterclaim, Puig alleges that Jane Roe's public statements are the sole cause of his inability to get signed in MLB, costing him "at least $10 million." *See* Dkt. No. 67. Conversely, Jane Roe contends that Puig's outlandish and inappropriate behavior and history of misconduct over the course of his MLB career, resulting in his widespread infamy, are to blame for his inability to get signed. In light of these new claims, Jane Roe is entitled to discovery into her defenses. Fed.R.Civ.Proc. 26(b)(1). Moreover, in order to maintain his Second Cause of Action for Defamation Per Quod, Puig must establish that Jane Roe's statements were a substantial factor in his inability to obtain employment in MLB. *Franklin v. Dynamic Details, Inc.* 116 Cal.App.4th 375, 391 (2004); *see also*

---

[4] Again, Jane Roe notes her prior proposal to allow potential third-party witnesses to affirmatively opt-in to the voluntary disclosure of information. This process is commonly employed and, coupled with a signed Protective Order, is more than adequate to preserve and protect the privacy of any other alleged victims.

*Judicial Council of California Civil Jury Instructions* ("CACI") No. 1705. In order to defend herself from these claims, Jane Roe must be permitted to conduct discovery into Puig's disciplinary history with MLB that she contends led to his exile from MLB. Puig cannot be allowed to sue Jane Roe, claiming it was her statements that prevented his MLB career without allowing Jane Roe to conduct discovery into his other discipline that he has received from MLB itself.[5]

## V. PUIG'S ASSERTED FIFTH AMENDMENT RIGHTS

In the parties' June 11, 2021 hearing, counsel for Jane Roe was made aware for the first time that Puig contends that his objections to Jane Roe's written discovery and deposition questions based upon the Fifth Amendment did not constitute an invocation of the Fifth Amendment. This absolutely defies logic, reason, and the basic tenants of law. As a threshold manner, Puig has not cited to any case law to justify this untenable position. Moreover, with respect to Interrogatories Nos. 1 and 2, Puig objected to the disclosure of factual information related to prior allegations of sexual misconduct "on the ground that the request as defined expressly and deliberately contravenes the Fifth Amendment and is therefore plainly improper and objectionable as Propounding Party's counsel surely knows. Indeed, the request appears intentionally designed to elicit this objection, and as such it is burdensome and harassing, not directed at any legitimate discovery purpose, and not reasonably calculated to lead to the discovery of admissible evidence." *See* Ex. 1, Appendix to Joint Discovery Stipulation. Interrogatory No. 2 does not seek the identification or production of any documents – rather, it merely seeks facts related to any *accusations* of sexual misconduct. Accordingly, there is no

---

[5] Plaintiff Jane Roe did subpoena the MLB, however the MLB only provided some public documents. Plaintiff is simply attempting to conduct discovery into the full disciplinary files to the extent that Mr. Puig is in possession, custody or control of these.

implication of the Hubble doctrine[6]. This is a clear and unequivocal invocation of the Fifth Amendment.

Puig cannot be permitted to refuse to answer questions on the grounds that the questions implicate his Fifth Amendment rights, and then turn around and claim he has not actually asserted his Fifth Amendment rights.

## VI. CONCLUSION

Plaintiff is simply seeking discovery regarding other allegations of sexual misconduct by Puig and discipline given by the MLB. Plaintiff has brought a claim for sexual abuse against Puig and he states that it was consensual sex. As such, Plaintiff is entitled to conduct discovery into his conduct with other women where he has abused them, and especially where he has claimed it was consensual sex. The issue to be decided here is not admissibility, simply discoverability.

Additionally, Puig has filed a counterclaim for defamation against Plaintiff claiming that it is her allegations which has prevented him from being hired in the MLB. Clearly Plaintiff is allowed to fully explore why he was not hired in the MLB, and a logical reason is because of all of his past disciplinary problems. Therefore Plaintiff is entitled to full discovery regarding all of the disciplinary actions that the MLB has taken against Puig.

DATED: June 25, 2021            Respectfully submitted,

**MANLY STEWART FINALDI**

By:     /s/ Taylor Rayfield
        TAYLOR RAYFIELD
        Attorneys for Plaintiff

---

[6] Counsel for Jane Roe is willing to meet with the court in camera to explain and provide information relating to her knowledge of the existence other victims, should the Court so allow.