JOHN C. MANLY (State Bar No. 149080)
jmanly@manlystewart.com
TAYLOR RAYFIELD (State Bar No. 272300)
trayfield@manlystewart.com
COURTNEY P. PENDRY (State Bar No. 327382)
cpendry@manlystewart.com
**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990
Facsimile: (949) 252-9991

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JANE ROE,<br><br>    Plaintiff,<br><br>    v.<br><br>YASIEL PUIG, and DOES 1-10, inclusive,<br><br>    Defendant. | Case No. 2:20-cv-11064-FMO-MRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) and 12(f)**<br><br>Judge:   Honorable Olguin<br><br>Trial Date:      May 3, 2022<br><br>Date: August 12, 2021<br>Time: 10:00 a.m.<br>Courtroom: 6D |

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL ALLEGATIONS AND RELEVANT PROCEDURAL
HISTORY ............................................................................................. 1

  A.   PLAINTIFF HAS SUFFERED SERIOUS AND LONG-
       LASTING DAMAGE AS A RESULT OF THE SEXUAL
       ASSAULT PERPETRATED BY PUIG. ............................................ 1

  B.   YASIEL PUIG, THE SELF-PROCLAIMED 'MOST
       MISUNDERSTOOD PLAYER IN BASEBALL' ................................ 3

III.  PUIG'S COUNTERCLAIMS FOR DEFAMATION PER SE AND
DEFAMATION PER QUOD SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM UNDER FRCP 12(b)(6) .................... 4

  A.   JANE ROE'S ALLEGEDLY DEFAMATORY STATEMENTS
       ARE SUBJECT TO CALIFORNIA'S FAIR AND TRUE
       REPORTING PRIVILEGE ............................................................. 5

    1.   Jane Roe's Statements to KTLA Are Privileged Pursuant to
         the Fair and True Reporting Privilege ............................................ 6

    2.   Jane Roe's Statements to ESPN Are Privileged Pursuant to
         the Fair and True Reporting Privilege ............................................ 8

    3.   Allegedly Defamatory Statements Reported by the
         Cincinnati Enquirer .................................................................... 9

    4.   Statements Privileged under the First Amendment as
         Statement of Opinion .................................................................. 10

    5.   Since All of the Statements Are Privileged, Puig Had Failed
         to Set Forth Facts to Support His Cause of Action and
         Therefore the Counterclaim Should be Dismissed .................... 12

    6.   Because Jane Roe's Statements Are All Privileged Under
         the Fair and True Reporting Privilege, Puig's Counterclaim
         Cannot Be Saved by an Amendment ........................................... 12

  B.   JANE ROE'S COUNSEL'S PUBLIC STATEMENTS ARE NOT
       EXEMPT BY CALIFORNIA CIVIL CODE § 47(d)(2)(A) ............... 13

IV.   PUIG'S COUNTERCLAIM HAS NOT BEEN PLED WITH
REQUISITE SPECIFICITY AS HE CANNOT MEET THAT BURDEN
........................................................................................................... 15

    1.   Puig Cannot Satisfy His Burden of Presenting Clear and
         Convincing Evidence that Jane Roe's Statements Were
         False and Made with Actual Malice ........................................... 16

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

i

(a)     Puig is a Public Figure.......................................................16

(b)     Puig Has Not Pled Facts Demonstrating Jane Roe Acted with Actual Malice.................................................18

2.     Puig Cannot Establish Causation Necessary to Maintain a Cause of Action for Defamation Per Quod ...............................20

B.     IF THE COURT DOES NOT GRANT THIS INSTANT MOTION, THE COURT SHOULD STRIKE PARAGRAPH 48 OF DEFENDANT'S COUNTERCLAIM.............................................22

V.     CONCLUSION ...............................................................................23

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Argentieri v. Zuckerberg*,
   214 Cal. Rptr. 3d 358 (Cal. Ct. App. 2017)......................................................5, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................4, 5, 12

*Augustine v. Trucco*,
   124 Cal. App. 2d 229 (1954) .................................................................................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2017)..........................................................................................4, 12

*Braun v. Chron. Publ'g Co.*,
   52 Cal. App. 4th 1036 (Cal. Ct. App. 1997) ......................................................5, 6

*Carlisle v. Fawcett Publ'ns, Inc.*,
   20 Cal. Rptr. 405 (Cal. Ct. App. 1962) ................................................................17

*Cepeda v. Cowles Magazines and Broadcasting, Inc.*,
   (9 Cir. 1968) 392 F.2d 417 ...................................................................................17

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
   25 Cal.4th 387 (2001) ...........................................................................................18

*Copp v. Paxton*,
   45 Cal.App.4th 829 (1996) ....................................................................................19

*Curtis Publ'g Co. v. Butts*,
   388 U.S. 130 (1967)...............................................................................................16

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ..............................................................................12

*Fantasy Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 2003) ..............................................................................22

*Franklin v. Dynamic Details, Inc.*,
   116 Cal.App.4th 375 (2004) ..................................................................................20

*Gertz v. Welch*,
   418 U.S. 323 (1974).........................................................................................16, 17

*GetFugu, Inc. v. Patton Boggs LLP*,
   162 Cal. Rptr. 3d 831 (Cal. Ct. App. 2013)............................................................8

*Gilbert v. Sykes*,
   53 Cal. Rptr. 3d 752 (Cal. Ct. App. 2007)................................................5, 12, 16

*Green v. Cortez*,
   199 Cal. Rptr. 221 (Cal. Ct. App. 1984) ................................................................6

*Healthsmart Pac., Inc. v. Kabateck*,
   212 Cal. Rptr. 3d 589 (Cal. Ct. App. 2016)............................................................6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

*Hecimovich v. Encinal Sch. Parent Teacher Org.*,
 203 Cal.App.4th 450 (2012) ...................................................................16
*Hoffman v. Capital Cities/ABC, Inc.*,
 255 F.3d 1180 (9th Cir.2001) ...............................................................18
*Issa v. Applegate*,
 31 Cal.App.5th 689 (2019) ............................................................10, 11
*Jackson*,
 217 Cal. Rptr. 3d ...........................................................................8, 17
*Jennie Rivera Enterprises, LLC v. Latin World Entm't Holdings, Inc.*,
 36 Cal. App. 5th 766 (2019) ................................................................20
*J-M Mfg. Co. v. Phillips & Cohen LLP*,
 201 Cal. Rptr. 3d 782 (Cal. Ct. App. 2016) .......................................6, 10
*John Doe 2 v. Superior Court*,
 1 Cal.App.5th 1300 (2016) ..................................................................11
*Lee v. Hertz Corp.*,
 330 F.R.D. 557 (N.D. Cal. 2019) ..........................................................22
*Lee v. Los Angeles*,
 250 F. 3d 668 (9th Cir. 2001) ............................................................4, 16
*Makaeff v. Trump Univ.*,
 715 F. 3d 254 (9th Cir. 2013) .......................................................5, 12, 16
*Michel v. NYP Holdings, Inc.*,
 816 F.3d 686 (11th Cir. 2016) ..............................................................19
*Microsoft Corp.*,
 993 F.Supp. 782 .................................................................................10
*Montandon v. Triangle Publications, Inc.*,
 45 Cal.App.3d 938 ..............................................................................17
*N.Y. Times v. Sullivan*,
 376 U.S. 254 (1964).............................................................................16
*Pippen v. NBCUniversal Media, LLC*,
 734 F.3d. 610 (7th Cir. 2013) ...............................................................19
*Reader's Digest Assn. v. Superior Court*,
 37 Cal.3d 244 (1984) ..........................................................................18
*Resolute Forest Products, Inc. v. Greenpeace International*,
 302 F.Supp.3d 1005 (2017) ..................................................................19

Statutes

CAL. CIV. CODE § 47(d) ...........................................................................5, 15
CALIFORNIA CIVIL CODE § 47(d)(2)(A)13 ...........................................i, 13, 15
California Civil Procedure Code § 425.16 ....................................................13

**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

iv

Rules

Fed. R. Civ. P. 15(a)(2)...................................................................................12

FRCP 12(b)(6) ........................................................i, 1, 4, 12, 16, 20, 23

FRCP 12(b)(6) and 12(f) ....................................................................... 24

FRCP 12(f)..................................................................................22, 23

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Counterclaimant, Yasiel Puig, (hereinafter "Puig") has filed a Counterclaim cynically calculated to punish Plaintiff/Counter-Defendant, Jane Roe, (hereinafter "Jane Roe") for her speech on a matter of public interest.  In fact, this matter is of such public interest, that Puig himself entered into a public forum, deliberately publicizing and arguing his defense – that Plaintiff has fabricated the entirety of her claim in an attempt to "coerce money from a high-profile athlete."  But now, rather than rely upon the power of speech to persuade, Puig attempts to invoke the Court's power in order to suppress and retaliate against protected speech he doesn't like.

Puig's counterclaim should be dismissed because it fails to state a claim for which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6). As a threshold matter, all of the alleged defamatory statements made by Jane Roe are entitled to absolute privilege under the true and fair reporting privilege, as they were made during the course and scope of an ongoing judicial proceeding and they capture the substance and gist of the allegations contained in the underlying proceedings. As such, there are no statements to support any cause of action for defamation.

Even if the Court did not find that the statements were privileged, the Counterclaim should still be dismissed because Puig has not and cannot adequately plead malice. Accordingly, the Court should dismiss Puig's counterclaim.

### II.   FACTUAL   ALLEGATIONS   AND   RELEVANT   PROCEDURAL HISTORY

#### A.   PLAINTIFF HAS SUFFERED SERIOUS AND LONG-LASTING DAMAGE AS A RESULT OF THE SEXUAL ASSAULT PERPETRATED BY PUIG.

This case involves a violent sexual assault perpetrated by Puig on Jane Roe. On October 31, 2018, Jane Roe attended a Los Angeles Lakers game at the Staples Center, where Puig was also present. <u>First Amended Complaint</u>, ¶ 8-10 Exhibit "1"

1

to <u>Declaration of Taylor Rayfield</u>, ("<u>Rayfield Decl.</u>".)  As properly alleged in Jane Roe's operative Complaint, Puig followed Jane Roe into the bathroom. *Id.* Barring Jane Roe from exiting the bathroom, Puig began grabbing at Jane Roe's clothes in an attempt to remove them. *Id.* Puig then began groping Jane Roe's sexual organs. *Id.* Despite her best efforts to escape, Puig used his considerable size advantage over Jane Roe to pin her with one arm, while using the other hand to masturbate his exposed penis and eventually ejaculating. *Id.* Despite Puig's contentions, at no point did Jane Roe consent to the events that took place in the restroom. *Id.* Rather, Plaintiff desperately attempted to fight off Puig, and was terrified and scared for her safety. *Id.*

Consequently, on October 29, 2020, Jane Roe filed a Complaint against Puig, alleging causes of action of (1) Assault and Battery; (2) Intentional Infliction of Emotional Distress; (3) Negligence; and (4) False Imprisonment. Exhibit "9" to <u>Rayfield Decl.</u>  On November 22, 2020, Jane Roe participated in a telephonic interview with KTLA, wherein she recounted the details of her abuse.

Thereafter, on January 22, 2021, Puig filed a Motion to Dismiss Jane Roe's First Amended Complaint, which was ultimately denied by this Court. Accordingly, on May 28, 2021, Puig filed an Answer and Counterclaim, alleging causes of action for (1) Defamation Per Se and (2) Defamation Per Quod. <u>Amended Answer and First Counterclaim</u>,[1] attached as Exhibit "2" to <u>Rayfield Decl.</u> Puig alleged that specific statements attributable to Jane Roe to media outlets, KTLA and ESPN, caused Puig to suffer monetary harm equivalent to "at least $10 million." *Id.* at ¶ 48. Specifically, Puig alleges that because of these statements, no teams in Major League Baseball offered him a contract for the 2021 season. *Id.* at ¶ 12.

---

[1] Notably, Puig filed his original Answer and Counterclaim on May 28, 2021. Thereafter, on the eve of Jane Roe's deadline to file a responsive pleading, Puig filed his First Amended Answer and Counterclaim, which contained a host of new – but equally unavailing – allegations, all of which are addressed herein.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

1    / / /

2    **B.    YASIEL    PUIG,    THE    SELF-PROCLAIMED    'MOST**
3         **MISUNDERSTOOD PLAYER IN BASEBALL'**

4         Although Puig's Counterclaim alleges that Jane Roe's public statements
5    detailing her abuse are to blame for his inability to secure work in Major League
6    Baseball ("MLB" or "the League") during the 2021 season, Puig failed to offer any
7    justification as to why he went unsigned during the 2020 season. Notably, Jane Roe's
8    first public statement to KTLA was not made until November 2020 – well after the
9    conclusion of the 2020 season. Although Puig attributes his inability to secure
10   employment with MLB in 2020 to the fact that he contracted COVID-19,[2] the fact
11   remains that he was a free agent in the months preceding his COVID diagnosis and
12   remained a free agent for months prior to Jane Roe's KTLA interview in November.
13   Yasiel Puig Still a Free Agent After Positive COVID-19 Test, attached as Exhibit "4"
14   to Rayfield Decl. Jane Roe maintains, and there is a wealth of evidence to support,
15   that Puig's inability to secure employment amongst MLB teams stems from his long
16   standing reputation of misconduct and violence – both on and off the field - coupled
17   with repeated instance of tardiness, discipline, and disputes with fans, teammates, and
18   coaches alike. *See* Los Angeles Dodgers' Yasiel Puig Aims Obscene Gesture Towards
19   Fans, attached as Exhibit "5" to Rayfield Decl.; Yasiel Puig Left Behind a
20   Complicated Dodgers Legacy, attached as Exhibit "6" to Rayfield Decl.; and Yasiel
21   Puig Was in a Benches-Clearing Brawl Minutes After He Reportedly Was Traded,
22   attached as Exhibit "7" to Rayfield Decl.

23        In fact, as a result of his widespread infamy, in an effort to rebrand and restore
24   his reputation, on December 14, 2020, Puig starred in a YouTube video entitled
25   "Yasiel Puig is the Most Misunderstood Player in Baseball," seeking to explain away

26

27   _____

28   [2] *See* Puig Deposition Vol. 1, at 41:23-43:20, attached as Exhibit "3" to Rayfield Decl.

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

3

much of his prior conduct that teams and fans took issue with. <u>Yasiel Puig is the Most Misunderstood Player In Baseball</u>, attached as Exhibit 8(b)"  to <u>Rayfield Decl.</u> Throughout the video, Puig attempts to portray his angry outbursts, proclivity for inciting fights, bat flips, and other outlandish behavior as the result of his passion for the sport. *Id.* Tellingly, however, the video does not address Jane Roe's public allegations of sexual assault against Puig. Clearly, in December of 2020 when he released the video, Puig understood that his prior conduct in the League led teams and the public to perceive him as a "problem player" – preventing him from getting signed by any MLB teams. Rather than take accountability for his actions resulting in his inability to obtain employment in the League, Puig now seeks to solely blame Plaintiff for having the nerve to publicly speak out against him.

## III.   <u>PUIG'S COUNTERCLAIMS FOR DEFAMATION PER SE AND DEFAMATION PER QUOD SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FRCP 12(b)(6)</u>

The Court should dismiss Puig's First and Second Cause of Action for Defamation due to his failure to state a claim for which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6).

Federal Rules of Civil Procedure ("FRCP") 12(b)(6) requires a court to evaluate de novo whether the complaint states a claim upon which relief can be granted. *E.g., Lee v. Los Angeles*, 250 F. 3d 668, 679 (9th Cir. 2001). While all the complaint's factual allegations are taken as true and evaluated in Puig's favor, conclusory legal allegations of law do not suffice to defeat a motion to dismiss. Id. Under FRCP 12(b)(6), a complaint "must be dismissed when [the party's] allegations fail to set forth a set of facts which, if true, would entitle complainant to relief." *Tatung Co., Ltd. v. Shu Tzu Hsu*, F. Supp. 3d 1036, 1057 (C.D. Cal. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2017); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

4

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

1  plausible on its face." *Ashcroft,* 556 U.S. at 678 (citation omitted).

2

3  **A.**   **JANE ROE'S ALLEGEDLY DEFAMATORY STATEMENTS**

4  **ARE SUBJECT TO CALIFORNIA'S FAIR AND TRUE**

5  **REPORTING PRIVILEGE**

6  Under California law,[3] defamation is "the intentional publication of a statement

7  of fact which is false, ***unprivileged***, and has a natural tendency to injure or which

8  causes special damages." *Makaeff v. Trump Univ.*, 715 F. 3d 254, 264 (9th Cir. 2013)

9  (quoting *Gilbert v. Sykes*, 53 Cal. Rptr. 3d 752, 764 (Cal. Ct. App. 2007) (emphasis

10  added).

11  The fair and true reporting privilege, codified as CAL. CIV. CODE § 47(d),

12  classifies as privileged any publications or broadcasts made "(1) [b]y a fair and true

13  report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or

14  (C) other public official proceeding, or (D) of anything said in the course thereof, or

15  (E) of a verified charge or complaint made by any person to a public official, upon

16  which complaint a warrant has been issued." This privilege applies specifically to

17  communications to the press, and it requires only that the report be fair and true, not

18  that it further any underlying litigation. *Argentieri v. Zuckerberg*, 214 Cal. Rptr. 3d

19  358, 372 (Cal. Ct. App. 2017). As discussed *infra*, while Puig is unable to prove Jane

20  Roe made her statements to the press with actual malice, the fair and true reporting

21  privilege is ***absolute and applies regardless of the motivation for making the report***.

22  *Id.*

23  To be "fair and true," the report must capture "the substance, the 'gist' or

24  'sting,' of the subject proceedings.'" *Argentieri*, 214 Cal. Rptr. 3d at 373 (quoting

25  *Braun v. Chron. Publ'g Co.*, 52 Cal. App. 4th 1036, 1050 n.6 (Cal. Ct. App. 1997)).

26  _____

27  [3] California law applies to these causes of action because the case is in Federal Court

28  due to diversity jurisdiction.

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

"'Fair and true' . . . does not refer to the truth or accuracy of the matters asserted in the judicial proceedings, but rather to the accuracy of the challenged statements with respect to what occurred in the judicial proceedings." *Healthsmart Pac., Inc. v. Kabateck*, 212 Cal. Rptr. 3d 589, 603 (Cal. Ct. App. 2016). Whether the report is fair and true is measured by the "natural and probable effect" of the report "on the mind of the average reader." *Id.* (quoting *Braun*, 52 Cal. App. 4th at 1050 n.6) (internal quotation marks omitted). Because the defendant is entitled to a "certain degree of 'flexibility/literary license,'" the privilege applies even when the report exhibits a "slight inaccuracy in details," so long as the divergence does not "lead the reader to be affected differently by the report than he or she would be by the actual truth." Id. (quoting *J-M Mfg. Co. v. Phillips & Cohen LLP*, 201 Cal. Rptr. 3d 782, 792 (Cal. Ct. App. 2016)).

Each of the publications cited to by Puig are undoubtedly "public journals" within the meaning of the statute. *See Green v. Cortez*, 199 Cal. Rptr. 221, 224 (Cal. Ct. App. 1984) (explaining that a television broadcast company and newspapers "are no doubt 'public journals' within the meaning of the statute.").

As a threshold matter, Jane Roe filed her Complaint against Puig on October 29, 2020. Complaint, attached as Exhibit "9" to Rayfield Decl. Thereafter, Puig successfully petitioned to remove this action to federal court, and on December 30, 2020, Jane Roe filed her First Amended Complaint against Puig, asserting identical allegations and causes of action as in her original Complaint. First Amended Complaint, Exhibit "1" to Rayfield Decl. Accordingly, at the time Jane Roe made any public statements, judicial proceedings had already been initiated against Puig. Rayfield Decl. ¶ 3.

### 1.   Jane Roe's Statements to KTLA Are Privileged Pursuant to the Fair and True Reporting Privilege

In Puig's Counterclaim, he quotes Jane Roe's statement to Mary Beth McDade: "[PUIG] grabbed me and he was touching himself, which

6

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

1
2
3
4

> (sic) he pulled himself really close to me and wouldn't let me go… I walked into the restroom and felt someone behind me, next thing I know the door was slammed. I really had no way of getting out… He was just saying like, come on baby, like weird things like that. It was traumatic. It was very, very traumatic."

5  <u>Answer and Counterclaim</u>, ❡ 38, attached as Exhibit "2" to <u>Rayfield Decl</u>.   Puig

6  further alleges that he was defamed by a statement by Jane Roe's counsel wherein she

7  indicated that the text messages contain Puig's admission that "something happened"

8  between the parties.   Answer and Counterclaim, ❡ 38.   Puig's amended counterclaim

9  makes much this alleged defamatory statement.   However, despite his best efforts to

10  save his claim by including this statement by counsel, it is equally privileged by the

11  fair and true reporting privilege. Jane Roe's complaint expressly states that something

12  did happen between her and Puig – sexual assault. Ironically, Puig's own

13  Counterclaim also alleges that something happened – consensual intercourse.

14  Accordingly, this statement is absolutely privileged under the fair and true reporting

15  privilege as it accurately captures the 'gist' of Jane Roe's Complaint.

16      Moreover, as set forth in detail below, this statement by counsel is further

17  entitled to privilege under the First Amendment as a statement of opinion. Puig and

18  his counsel's own statements again belie their allegations of defamation. Specifically,

19  in a public statement issued by Puig and his counsel, Mr. Mason argues that the text

20  message exchanges between the parties "completely exonerate" Puig.   <u>Yasiel Puig</u>

21  <u>Press Release</u>, attached as Exhibit "10" to <u>Rayfield Decl</u>. While Jane Roe maintains

22  that the text messages clearly demonstrate that the sexual assault did occur[4], it is

23

24

---

25  [4] Tellingly absent from Puig's recitation and misrepresentation of facts in his

26  Amended Counterclaim, is a text message Puig sent to Jane Roe almost immediately

following the sexual assault wherein he stated: "Private [sic] between me and me [sic]

27  everything that happens no one has to know[.]" <u>Text Messages</u>, Exhibit "1" to <u>Roe</u>

<u>Decl</u>. Accordingly, by Puig's own admission, something *did* happen – making

28

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

Puig's opinion that they have the opposite effect and demonstrate that Jane Roe's claims are "based on provably false claims." *Id*.  The parties have a clear difference opinion as to the interpretation of these texts; however, public statements expressing differing opinions are not actionable as defamation.  Even when viewing these statements "in context of the interview" Jane Roe maintains that Puig's text messaging stating "Private [sic] between me and me [sic] everything that happens no one has to know" does constitute an admission of wrongdoing. <u>Text Messages</u>, attached as Exhibit "1" to <u>Roe Decl</u>.

Jane Roe's report to KTLA not only captures the substance or "gist" of the allegations in the pleadings, but almost recounts the pled allegations verbatim. Further, any statements of opinion made by Jane Roe are protected under the First Amendment. "Because a defamatory statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability." *Jackson*, 217 Cal. Rptr. 3d at 253 (citing *GetFugu, Inc. v. Patton Boggs LLP*, 162 Cal. Rptr. 3d 831, 842 (Cal. Ct. App. 2013). Moreover, Jane Roe's statements to KTLA were made during an ongoing judicial proceeding and truthfully and fairly report the gist of the subject proceeding.  Her complaint laid out how she was assaulted and that she was traumatized.  These statements to the press after the Complaint was filed absolutely captures the substance and gist of the proceedings and as such are entitled to absolute privilege under the fair and true reporting privilege and/or First Amendment.

## 2. Jane Roe's Statements to ESPN Are Privileged Pursuant to the Fair and True Reporting Privilege

With respect to Jane Roe's allegedly defamatory statements in her March 2021

counsel's statements further privileged as true.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

interview with ESPN, Puig alleges that Jane Roe made the following statements: "that PUIG physically restrained JANE ROE in the bathroom of the Chairman's room, that he did so by pinning with his forearm, that he tried to take her clothes off, that he groped her, that he exposed himself to her and that he masturbated in front of her." Answer and Counterclaim, ‖ 42, attached as Exhibit "2" to Rayfield Decl. Again, these alleged defamatory statements nearly mirror Jane Roe's allegations in her Complaint. As such, they are similarly entitled to absolute privilege under the fair and true reporting privilege.

### 3.   Allegedly Defamatory Statements Reported by the Cincinnati Enquirer

As an initial matter, neither Jane Roe nor her counsel made any statements to the Cincinnati Enquirer ("Enquirer"). Rayfield Decl. ‖ 3. The allegedly defamatory statements Puig seeks to hold Jane Roe accountable for which were posted by the Enquirer, were taken directly from a public press release issued by Jane Roe's counsel on April 14, 2021. Id. In fact, this statement by counsel was released in response to Puig and his counsel's April 13, 2021 press release wherein they alleged that Jane Roe had fabricated the entirety of her claim and that Jane Roe had "propositioned" Puig for a sexual encounter, in a transparent attempt to garner public favor. Yasiel Puig Press Release, attached as Exhibit "10" to Rayfield Decl. Regardless, all of the statements Puig claims to have been defamed by are absolutely protected by various privileges, as discussed supra.

The first portion of counsel's quoted statement indicates that after Jane Roe was sexually assaulted by Puig, he sent her 18 text messages, begging to see her. Amended Answer and Counterclaim, ‖ 46. This statement is demonstrably true – and even Puig concedes this point. Text Messages, attached as Exhibit "1" to Roe Decl.; see also Amended Answer and Counterclaim, ‖ 21. Accordingly, these statements are not actionable under a theory of defamation. Next, Puig cites to a quotation by counsel where in stated that Jane Roe was "fearful of a further attack or retribution by [PUIG],

9

**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

our client attempted to de-escalate his behavior by providing curt responses to the texts and later ignoring him. Our client did nothing to encourage this behavior." *Id.* at ¶ 46. Jane Roe's operative complaint vividly describes Puig's violent and aggressive behavior, which caused Jane Roe to suffer great fear and mental anguish. So much so, that to this day, Jane Roe is "paranoid everywhere she goes, for fear of what may happen. She feels like her life went from a happy, driven place, to a place of fear." First Amended Complaint, ¶ 6. Accordingly, this statement clearly captures the 'gist' of the allegations of the Complaint. Moreover, these statements to not constitute a "deviation of such a 'substantial character' that it 'produce[s] a different effect on the reader" to warrant the suspension of the true and fair reporting privilege. *Argentieri v. Zuckerberg*, 8 Cal.App.5th 768, 790 (quoting *Microsoft Corp.*, 993 F.Supp. 782, 784).

Finally, Puig goes on to quote Jane Roe's counsel saying, "This is another event in a pattern of violent and brutish behavior by [PUIG], while attempting to breathe life into his dying career." Amended Answer and Complaint, ¶ 46. Again, this adequately captures the substance of Jane Roe's pled allegations, as following a woman into a bathroom and groping her sexual organs, pinning her down and masturbating unquestionably constitutes violent and brutish behavior as alleged by Jane Roe. First Amended Complaint, ¶¶ 8, 16, 22, 3. This use of flexibility and literary licenses does not run afoul of the true and fair reporting privilege. *J-M Manufacturing Co.*, 247 Cal.App.4th 87, 98. Notably, as detailed *infra*, this is also subject to First Amendment protection as a statement of opinion by counsel.

### 4. Statements Privileged under the First Amendment as Statement of Opinion

"A plaintiff claiming defamation by implication may not construct an actionable statement by reading whatever implication it wishes into the defendants' words, and the implications drawn from the statement must convey facts, not opinions." *Issa v. Applegate*, 31 Cal.App.5th 689, 707 (2019). In reviewing a

10

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

defamation claim, a court must ask as a threshold matter whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact; if the answer is no, the claim is foreclosed by the First Amendment. *Id.* Under the First Amendment there is no such thing as a false idea, and thus statements of opinion can never subject the speaker to liability for making a false and defamatory statement. *John Doe 2 v. Superior Court*, 1 Cal.App.5th 1300, 1313 (2016). Puig contends to have been defamed by a statement made by Jane Roe's counsel indicating the existence of text messages proving Puig sexually assaulted Jane Roe. <u>Amended Answer and Counterclaim</u>, ¶ 38.  Following Puig and his counsel's public statements calling Jane Roe's allegations of sexual abuse a fabrication by "someone looking for a payday," Jane Roe's counsel in turn issued a press release, which was ultimately published by the Cincinnati Enquirer. Puig alleges to have been defamed by counsel's comment: "This is another event in a pattern of violent and brutish behavior by [PUIG], while attempting to breathe new life into his dying career." *Id.* at ¶ 46. Viewing the statement in the context in which it was published, is clearly does not imply any assertion of objective facts. Rather, it constitutes an opinion by counsel, formed in response to Puig's public attempt to victim blame, in hopes of garnering public favor. Though Puig may not like or agree with counsel's characterization of his behavior, such statements are not actionable under a theory of defamation.

Moreover, as noted *supra*, statements by counsel that she is in possession of text messages proving that Puig sexually assaulted Jane Roe and that the texts demonstrate that "something happened" are not actionable defamatory statements. *Id.* at ¶ 38. In viewing the text message sent by Puig almost immediately following the sexual assault, wherein Puig warned Jane Roe to keep what happened "private" between them, followed by a barrage of 17 other unanswered text messages, counsel opined that this admissible evidence demonstrates the validity of Jane Roe's claims that she was sexually abused by Puig. Conversely, in Puig and his counsels publicly issued press release, Mr. Mason argues that the text message exchanges between the

11

parties "completely exonerate" Puig. *See* Exhibit "10" to <u>Rayfield Decl.</u> The parties clearly have a different opinion as to the interpretation of the texts and how they support the parties respective case.  However, counsel's expressed opinions as to the interpretation of evidence does not constitute as defamation.

5.     **Since All of the Statements Are Privileged, Puig Had Failed to Set Forth Facts to Support His Cause of Action and Therefore the Counterclaim Should be Dismissed**

Under FRCP 12(b)(6), a complaint "must be dismissed when [the party's] allegations fail to set forth a set of facts which, if true, would entitle complainant to relief." *Tatung Co., Ltd. v. Shu Tzu Hsu*, F. Supp. 3d 1036, 1057 (C.D. Cal. 2014) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2017); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

As outlined above all of the "statements" that Puig alleges to support his claim for defamation are privileged statements and therefore he has not alleged any statements to support a cause of action for defamation since defamation is "the intentional publication of a statement of fact which is false, ***unprivileged***, and has a natural tendency to injure or which causes special damages." *Makaeff v. Trump Univ.*, 715 F. 3d 254, 264 (9th Cir. 2013) (quoting *Gilbert v. Sykes*, 53 Cal. Rptr. 3d 752, 764 (Cal. Ct. App. 2007) (emphasis added).  Therefore, the Counterclaim should be dismissed.

6.     **Because Jane Roe's Statements Are All Privileged Under the Fair and True Reporting Privilege, Puig's Counterclaim Cannot Be Saved by an Amendment**

Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to amend] when justice so requires. Fed. R. Civ. P. 15(a)(2). Where a motion to dismiss is granted, a district court should provide leave to amend, ***unless it is clear that the complaint could not be saved by any amendment***. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  As it applies here, even in

12

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

viewing the three public statements in their entirety, all of Jane Roe's statements are absolutely privileged under the fair and true reporting privilege. As such, Puig's counterclaim cannot be saved by an amendment and should be dismissed outright.

Critically, on June 11, 2021 and June 25, 2021, during the parties meet and confer conference regarding Jane Roe's intent to file the instant motion and a Motion to Strike pursuant to California Civil Procedure Code § 425.16 (filed concurrently herewith), Jane Roe clearly and unequivocally laid out her basis for filing these motions. Rayfield Decl. ¶ 4. Counsel made clear that she believed all statements as pled were protected under the true and fair reporting privilege or were otherwise entitled to protection under the First Amendment and therefore could not be saved by any amendment. *Id.* Thereafter, on the eve of Jane Roe's deadline to file these motions, Puig filed his Amended Answer and Counterclaim. *See generally*, Amended Answer and Counterclaim. In it, Puig added a host of new – but ultimately unavailing – "facts" and allegations in a transparent attempt to salvage his baseless and frivolous counterclaim. Puig clearly expended a great deal of time and effort attempting to set forth all of the best facts he could to save his causes of action for defamation. However, even this is not enough to save his counterclaim. Puig has already gotten two bites of the apple in making baseless accusations against Jane Roe. Puig's Amended Counterclaim only serves to demonstrate that his complaint **cannot** be saved by any amendment. Accordingly, Jane Roe respectfully requests the Court dismiss Puig's counterclaim without leave to amend.

## B.   JANE ROE'S COUNSEL'S PUBLIC STATEMENTS ARE NOT EXEMPT BY CALIFORNIA CIVIL CODE § 47(d)(2)(A)

California Civil Code § 47(d)(2)(A) holds that statements made in violation of Rule 3.6 (formerly Rule 5-120) of the State Bar Rules of Professional Conduct are exempt from protection under the fair and true reporting privilege. State Bar Rule of Professional Conduct 3.6(a) states:

"A lawyer who is participating or has participated in the

13

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows* or reasonably should know* will (i) be disseminated by means of public communication and (ii) have a **substantial\* likelihood of materially prejudicing an adjudicative proceeding** in the matter." (emphasis added).

During the parties second meet and confer conference prior to the filing of the instant Motion, counsel for Puig indicated for the first time that Jane Roe's counsel's statements, in general, ran afoul of Rule 3.6, because they materially prejudiced **the defendant**- Puig. However, this is not the rule. If it was, any statement made by a party that was prejudicial to the opposing party would violate this rule. Rather, Puig must demonstrate that the statements made by counsel were made with knowledge that they would materially prejudice the adjudicative proceeding itself. Puig has not – and cannot – make such a showing.

Moreover, any assertion by Puig that counsel's press release disseminated by the Cincinnati Enquirer violate 3.6 should be dismissed outright pursuant to Rule 3.6(c):

Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

Counsel's April 14, 2021 press release was made in order to protect Jane Roe from the undue and prejudicial effect of Puig's blatantly false and misleading press release. Rayfield Decl. ¶ 3. The subsequent information put out by counsel related to Puig's barrage of 18 text messages (all of which went unanswered) and Jane Roe's eventual responses was necessary in order to rebut Puig's misrepresentation that Jane Roe sent Puig "a series of affectionate and endearing messages." *See* Exhibit "11" to Rayfield Decl. Puig and his counsel's further gross and intentional misrepresentation that Jane Roe was heterosexual woman engaged to a male, by indicating that she lied about the assault so her "fiancé" would not find out, forced Jane Roe to publicly clarify

14

that she is a lesbian and her female fiancée was present with her on the night of the assault. <u>Response to Yasiel Puig's Press Statement</u>, attached as Exhibit "11" to <u>Rayfield Decl</u>. Because Jane Roe and her counsel's subsequent statements as published by the Cincinnati Enquirer were made necessary by Puig's blatantly false and prejudicial press release, they are permissible pursuant to Rule 3.6(c) and therefore do not violate California Civil Code § 47(d)(2)(A).

Puig has not alleged that Jane Roe's counsel made any defamatory statements contained in the ESPN article that violate Rule 3.6, and Jane Roe contends there are none. With respect to counsel's statements in the KTLA interview, Puig's argument is meritless. Puig has not put forth any evidence demonstrating that Jane Roe's counsel knew or should have known that the statement had a ***substantial likelihood*** of ***materially*** prejudicing the sexual abuse case at hand. The statement was issued long before any jury pool was formed – in fact, it was issued well before a trial date was even selected – and it did not set forth any information that Puig has contended is inadmissible. To the contrary, Puig contends that the text messages constitute evidence that "completely exonerate" him. *Id*. While Puig may not like the statements, they are not defamatory or in violation of the Rules on Trial Publicity as they are ostensibly true[5] and a fair summary of the filed complaint.   Accordingly, any arguments put forth by Puig that counsel's public statements are exempt from the privilege pursuant to California Civil Code § 47(d)(2)(A) should be dismissed outright.

## IV.    PUIG'S COUNTERCLAIM HAS NOT BEEN PLED WITH REQUISITE

---

[5] Again, Jane Roe maintains that Puig's text immediately after the assault warning her that what happened was "private" between them, followed by a barrage of 17 other unanswered text messages, do in fact demonstrate that Puig sexually assaulted Jane Roe. *See* <u>Text Messages</u>, Exhibit "1" to <u>Roe Decl</u>.

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone  (949) 252-9990

15

## SPECIFICITY AS HE CANNOT MEET THAT BURDEN

Federal Rules of Civil Procedure ("FRCP") 12(b)(6) requires a court to evaluate de novo whether the complaint states a claim upon which relief can be granted. *E.g., Lee v. Los Angeles*, 250 F. 3d 668, 679 (9th Cir. 2001). While all the complaint's factual allegations are taken as true and evaluated in Puig's favor, conclusory legal allegations of law do not suffice to defeat a motion to dismiss. *Id.*

> **1.  Puig Cannot Satisfy His Burden of Presenting Clear and Convincing Evidence that Jane Roe's Statements Were False and Made with Actual Malice**

Under California law, defamation is "the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damages." *Makaeff v. Trump Univ.*, 715 F. 3d 254, 264 (9th Cir. 2013) (quoting *Gilbert v. Sykes*, 53 Cal. Rptr. 3d 752, 764 (Cal. Ct. App. 2007)). A plaintiff bringing a defamation claim must prove four elements: (1) that defendant published the statements; (2) that the statements were about plaintiff; (3) the statements were false; and (4) defendant failed to use reasonable care to determine the truth or falsity of the statements. *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal.App.4th 450, 470 (2012).

However, public figures suing for defamation must further prove with "convincing clarity" that alleged defamatory statements were made with "actual malice;" that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80, 285-86 (1964); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 155 (1967); *Gertz v. Welch*, 418 U.S. 323, 342, 344 (1974).

### (a)  Puig is a Public Figure

Puig, by his own admission, is a public figure. <u>Deposition Transcript of Yasiel Puig</u>, Vol 1 59:18, Exhibit "3" to <u>Rayfield Decl.</u> Individuals like Puig who "achieve such pervasive fame or notoriety . . . become[] a public figure for all purposes and in

16

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

all contexts." *Gertz*, 418 U.S. at 351. "Public figures' are those persons who, though not public officials, are 'involved in issues in which the public has a justified and important interest.' Such figures are, of course, numerous and include artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done. *Montandon v. Triangle Publications, Inc.*, 45 Cal.App.3d 938, 946 (quoting *Cepeda v. Cowles Magazines and Broadcasting, Inc.*, (9 Cir. 1968) 392 F.2d 417, 419). Indeed, in a public statement shared by Puig with his nearly 900,000 Twitter followers, in a transparent attempt to garner public sympathy and cast blame on Jane Roe, Puig's attorney, Mr. Alan Jackson, is quoted saying:

> **"The evidence we have accumulated is overwhelming and it confirms that the allegations are untrue,** and this is nothing more than an attempt to use the legal system to coerce money **from a high-profile athlete**."

<u>Yasiel Puig Press Release</u>, attached as Exhibit "10 to <u>Rayfield Decl.</u> (emphasis added). Even Puig's own attorneys classify Puig as a "high-profile," well-known athlete. *Id.*

Courts have held that "there is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities. Certainly, the accomplishments and way of life of those who have achieved a marked reputation or notoriety by appearing before the public such as actors and actresses [and] professional athletes, . . . may legitimately be mentioned and discussed in print or on radio or television. Such public figures have to some extent lost the right of privacy, and it is proper to go further in dealing with their lives and public activities than with those of entirely private persons." *Jackson v. Mayweather*, 217 Cal. Rptr. 3d 234, 250 (Cal. Ct. App. 2017) (quoting *Carlisle v. Fawcett Publ'ns, Inc.*, 20 Cal. Rptr. 405, 414 (Cal. Ct. App. 1962)).

As a renowned professional athlete who played for several years in the MLB for the Los Angeles Dodgers, Cincinnati Reds, and Cleveland Indians, Puig certainly

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

17

falls within the public figure category. Moreover, Puig's Counterclaim alleges that Puig made his MLB debut with the Los Angeles Dodgers in 2013 – during which time he "took the sport by storm," being the first player in MLB history to win the National League Rookie of the Month Award and the National League Player of the Month award in their first month in the Major Leagues. Amended Answer and Counterclaim, ¶ 8, attached as Exhibit "2" to Rayfield Decl.

During his six-year tenure in the MLB, Puig achieved a great degree of notoriety for his record setting performances, outlandish conduct, and propensity for inciting on-field fights and bench clearing brawls. Puig undoubtedly has created widespread attention for his activities both on and off the field that has earned him the title of public figure. Accordingly, because Puig is an all-purpose public figure, in order to prevail on his causes of action for defamation, he must establish by clear and convincing evidence that Jane Roe made the allegedly defamatory statements with actual malice.

### (b)   Puig Has Not Pled Facts Demonstrating Jane Roe Acted with Actual Malice

"If the person defamed is a public figure, he cannot recover unless he proves, by clear and convincing evidence ..., that the libelous statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Digest Assn. v. Superior Court*, 37 Cal.3d 244, 256 (1984).   "The rationale for such differential treatment is, first, that the public figure has greater access to the media and therefore greater opportunity to rebut defamatory statements, and second, that those who have become public figures have done so voluntarily and therefore 'invite attention and comment.' " *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 398 (2001).

This requirement presents "a heavy burden, far in excess of the preponderance sufficient for most civil litigation.' " *Hoffman v. Capital Cities/ABC, Inc.* 255 F.3d 1180, 1186–87 (9th Cir.2001).   "The burden of proof by clear and convincing

18

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

1  evidence 'requires a finding of high probability. ***The evidence must be so clear as to***

2  ***leave no substantial doubt. It must be sufficiently strong to command the***

3  ***unhesitating assent of every reasonable mind." Copp v. Paxton***, 45 Cal.App.4th 829,

4  846 (1996) (emphasis added).

5  In determining whether a plaintiff has adequately pled actual malice, the court

6  must "disregard the portions of the complaint where [the Plaintiff] alleges in a purely

7  conclusory manner that the defendants had a particular state of mind in publishing the

8  statements as '[t]hredbare recitals of the elements of a cause of action, supported by

9  merely conclusory statements,' are insufficient to support a cause of action." *Resolute*

10  *Forest Products, Inc. v. Greenpeace International*, 302 F.Supp.3d 1005, 1018

11  (2017)(*quoting Michel v. NYP Holdings, Inc*., 816 F.3d 686, 703-04 (11th Cir. 2016).

12  Though states of mind may be pled generally, the plaintiff must still point to details

13  sufficient to render a claim plausible. *Pippen v. NBCUniversal Media, LLC*, 734 F.3d.

14  610, 614 (7th Cir. 2013).

15  Puig's Amended Counterclaim attempts to save his allegations that Jane Roe

16  and/or her counsel acted with actual malice in making the allegedly defamatory

17  statements; however, in doing so Puig revealed his true intent in bringing this

18  counterclaim – not to punish Jane Roe for her public statements, but to punish her for

19  filing suit in the first place.  Specifically, Puig states: "These false statements were

20  made with actual malice. ***Indeed, PUIG did not sexually assault JANE ROE***…"

21  <u>Amended Answer and Counterclaim</u>, ⁋ 62 (emphasis added). Despite his best efforts

22  to save his counterclaim, simply cannot demonstrate that Jane Roe or her counsel's

23  statements indicating that Jane Roe was sexually abused by Puig are false or made

24  with actual malice.  But Puig's counterclaim is not designed to win on the merits – it

25  has no merits. Rather, it is designed to let Jane Roe (and anyone else who has the

26  audacity to attempt to hold Puig accountable for his sexual misconduct) know that

27  there will be financial consequences for speaking out against him. The process of

28  denying a sex assault accusation, attacking the victim, and then positing himself the

19

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

1   "real" victim is tragically not unique to Puig and often occurs in the context of sexual

2   abuse litigation. This is precisely what Puig is attempting to do through this lawsuit.

3   In his statement to the press, Puig predictably paints himself as the victim, noting that

4   "with a mere unsupported accusation, the sports world has turned against me without

5   ever hearing my side." Yasiel Puig Press Release, Exhibit "10" to Rayfield Decl. If

6   public reporting and commentary protected by the First Amendment adversely affects

7   Puig's livelihood, he can freely exercise his First Amendment right to counter that

8   reporting and commentary – and that is exactly what he has done. *Id*. But he cannot

9   be permitted to use the courts to silence speech he does not like.

10      In sum, Puig has not – and cannot – establish by clear and convincing evidence

11  that Jane Roe or her counsel's statements were false and made with actual malice.

12  Puig's threadbare assertions as to Jane Roe's state of mind simply do not suffice.

13  Puig's counterclaim in its entirety is nothing more than a thinly veiled attempt to

14  punish Jane Roe for speaking out publicly about the violent sexual assault that she

15  suffered at the hands of a powerful and wealthy professional athlete.

16      **2.  Puig Cannot Establish Causation Necessary to Maintain a**

17          **Cause of Action for Defamation Per Quod**

18      Puig's cause of action for defamation per quod is subject to dismissal pursuant

19  to FRCP 12(b)(6) for the reasons as outlined above. In addition to the myriad of

20  evidentiary obstacles Puig faces, he further cannot make the requisite showing that

21  Jane Roe's statements were a "substantial factor" in his inability to obtain

22  employment in the MLB. *Franklin v. Dynamic Details, Inc.*, 116 Cal.App.4th 375,

23  391 (2004); *see also Judicial Council of California Civil Jury Instructions* ("CACI")

24  No. 1705. To establish that Jane Roe's statements were the cause of his alleged harm,

25  Puig must introduce evidence that he would not have suffered harm (i.e., would have

26  been able to secure a MLB contract) had it not been for Jane Roe's alleged defamatory

27  statements to ESPN and KTLA. *See Jennie Rivera Enterprises, LLC v. Latin World

28  Entm't Holdings, Inc.*, 36 Cal. App. 5th 766, 792-93 (2019) (citations omitted);

20

1   *Augustine v. Trucco*, 124 Cal. App. 2d 229, 246 (1954). This is impossible.

2       As detailed *supra*, Mr. Puig is infamous for his outbursts and misbehavior

3   through the league.  In fact, he made a whole video about how he is the most

4   misunderstood person in baseball in a desperate attempt to garner favor with the MLB.

5   Mr. Puig was not signed to an MLB team in 2020, which was before the Complaint

6   was filed in this case.  Further, he is quoted in a Dodger's Nation article from January

7   1, 2021, "The main thing for me and my agent right now is to be healthy and improve

8   the things that bothered some people when I played…You've got to pay attention to

9   the coaches.  If they tell me to move to a certain area and the ball ends up being hit

10  somewhere else, that's a problem with their statistics.  They're the ones in charge."

11  Former Dodgers Outfielder Yasiel Puig Admits to Not Listening to Coaches, attached

12  as Exhibit "12" to Rayfield Decl. The article states that a huge factor for why Puig

13  was not being signed was because of the narrative that followed him which was, "He

14  was difficult. He was late often.  And now admits he wasn't always ready to listen."

15  *Id.*  That evidence alone shows it is his past behavior on and off the field that has kept

16  teams from wanting to deal with him.  His Counterclaim does not have allegations to

17  support a finding that Jane Roe's statements were a substantial factor.

18       Further, even assuming this litigation has prevented him from being signed, it

19  is the litigation itself, not the statements in the press that prevented him from being

20  signed. Immediately following the filing of Jane Roe's Complaint in October 2020,

21  countless news sources reported on Jane Roe's allegations based upon the publicly

22  filed Complaint.  The complaint itself – absent any interviews – undoubtedly would,

23  and did, garnish widespread public attention based upon Puig's celebrity status.

24  Accordingly, Jane Roe and her counsel's public statements were not the cause of MLB

25  team's decision to pass on Puig – the potential public outrage was. Consider a

26  hypothetical. If the weatherman says he thinks it is going to rain and you look outside

27  and see a downpour, you do not grab an umbrella because the weatherman said it

28  would rain. You grab the umbrella, so you do not get wet. But just as rain is the

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

proximate cause of grabbing an umbrella, accepting Puig's allegations as true, it is the Complaint itself that prevented him being signed, not any interviews which simply recited the facts of the Complaint.

Puig has not adequately pled causation because he cannot.  As such his cause of action for defamation per quod must be dismissed.

**B.   IF THE COURT DOES NOT GRANT THIS INSTANT MOTION, THE COURT SHOULD STRIKE PARAGRAPH 48 OF DEFENDANT'S COUNTERCLAIM**

FRCP 12(f) states that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A motion to strike should be granted if it will eliminate serious risks of prejudice to the moving party, delay, or confusion of issues." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 560 (N.D. Cal. 2019) (citing *Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 2003), rev'd on other grounds by *Fogerty v. Fantasy Inc.*, 510 U.S. 517 (1994)). Courts may grant a motion to strike where doing so would eliminate prejudice to the moving party. *Lee*, 330 F.R.D. at 560.

Paragraph 48 of Puig's First Amended Counterclaim, titled "OTHER FALSE STATEMENTS," alleges:

> Puig is informed, believes, and on that basis alleges that JANE ROE and/or her counsel of record on her behalf, made the same, or substantially the same, false statements relating to JANE ROE to other persons and entities, including to Major League Baseball and its representatives, to Major League Baseball franchises and their representatives, and to other third parties, all in an effort to prejudice and cause damage to PUIG.

Amended Answer and Counterclaim, ¶ 48, attached as Exhibit "2" to Rayfield Decl. This section of the Counterclaim does not allege any specific statements made by Jane Roe or her counsel of record. Instead, Puig merely provides a general, overarching

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone  (949) 252-9990

statement describing his sneaking suspicion that Plaintiff or her counsel made defamatory statements to MLB and its franchises. These vague allegations of other, unspecified – and nonexistent – statements, undoubtedly result in undue prejudice to Jane Roe. Jane Roe cannot defend herself against unknown allegations. Moreover, Puig absolutely cannot establish that Jane Roe acted with actual malice in making unspecified statements, that Puig himself does not even know to exist. Accordingly, should the Court determine that Puig's Counterclaim may stand, Jane Roe respectfully requests that the Court strike paragraph 48 in its entirety.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff/Counter-Defendant, Jane Roe, respectfully requests that the Court grant her Motion to Dismiss Puig's First and Second Causes of Action pursuant to FRCP 12(b)(6). Alternatively, Jane Roe respectfully requests the Court grant her Motion to Strike paragraph 48 of the Amended Counterclaim, pursuant to FRCP 12(f).

DATED: July 8, 2021            **MANLY STEWART FINALDI**

By:    /s/ Taylor Rayfield

TAYLOR RAYFIELD
Attorneys for Plaintiff

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

CERTIFICATE OF SERVICE
***Jane Roe v. Yasiel Puig et al.***
***Case No.: 2:20-cv-11064-FMO-MRW***

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Orange, State of California, and not a party to the above-entitled cause.

On July 8, 2021, I served a true copy of **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) and 12(f)**

[  ]    By personally delivering it to the persons(s) indicated below in the manner as provided in FRCivP5(B)

[  ]    By depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the parties indicated on the attached service list;

[X]    By ECF: On this date, I electronically filed the following document(s) with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet;

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

[X] (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on **July 8, 2021,** at Irvine, California.

/s/Kathy Frederiksen

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS

## SERVICE LIST

**Alan J Jackson**
**Caleb E Mason**
Werksman Jackson and Quinn LLP
888 West 6th Street 4th Floor
Los Angeles, CA 90017
213-688-0460
Fax: 213-624-1942
Email: ajackson@werksmanjackson.com
cmason@werksmanjackson.com
*Attorneys for Defendant Yasiel Puig*

**Reed T Aljian**
Daily Aljian LLP
100 Bayview Circle
Suite 5500
Newport Beach, CA 92660
949-861-2524
Fax: 949-269-6364
Email: ra@dallp.com
*Attorneys for Defendant Yasiel Puig*

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS