JOHN C. MANLY, Esq. (State Bar No. 149080)
jmanly@manlystewart.com
TAYLOR RAYFIELD, Esq. (State Bar No. 272300)
trayfield@manlystewart.com
**MANLY, STEWART & FINALDI**
19100 Von Karman Ave., Suite 800
Irvine, CA 92612
Telephone: (949) 252-9990
Fax: (949) 252-9991

Attorneys of Record for Plaintiff,

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JANE ROE,<br><br>       Plaintiff,<br><br>  v.<br><br>YASIEL PUIG; and DOES -10 inclusive.<br><br>     Defendants. | Case No.:  2:20-cv-11064-FMO-MRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JANE ROE'S MOTION TO STRIKE YASIEL PUIG'S FIRST AMENDED COUNTERCLAIM PURSUANT TO CODE OF CIVIL PROCEDURE § 425.16**<br><br>Date:  August 12, 2021<br>Time: 10:00 a.m.<br>Courtroom: 6D<br>**Trial Date: May 3, 2022**<br><br>**Judge:** Fernando M. Olguin |

MANLY STEWART FINALDI<br>19100 Von Karman Avenue, Suite 800<br>Irvine, California 92612<br>Telephone (949) 252-9990

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I.     INTRODUCTION................................................................................................1

II.    FACTUAL ALLEGATIONS AND RELEVANT PROCEDURAL HISTORY .................2

    A.   PLAINTIFF HAS SUFFERED SERIOUS AND LONG-LASTING DAMAGE AS A RESULT OF THE SEXUAL ASSAULT PERPETRATED BY PUIG. ......................................................................2

    B.   YASIEL PUIG, THE SELF-PROCLAIMED 'MOST MISUNDERSTOOD PLAYER IN BASEBALL' ......................................................................3

III.   LEGAL ARGUMENT ......................................................................................5

    A.   LEGAL STANDARD FOR CALIFORNIA ANTI-SLAPP MOTIONS IN FEDERAL COURT ......................................................................5

    B.   PUIG'S CAUSES OF ACTION ARISE FROM ACTIVITY DEFINED BY CODE OF CIVIL PROCEDURE SECTION 425.16...............................7

        1.   Jane Roe's Statements Were Made In a Public Forum ...........................7

        2.   Jane Roe's Statements Were on Matters of Public Interest.....................8

        3.   Alternatively, Even If the Court Finds That the Statements Were Not Made in a Public Forum, Jane Roe's Statements Fall Under Code of Civil Procedure Section 425.17(e)(4)..................................10

IV.   PUIG CANNOT MEET HIS BURDEN THAT HE HAS A REASONABLE PROBABILITY OF PREVAILING ON HIS DEFAMATION CLAMS ........................10

        1.   Jane Roe's Alleged Defamatory Statements Are Privileged Under the Fair and True Reporting Privilege ...............................11

            (a)   Jane Roe's Statements to KTLA are Privileged Pursuant to the Fair and True Reporting Privilege.....................................13

            (b)   Jane Roe's Statements to ESPN are Privileged Pursuant to the Fair and True Reporting Privilege.....................................15

            (c)   Allegedly Defamatory Statements Reported by the Cincinnati Enquirer .....................................15

            (d)   Statements Privileged under the First Amendment as Statements of Opinion .....................................17

            (e)   Since All Of The Statements Are Privileged Puig Has Not Stated a Legally Sufficient Claim .....................................18

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

i

(f)     Because Jane Roe's Statements Are All Privileged Under the
Fair and True Reporting Privilege, Puig's Counterclaim
Cannot Be Saved by an Amendment...............................................188

2.     Jane Roe's Counsel's Public Statements Are Not Exempt By
California Civil Code § 47(d)(2)(A) .........................................................19

V.     CONCLUSION ...............................................................................................22

**MANLY STEWART FINALDI**

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JANE ROE'S MOTION TO STRIKE
YASIEL PUIG'S FIRST AMENDED COUNTERCLAIM

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

609 F.App'x 497 (9th Cir.) ...................................................................................10

*Argentieri v. Zuckerberg*,
  8 Cal.App.5th 768 (2017) .............................................................................12, 16

*Baral v. Schnitt*,
  1 Cal.5th 376 ...................................................................................................11

*Barrett v. Rosenthal*,
  40 Cal.4th 33(2006) ...........................................................................................8

*Blatt v. Pambakian*,
  432 F.Supp.3d 1141 (C.D. Cal. 2020) .............................................................12

*Carney v. Santa Cruz Women Against Rape*,
  221 Cal.App.3d 1009 .........................................................................................9

*Daniel v. Wayans*,
  8 Cal.App.5th 367 (Ct.App.2018) .....................................................................7

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .........................................................................18

*FilmOn.com Inc. v. DoubleVerify Inc.*,
  7 Cal. 5th 133 .................................................................................................8, 9

*GetFugu, Inc. v. Patton Boggs LLP*,
  162 Cal. Rptr. 3d 831 (Cal. Ct. App. 2013) ....................................................14

*Gilbert v. Sykes*,
  53 Cal. Rptr. 3d 752 (Cal. Ct. App. 2007) ......................................................11

*Grenier v. Taylor*,
  234 Cal.App.4th 471 (2015)...............................................................................9

*Healthsmart Pac., Inc. v. Kabatek*,
  7 Cal.App.5th 416 (2016)................................................................................12

*Hecimovich v. Encinal Sch. Parent Tchr. Org.*,
  203 Cal. App. 4th 450, (2012)...........................................................................9

*Issa v. Applegate*,
  31 Cal.App.5th 689 (2019)...............................................................................17

*Jackson*,
  217 Cal. Rptr. 3d .............................................................................................14

*J–M Manufacturing Co., Inc. v. Phillips & Cohen LLP*,
  247 Cal.App.4th 87 (2016).............................................................11, 12, 16, 18

*John Doe 2 v. Superior Court*,
  1 Cal.App.5th 1300 (2016)...............................................................................17

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

iii

**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

*Linder v. Thrifty Oil Co.*,
   23 Cal.4th 429 ............................................................................... 10, 18
*Makaeff v. Trump Univ.*,
   715 F. 3d 254 (9th Cir. 2013) ................................................................ 11
*Mandel v. Haferman*,
   No. 20-cv-03668-JSC 2020 WL 7025092 (N.D. Cal. Nov. 30, 2020) ................... 6
*Manzari v. Associated Newspapers, Ltd.*,
   830 F.3d 881 (9th Cir. 2016) ................................................................ 11
*Microsoft Corp. v. Yokohama Telecom Corp.*,
   993 F.Supp. 782 (C.D. Cal. 1998) ...................................................... 12, 16
*Nygard, Inc. v. Uusi-Kerttula*,
   159 Cal.App.4th 1027 (2008) ................................................................. 8
*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal.App.4th  688 .......................................................................... 11
*Planned Parenthood Fed'n of Am., Inc. v. Ctr for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ................................................................. 6
*Price v. Stossel*,
   620 F.3d 992 (2010) .......................................................................... 5, 6
*Summit Bank v. Rogers*,
   206 Cal.App.4th 669(2012) ................................................................... 8
*Terry v. Davis Cmty. Church*,
   131 Cal.App.4th 1534 (2005) ................................................................. 9
*Todd v. Lovecruft*,
   No. 19-cv-01751-DMR 2020 WL 60199 (N.D. Cal. Jan. 6, 2020) ....... 6, 7, 8, 9, 10
*Wilbanks v. Wolk*,
   121 Cal.App.4th 883 (2004) ............................................................... 8, 9
*Wilson v Cable News Network, Inc.*,
   7 Cal. 5th 871 ................................................................................... 5
*Wong v. Jing*,
   189 Cal.App.4th 1354 (2010) ................................................................. 8
*Z.F. v. Ripon United School District*,
   482 Fed. App'x 239 (9th Cir. 2012) ......................................................... 6

Statutes

California Civil Code § 47(d)(1) ................................................................ 12, 21
California Civil Code § 47(d)(2)(A)20.................................................. ii, 19, 21, 22

Rules

Fed. R. Civ. P. 15(a)(2)........................................................................... 18
FRCP 12(b)(6) ....................................................................................... 19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JANE ROE'S MOTION TO STRIKE
YASIEL PUIG'S FIRST AMENDED COUNTERCLAIM

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3    Counterclaimant, Yasiel Puig, (hereinafter "Puig") has filed a Counterclaim

4    cynically calculated to punish Plaintiff/Counter-Defendant, Jane Roe, (hereinafter

5    "Jane Roe") for her speech on a matter of public interest.  In fact, this matter is of

6    such public interest, that Puig himself entered into a public forum, deliberately

7    publicizing and arguing his defense – that Plaintiff has fabricated the entirety of her

8    claim in an attempt to "coerce money from a high-profile athlete."  But now, rather

9    than rely upon the power of speech to persuade, Puig attempts to invoke the Court's

10    power in order to suppress and retaliate against protected speech he doesn't like.

11    Dismissal of Puig's counterclaim is warranted.  Puig's First and Second causes

12    of action arise from acts protected by California's anti-SLAPP statute (C.C.P. §

13    425.16). Puig's Counterclaim is an act of legal thuggery that should be dismissed

14    outright under the anti-SLAPP statute. The anti-SLAPP statute is designed to curtail

15    "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the

16    constitutional right of freedom of speech and petition." C.C.P. § 425.16(a). That is

17    exactly what Puig has attempted to do here. The essential allegations of both causes

18    of action are identical, to wit, that Jane Roe and/or her counsel made defamatory

19    statements about Puig in a November 2, 2020 interview with KTLA, a subsequent

20    interview with ESPN, which was published on March 11, 2021, and statement

21    disseminated by the Cincinnati Enquirer on or about April 13 2021. All of Jane Roe's

22    and her counsel's public statements are specifically covered by Code of Civil

23    Procedure ("C.C.P.") § 425.16, as they pertained to a matter of public concern and

24    were made in a public form.

25    Accordingly, under the anti-SLAPP analysis, in order to maintain his causes of

26    action against Jane Roe, Puig must demonstrate a substantial probability of success

27    on the merits – which he has not and cannot do. Because Puig is a public figure, in

28    order to prevail on a defamation action, he must demonstrate by clear and convincing

**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

evidence that the allegedly defamatory statements were made with actual malice. However, all of the alleged defamatory statements made by Jane Roe and her counsel are entitled to absolute privilege under the true and fair reporting privilege, as they were made during the course and scope of an ongoing judicial proceeding and they capture the substance and gist of the allegations contained in the underlying proceedings. As such, by the nature of the privilege, Puig's counterclaim cannot be saved by amendment. Accordingly, the Court should dismiss Puig's counterclaim.

Jane Roe has not only a First Amendment right, but a moral duty to speak out against the man who violently sexually assaulted her. This Court should vindicate that right by striking Puig's counterclaim.

## II.   FACTUAL ALLEGATIONS AND RELEVANT PROCEDURAL HISTORY

### A.   PLAINTIFF HAS SUFFERED SERIOUS AND LONG-LASTING DAMAGE AS A RESULT OF THE SEXUAL ASSAULT PERPETRATED BY PUIG.

This case involves a violent sexual assault perpetrated by Puig on Jane Roe. On October 31, 2018, Jane Roe attended a Los Angeles Lakers game at the Staples Center, where Puig was also present. First Amended Complaint, ("FAC") ⁋ 8-10 Exhibit "1" to Declaration of Taylor Rayfield, ("Rayfield Decl.")  As properly alleged in Jane Roe's operative Complaint, Puig followed Jane Roe into the bathroom. *Id*. Barring Jane Roe from exiting the bathroom, Puig began grabbing at Jane Roe's clothes in an attempt to remove them. *Id*. Puig then began groping Jane Roe's sexual organs. *Id*. Despite her best efforts to escape, Puig used his considerable size advantage over Jane Roe to pin her with one arm, while using the other hand to masturbate his exposed penis and eventually ejaculating. *Id*. Despite Puig's contentions, at no point did Jane Roe consent to the events that took place in the restroom. *Id*. Rather, Plaintiff desperately attempted to fight off Puig, and was terrified and scared for her safety. *Id*.

2

Consequently, on October 29, 2020, Jane Roe filed a Complaint against Puig, alleging causes of action of (1) Assault and Battery; (2) Intentional Infliction of Emotional Distress; (3) Negligence; and (4) False Imprisonment. *Complaint*, attached as Exhibit "2" to <u>Rayfield Decl</u>.  On November 22, 2020, Jane Roe participated in a telephonic interview with KTLA, wherein she recounted the details of her abuse.

Thereafter, on January 22, 2021, Puig filed a Motion to Dismiss Jane Roe's First Amended Complaint, which was ultimately denied by this Court. Accordingly, on June 17, 2021, Puig filed an Amended Answer and Counterclaim, alleging causes of action for (1) Defamation Per Se and (2) Defamation Per Quod. <u>Answer and First Amended Counterclaim</u>[1], attached as Exhibit "3" to <u>Rayfield Decl</u>. Puig alleged that specific public statements attributable to Jane Roe caused Puig to suffer monetary harm equivalent to "at least $10 million." *Id*. at ⁋ 6. Specifically, Puig alleges that because of these statements, no teams in Major League Baseball have offered him a contract. *Id*. at ⁋ 12.

**B.    YASIEL    PUIG,    THE    SELF-PROCLAIMED    'MOST MISUNDERSTOOD PLAYER IN BASEBALL'**

Although Puig's Counterclaim alleges that Jane Roe's public statements detailing her abuse are to blame for his inability to secure work in Major League Baseball ("MLB" or "the League") during the 2021 season, Puig failed to offer any justification as to why he went unsigned during the 2020 season. Notably, Jane Roe's first public statement to KTLA was not made until November 2, 2020 – well after the conclusion of the 2020 season. Although Puig attributes his inability to secure

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

---

[1] Notably, Puig filed his original Answer and Counterclaim on May 28, 2021. Thereafter, on the eve of Jane Roe's deadline to file a responsive pleading, Puig filed his First Amended Answer and Counterclaim, which contained a host of new – but equally unavailing – allegations, all of which are addressed herein.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JANE ROE'S MOTION TO STRIKE
YASIEL PUIG'S FIRST AMENDED COUNTERCLAIM

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

employment with MLB in 2020 to the fact that he contracted COVID-19[2], the fact remains that he was a free agent in the months preceding his COVID diagnosis and remained a free agent for months prior to Jane Roe's KTLA interview in November. <u>Yasiel Puig Still a Free Agent After Positive COVID-19 Test</u>, attached as Exhibit "5" to <u>Rayfield Decl</u>. Jane Roe maintains, and there is a wealth of evidence to support, that Puig's inability to secure employment amongst MLB teams stems from his long standing reputation of misconduct and violence – both on and off the field - coupled with repeated instance of tardiness, discipline, and disputes with fans, teammates, and coaches alike. *See* <u>Los Angeles Dodgers' Yasiel Puig Aims Obscene Gesture Towards Fans</u>, attached as Exhibit "6" to <u>Rayfield Decl</u>.; <u>Yasiel Puig Left Behind a Complicated Dodgers Legacy</u>, attached as Exhibit "7" to <u>Rayfield Decl</u>.; and <u>Yasiel Puig Was in a Benches-Clearing Brawl Minutes After He Reportedly Was Traded</u>, attached as Exhibit "8" to <u>Rayfield Decl</u>.

In fact, as a result of his widespread infamy, in an effort to rebrand and restore his reputation, on December 14, 2020, Puig starred in a YouTube video entitled "Yasiel Puig is the Most Misunderstood Player in Baseball," seeking to explain away much of his prior conduct that teams and fans took issue with. <u>Yasiel Puig is the Most Misunderstood Player In Baseball</u>, attached as Exhibit "9(a)" and "9(b)"  to <u>Rayfield Decl</u>. Throughout the video, Puig attempts to portray his angry outbursts, proclivity for inciting fights, bat flips, and other outlandish behavior as the result of his passion for the sport. *Id*. Tellingly, however, the video does not address Jane Roe's public allegations of sexual assault against Puig. Clearly, in December of 2020 when he released the video, Puig understood that his prior conduct in the League led teams and the public to perceive him as a "problem player" – preventing him from getting signed by any MLB teams.

---

[2] *See* <u>Puig Deposition Vol. 1</u>, at 41:23-43:20, attached as Exhibit "4" to <u>Rayfield Decl</u>.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JANE ROE'S MOTION TO STRIKE
YASIEL PUIG'S FIRST AMENDED COUNTERCLAIM

In fact, Puig's own "evidence" in support of the alleged "damage caused by [Jane Roe's] false statements" undermines his arguments that Jane Roe's public statements are the reason for his inability to secure employment in MLB. *See* Amended Answer and Counterclaim, ¶ 49. Puig relies on an MLB article citing to a report that "[m]ultiple club executives believe that Puig will land a major league contract this winter…" Unfortunately for Puig, despite his misrepresentations that "prior to the November 2, 2020 interview with KTLA, MLB.com reported that Puig was ready to play and drawing interest by Major League Baseball teams," the article upon which he relies was in fact published on November 24, 2020 – over 20 days ***after*** Jane Roe's KTLA interview aired. *Id*.

Rather than take accountability for his actions resulting in his inability to obtain employment in the League, Puig now seeks to solely blame Plaintiff for having the nerve to publicly speak out against him.

## III.   LEGAL ARGUMENT

### A.   LEGAL STANDARD FOR CALIFORNIA ANTI-SLAPP MOTIONS IN FEDERAL COURT

California's anti-SLAPP statute "protects defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." *Wilson v Cable News Network, Inc*. 7 Cal. 5th 871,883-84.  The statute was passed in 1993 in response to the legislature's concern that strategic defamation lawsuits were deterring citizens from exercising their political and legal rights. C.C.P § 425.16(a). "The hallmark of a SLAPP suit is that it lacks merit, and [that it] is brought with the goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned." *Price v. Stossel*, 620 F.3d 992, 999 (2010). The anti-SLAPP statute was enacted in an attempt to counteract the chilling effect of strategic suits, by providing that such suits should be dismissed under a special "motion to strike." *Id*. SLAPP plaintiff's do not intend to, and rarely do, succeed on the merits. Rather, they

5

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

achieve the intended result by abusing the litigation process to punish those who speak out against them and chill those who may be inclined to do so. Puig's counterclaim is no exception.

California's anti-SLAPP statute requires a two-step analysis. First, the defendant must show that the challenged causes of action "arise[] from any act of that person in furtherance of the person's right of…free speech, in connection with a public issue[.]" C.C.P § 425.16(b)(1). Once the defendant makes this showing, the burden then shifts to the plaintiff to show a "probability that the plaintiff will prevail on the claim[s]." *Id.* A district court sitting in diversity jurisdiction must apply the federal standard for anti-SLAPP motions. *Todd v. Lovecruft*, No. 19-cv-01751-DMR 2020 WL 60199 (N.D. Cal. Jan. 6, 2020); *see also Planned Parenthood Fed'n of Am., Inc. v. Ctr for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018). Most recently, the Ninth Circuit re-examined the application of California's anti-SLAPP statute in Planned Parenthood. In order to reconcile the tension between California's anti-SLAPP statute and the Federal Rules of Civil Procedure, the Ninth Circuit set forth the standard that district courts must apply in evaluating anti-SLAPP motions: If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under [Rule] 8 and 12 standards; if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted. *Id.* at 833 (*quoting Z.F. v. Ripon United School District*, 482 Fed. App'x 239, 240 (9th Cir. 2012). However, where a motion raises both legal and factual challenges, a court must first analyze the defendant's legal challenges; "if any of the plaintiff's claims [do] not survive that analysis, they [are] dismissed under Rule 12." *Mandel v. Haferman*, No. 20-cv-03668-JSC 2020 WL 7025092 (N.D. Cal. Nov. 30, 2020) at *4 (quoting Todd, 2020 WL 60199 at *8). If there are surviving claims then the Plaintiff is afforded the opportunity to amend his complaint and the parties have an opportunity to conduct discovery. The court then turns to address the defendant's factual challenges and in doing so, the court applies

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

6

the "reasonable probability" standard to Plaintiff's claims. *Todd*, 2020 WL 60199 at *8.

As set forth *infra*, Jane Roe's challenges to Puig's causes of action for defamation are legal challenges. Jane Roe's statements are made in a public forum regarding a public issue.  Puig cannot show a reasonable probability of prevailing on the merits as all of Jane Roe's statements are privileged.  As such the Counterclaim should be dismissed in its entirety.

## B.   PUIG'S CAUSES OF ACTION ARISE FROM ACTIVITY DEFINED BY CODE OF CIVIL PROCEDURE SECTION 425.16

Under Code of Civil Procedure § 425.16(e), an anti-SLAPP motion may be made where the Plaintiff's causes of action arise from, among other things, "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" or "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Code Civ. Proc. §425.16(e)(3), (e)(4). The defendant's burden as to this step "is not a particularly demanding one." *Todd*, 2020 WL 60199 at *11 (*quoting Daniel v. Wayans*, 8 Cal.App.5th 367, 387 (Ct.App.2018)(disapproved on other grounds). In order to meet this burden, Jane Roe must establish that the statements were made (1) in a public forum and (2) in connection with an issue of public interest. *Todd*, 2020 WL 60199 at *11.

### 1.   Jane Roe's Statements Were Made In a Public Forum

The alleged defamatory statements Puig attributes to Jane Roe were published by KTLA and ESPN.  Plaintiff's interview was aired on KTLA on November 2, 2020 and it remains posted on KTLA's website. <u>Woman Accuses Former Dodgers Player Yasiel Puig of Sexual Assault</u>, attached as Exhibit "10" to <u>Rayfield Decl</u>.  Thereafter, on March 11, 2021 ESPN published an article regarding the sexual assault, including quotes from a telephonic interview with Jane Roe. <u>Sexual Assault Allegations Cloud</u>

7

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

<u>Yasiel Puig's Future in MLB</u>, attached as Exhibit "11" to <u>Rayfield Decl</u>. Finally, on April 14, 2021, in response to a press release put out by Puig and his counsel, Jane Roe's counsel of record released a press statement addressing numerous false and defamatory statements made by Puig and his counsel – which was later published by the Cincinnati Enquirer.   <u>Response to Yasiel Puig's Press Statement</u>, attached as Exhibit "12" to <u>Rayfield Decl</u>.

"Web sites accessible to the public ... are 'public forums' for purposes of the anti-SLAPP statute." *Barrett v. Rosenthal,* 40 Cal.4th 33, 41, fn. 4, 51(2006); accord, *Summit Bank v. Rogers,* 206 Cal.App.4th 669, 693(2012); *Wong v. Jing,* 189 Cal.App.4th 1354, 1366 (2010); *see Wilbanks v. Wolk,* 121 Cal.App.4th 883, 895 (2004) (statements published on defendant's website "hardly could be more public".)

As the court explained in *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1039 (2008), a broad interpretation of "public forum" best "comports with the fundamental purpose underlying the anti-SLAPP statute…this purpose would not be served if we were to construe the statute to make section 425.16(e)(3) inapplicable to all newspapers, magazines, or other public media merely because the publication is 'one-sided.' " *Id*.   In light of the foregoing, Jane Roe's statements were made in a public forum for purposes of the anti-SLAPP statute.

### 2.   Jane Roe's Statements Were on Matters of Public Interest

While the anti-SLAPP statute does not define "public interest," courts have held that its provisions "shall be construed broadly" to safeguard "the valid exercise of the constitutional rights of freedom and petition for the redress of grievances." *Todd*, 2020 WL 60199 at *11; *see also Summit Bank v Rogers*, 206 Cal.App.4th 669, 693 (2012). In determining whether an issue constitutes a matter of public interest, courts may consider "whether the subject of the speech or activity was a person or entity in the public eye or could affect large numbers of people beyond the direct participants; and whether the activity occur[red] in the context of an ongoing controversy, dispute, or discussion." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th

8

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone  (949) 252-9990

133, 145 (internal citations omitted). However, it is not enough that the statements merely relate to a subject of widespread public interest; "the statement must in some manner itself contribute to the public debate." *Id*. at 150 (quoting *Wilbanks v. Wolk*, 121 Cal.App.4th 883, 898 (2004). Moreover, when determining whether speech involves a matter of public concern, the proper inquiry is whether the form, context, and contents of the publication as a whole demonstrates that a matter of public concern is implicated. *Carney v. Santa Cruz Women Against Rape*, 221 Cal.App.3d 1009, 1021. Accusations of abuse on their own have been found to serve the interest of the public at large. *Todd*, 2020 WL 60199 at *13; *see also Grenier v. Taylor*, 234 Cal.App.4th 471 (2015).

Jane Roe's statements in the media are undoubtedly directly related to the ongoing litigation and further serve the interest of the public at large. Members of the public have an interest in judging whether they should interact with Puig and allegations of sexual assault against Puig can serve to inform those decisions. *See Todd*, 2020 WL 60199 at *13. Moreover, in finding that private relations can become matters of public interest, the court in *Terry v. Davis Cmty. Church*, 131 Cal.App.4th 1534, 1547 (2005), held that "it need not be proved that a particular adult is in actuality a sexual predator in order for the matter to be a legitimate subject of discission." In *Terry*, the court found a public interest in identifying individuals believed to have committed misconduct. *Id*. Here, Jane Roe's public accusations undoubtedly contribute to the widespread discussion surrounding sexual abuse in that they "invite discussion on identifying, responding to, and preventing sexual abuse." See *Todd*, 2020 WL 60199 at *13.

When evaluating the first prong of the anti-SLAPP test, courts "look for "the principal thrust or gravamen of the plaintiff's cause of action." (citations omitted) We " 'do not evaluate the first prong of the anti-SLAPP test solely through the lens of a plaintiff's cause of action.' " (citations omitted) The "critical consideration" is what the cause of action is "based on." (citations omitted)." *Hecimovich v. Encinal Sch.*

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

9

*Parent Tchr. Org.*, 203 Cal. App. 4th 450, 465, (2012). This standard is met here, because all of the statements that Puig's claim is based on are connected to issues of public interest. Both the subject of the speech - Puig who is a famous athlete - and the topic of the speech - allegations of sexual misconduct - are matters of public interest.

Finally, any assessment of the truth of Jane Roe's statements are outside the purview of the Court's analysis at this stage. *Todd*, 2020 WL 60199 at *13; *see also Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.* 946 F.Supp.2s 969 (N.D. cal. 2013) aff'd 609 F.App'x 497 (9th Cir.)("By asserting that the statements are not in the public interest because they are false, plaintiffs urge the Court to 'read a separate proof-of-validity requirement into the operative sections of the statute,' which this Court cannot do." (citation omitted)). In light of the foregoing, Jane Roe's statements are matters of public interest for the purposes of the anti-SLAPP statute.

> **3.** **Alternatively, Even If the Court Finds That the Statements Were Not Made in a Public Forum, Jane Roe's Statements Fall Under Code of Civil Procedure Section 425.17(e)(4)**

The anti-SLAPP statute also applies to causes of action arising from "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or issue of public interest." C.C.P. § 425.16(e)(4). Because Jane Roe's statements were on a matter of public interest made to the news media, as discussed in section III(B)(2), her speech further qualifies for anti-SLAPP protection under C.C.P. § 425.16(e)(4).

## IV. PUIG CANNOT MEET HIS BURDEN THAT HE HAS A REASONABLE PROBABILITY OF PREVAILING ON HIS DEFAMATION CLAMS

On the second step of the anti-SLAPP analysis, the burden shifts to the plaintiff to demonstrate a reasonable probability of succeeding on the merits. *Todd*, 2020 WL 60199 at *14. To establish a "reasonable probability" under the anti-SLAPP statute, Puig must show a "minimum level of legal sufficiency and tribality." *Linder v. Thrifty*

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

10

*Oil Co*., 23 Cal.4th 429, 438 n. 5 (2000).  A plaintiff fails to establish such minimal merit when the cause of action arises from the publication of statements that are privileged as a matter of law. *See, e.g., J–M Manufacturing Co., Inc. v. Phillips & Cohen LLP,* 247 Cal.App.4th 87, 98 (2016).

A court's inquiry at this stage is limited to "whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." *Baral v. Schnitt*, 1 Cal.5th 376, 384-85. In conducting this analysis, the court looks to the pleadings and affidavits submitted by the parties, however, the court "do[es] not weigh credibility [or] evaluate the weight of the evidence." *Manzari v. Associated Newspapers, Ltd.*, 830 F.3d 881, 888 (9th Cir. 2016)(*quoting Overstock.com, Inc. v. Gradient Analytics, Inc*., 151 Cal.App.4th 688, 699-700. The court further does not resolve any "conflicting factual claims." *Baral*, 1 Cal. 5th at 384. Rather, the court must accept the plaintiff's evidence as true, and evaluate only the defendant's showing to determine if it defeats the plaintiff's claims as a matter of law. *Id*. at 385.

### 1.    Jane Roe's Alleged Defamatory Statements Are Privileged Under the Fair and True Reporting Privilege

Under California law[3], defamation is "the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damages." *Makaeff v. Trump Univ*., 715 F. 3d 254, 264 (9th Cir. 2013) (*quoting Gilbert v. Sykes*, 53 Cal. Rptr. 3d 752, 764 (Cal. Ct. App. 2007)(emphasis added).

A privileged publication or broadcast is one made "by a fair and true report in, or a communication to, a public journal of (A) a judicial, (B) legislative, or (C) other

---

[3] California law applies to these causes of action because the case is in Federal Court due to diversity jurisdiction.

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

public official proceeding, or (D) of anything said in the course thereof…" California Civil Code § 47(d)(1).  "The fair report privilege confers an absolute privilege on any fair and true report in, or a communication to, a public journal of a judicial proceeding, or anything said in the course thereof." *Blatt v. Pambakian*, 432 F.Supp.3d 1141, 1170 (C.D. Cal. 2020)(*quoting Healthsmart Pac., Inc. v. Kabatek*, 7 Cal.App.5th 416, 431 (2016) as modified (Jan. 10, 2017).  California courts have broadly construed the phrase "judicial proceeding" to include the filing of a complaint. *Id*. Accordingly, fair and true communications made to the media about allegations contained in a complaint are covered by the privilege. *Id*.  The terms "fair" and "true" as it applies to the privilege do not necessarily refer to the accuracy of the matters asserted in the judicial proceeding; rather they refer to the accuracy of the challenged statements with respect to what occurred in the judicial proceedings. *Id*.  To be deemed "fair" and "true" the report must capture the substance, the "gist," or the "sting," of the subject proceeding. *Argentieri v. Zuckerberg*, 8 Cal.App.5th 768, 787-88 (2017).

Courts have construed the privilege broadly, "mindful of the Legislature's intent ... 'to preserve the scarce resources of California's courts [and] to avoid using the courts for satellite litigation.' " *J–M Manufacturing Co*., 247 Cal.App.4th at 101. In making a fair and true report to news media, a defendant is entitled to "a certain degree of 'flexibility/literary license' in this regard, such that the privilege will apply even if there is a slight inaccuracy in details – one that does not lead the reader to be affected differently by the report than he or she would be by the actual truth." *Id*. Moreover, statements about ongoing litigation "need not track verbatim the underlying proceeding, because "[o]nly if the deviation is of such a 'substantial character' that it 'produce[s] a different effect' on the reader will the privilege be suspended." *Id*. at 790 (*quoting Microsoft Corp. v. Yokohama Telecom Corp*., 993 F.Supp. 782, 784 (C.D. Cal. 1998)).  When the privilege applies, the reported statements are deemed "***absolutely privileged regardless of the defendant's motive for reporting them***." (emphasis added) *Healthsmart*, 7 Cal.App.5th at 431.

12

Critically, Jane Roe filed her Complaint against Puig on October 29, 2020.
Complaint, attached as Exhibit "2" to Rayfield Decl. Thereafter, Puig successfully
petitioned to remove this action to federal court and on December 30, 2020, Jane Roe
filed her First Amended Complaint against Puig, asserting identical a causes of action
as in her original Complaint. First Amended Complaint, Exhibit "1" to Rayfield Decl.
Accordingly, at the time Jane Roe made any public statements, judicial proceedings
had already been initiated against Puig.

### (a)    Jane Roe's Statements to KTLA are Privileged Pursuant to the Fair and True Reporting Privilege

In Puig's Counterclaim, he quotes Jane Roe's statement to Mary Beth McDade:

> "[PUIG] grabbed me and he was touching himself, which
> (sic) he pulled himself really close to me and wouldn't let
> me go… I walked into the restroom and felt someone
> behind me, next thing I know the door was slammed. I
> really had no way of getting out… He was just saying like,
> come on baby, like weird things like that. It was traumatic.
> It was very, very traumatic."

Answer and Counterclaim, ¶ 38; *see also* Exhibit "10" to Rayfield Decl. Puig further
alleges that he was defamed by a statement by Jane Roe's counsel wherein she
indicated that the text messages contain Puig's admission that "something happened"
between the parties. Answer and Counterclaim, ¶ 38. Puig's amended counterclaim
makes much of this alleged defamatory statement. However, despite his best efforts
to save his claim by including this statement by counsel, it is equally privileged by
the fair and true reporting privilege. Jane Roe's complaint expressly states that
something did happen between her and Puig – sexual assault. Ironically, Puig's own
Counterclaim also alleges that something happened – consensual intercourse.
Accordingly, this statement is absolutely privileged under the fair and true reporting
privilege as it accurately captures the 'gist' of Jane Roe's Complaint.

Moreover, as set forth in detail below, this statement by counsel is further
entitled to privilege under the First Amendment as a statement of opinion. Puig and

his counsel's own statements again belie their allegations of defamation. Specifically, in a public statement issued by Puig and his counsel, Mr. Mason argues that the text message exchanges between the parties "completely exonerate" Puig.   Yasiel Puig Press Release, attached as Exhibit "13" to Rayfield Decl. While Jane Roe maintains that the text messages clearly demonstrate that the sexual assault did occur[4], it is Puig's opinion that they have the opposite effect and demonstrate that Jane Roe's claims are "based on provably false claims." *Id*.  The parties have a clear difference of opinion as to the interpretation of these texts; however, public statements expressing differing opinions are not actionable as defamation.  Even when viewing these statements "in context of the interview" Jane Roe maintains that Puig's text messaging stating "Private [sic] between me and me [sic] everything that happens no one has to know" does constitute an admission of wrongdoing. Text Messages, attached as Exhibit "1" to Roe Decl.

Jane Roe and her counsel's report to KTLA not only captures the substance or "gist" of the allegations in the pleadings, but almost recounts the pled allegations verbatim. Further, any statements of opinion made by Jane Roe or her counsel are protected under the First Amendment. "Because a defamatory statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability." *Jackson*, 217 Cal. Rptr. 3d at 253 (*citing GetFugu, Inc. v. Patton Boggs LLP*, 162 Cal. Rptr. 3d 831, 842 (Cal. Ct. App. 2013). Moreover, Jane Roe's statements to KTLA were made during an ongoing judicial

---

[4] Tellingly absent from Puig's recitation and misrepresentation of facts in his Amended Counterclaim, is a text message Puig sent to Jane Roe immediately following the sexual assault wherein he stated: "Private [sic] between me and me [*sic*] everything that happens no one has to know[.]" Text Messages, Exhibit "1" to Roe Decl. Accordingly, by Puig's own admission, something *did* happen – making counsel's statements further privileged as true.

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JANE ROE'S MOTION TO STRIKE
YASIEL PUIG'S FIRST AMENDED COUNTERCLAIM

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

proceeding and truthfully and fairly report the gist of the subject proceeding.  Her complaint detailed how she was assaulted and that she was traumatized.  These statements to the press after the Complaint was filed absolutely capture the substance and gist of the proceedings and as such are entitled to absolute privilege under the fair and true reporting privilege and/or First Amendment.

### (b)     Jane Roe's Statements to ESPN are Privileged Pursuant to the Fair and True Reporting Privilege

With respect to Jane Roe's allegedly defamatory statements in her March 2021 interview with ESPN, Puig alleges that Jane Roe made the following statements: "that PUIG physically restrained JANE ROE in the bathroom of the Chairman's room, that he did so by pinning with his forearm, that he tried to take her clothes off, that he groped her, that he exposed himself to her and that he masturbated in front of her." Amended Answer and Counterclaim, ¶ 42; *see also* Exhibit "11" to Rayfield Decl. Again, as alleged, these purported defamatory statements nearly mirror Jane Roe's properly pled allegations verbatim.  As such, they are similarly entitled to absolute privilege under the fair and true reporting privilege.

### (c)     Allegedly Defamatory Statements Reported by the Cincinnati Enquirer

As an initial matter, neither Jane Roe nor her counsel made any statements to the Cincinnati Enquirer ("Enquirer"). Rayfield Decl. ¶ 4. The allegedly defamatory statements Puig seeks to hold Jane Roe accountable for, which were posted by the Enquirer, were taken directly from a public press release issued by Jane Roe's counsel. *Id*.  In fact, this statement by counsel was released in response to Puig and his counsel's press release wherein they alleged that Jane Roe had fabricated the entirety of her claim and that Jane Roe had "propositioned" Puig for a sexual encounter, in a transparent attempt to garner public favor. *See* Exhibit "12" to Rayfield Decl. Regardless, all of the statements Puig claims to have been defamed by are absolutely protected by various privileges, as discussed *supra*.

15

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

1    The first portion of counsel's quoted statement indicates that after Jane Roe

2    was sexually assaulted by Puig, he sent her 18 text messages, begging to see her.

3    Amended Answer and Counterclaim, ⁋ 46. This statement is demonstrably true – and

4    even Puig concedes this point. Text Messages, attached as Exhibit "1" to Roe Decl.;

5    see also Amended Answer and Counterclaim, ⁋ 21. Accordingly, these statements are

6    not actionable under a theory of defamation. Next, Puig cites to a quotation by counsel

7    where in stated that Jane Roe was "fearful of a further attack or retribution by [PUIG],

8    our client attempted to de-escalate his behavior by providing curt responses to the

9    texts and later ignoring him. Our client did nothing to encourage this behavior." *Id.* at

10   ⁋ 46.  Jane Roe's operative complaint vividly describes Puig's violent and aggressive

11   behavior, which caused Jane Roe to suffer great fear and mental anguish. So much so,

12   that to this day, Jane Roe is "paranoid everywhere she goes, for fear of what may

13   happen. She feels like her life went from a happy, driven place, to a place of fear."

14   First Amended Complaint, ⁋ 6. Accordingly, this statement clearly captures the 'gist'

15   of the allegations of the Complaint. Moreover, these statements do not constitute a

16   "deviation of such a 'substantial character' that it 'produce[s] a different effect on the

17   reader" to warrant the suspension of the true and fair reporting privilege. *Argentieri*

18   *v. Zuckerberg*, 8 Cal.App.5th 768, 790 (*quoting Microsoft Corp*. 993 F.Supp. 782,

19   784).

20   Finally, Puig goes on to quote Jane Roe's counsel saying, "This is another event

21   in a pattern of violent and brutish behavior by [PUIG], while attempting to breathe

22   life into his dying career." Amended Answer and Complaint, ⁋ 46. Again, this

23   adequately captures the substance of Jane Roe's pled allegations, as following a

24   woman into a bathroom and groping her sexual organs, pinning her down and

25   masturbating unquestionably constitutes violent and brutish behavior as alleged by

26   Jane Roe. First Amended Complaint, ⁋⁋ 8, 16, 22, 3. This use of flexibility and literary

27   licenses does not run afoul of the true and fair reporting privilege. *J-M Manufacturing*

28   *Co*., 247 Cal.App.4th 87, 98. Notably, as detailed *infra*, this is also subject to First

16

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

1   Amendment protection as a statement of opinion by counsel.

2            **(d)**      **Statements Privileged under the First Amendment as**

3                  **Statements of Opinion**

4       "A plaintiff claiming defamation by implication may not construct an

5   actionable statement by reading whatever implication it wishes into the defendants'

6   words, and the implications drawn from the statement must convey facts, not

7   opinions." *Issa v. Applegate*, 31 Cal.App.5th 689, 707 (2019).   In reviewing a

8   defamation claim, a court must ask as a threshold matter whether a reasonable

9   factfinder could conclude that the contested statement implies an assertion of

10  objective fact; if the answer is no, the claim is foreclosed by the First Amendment. *Id*.

11  Under the First Amendment there is no such thing as a false idea, and thus statements

12  of opinion can never subject the speaker to liability for making a false and defamatory

13  statement. *John Doe 2 v. Superior Court*, 1 Cal.App.5th 1300, 1313 (2016). Puig

14  contends to have been defamed by a statement made by Jane Roe's counsel indicating

15  the existence of text messages proving Puig sexually assaulted Jane Roe. <u>Amended</u>

16  <u>Answer and Counterclaim</u>, ¶ 38.  Following Puig and his counsel's public statements

17  calling Jane Roe's allegations of sexual abuse a fabrication by "someone looking for

18  a payday," Jane Roe's counsel in turn issued a press release, which was ultimately

19  published by the Cincinnati Enquirer. Puig alleges to have been defamed by counsel's

20  comment: "This is another event in a pattern of violent and brutish behavior by

21  [PUIG], while attempting to breathe new life into his dying career." *Id*. at ¶ 46.

22  Viewing the statement in the context in which it was published, it clearly does not

23  imply any assertion of objective facts. Rather, it constitutes an opinion by counsel,

24  formed in response to Puig's public attempt to victim blame in hopes of garnering

25  public favor. Though Puig may not like or agree with counsel's characterization of his

26  behavior, such statements are not actionable under a theory of defamation.

27      Moreover, as noted *supra*, statements by counsel that she is in possession of

28  text messages proving that Puig sexually assaulted Jane Roe and that the texts

17

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone  (949) 252-9990

demonstrate that "something happened" are not actionable defamatory statements. *Id*. at ¶ 38. In viewing the text message sent by Puig almost immediately following the sexual assault, wherein Puig warned Jane Roe to keep what happened "private" between them, followed by a barrage of 17 other unanswered text messages, counsel opined that this admissible evidence demonstrates the validity of Jane Roe's claims that she was sexually abused by Puig. Conversely, in Puig and his counsels publicly issued press release, Mr. Mason argues that the text message exchanges between the parties "completely exonerate" Puig. *See* Exhibit "12" to <u>Rayfield Decl</u>. The parties clearly have a different opinion as to the interpretation of the texts and how they support the parties respective case.  However, counsel's expressed opinions as to the interpretation of evidence does not constitute as defamation.

**(e)    Since All Of The Statements Are Privileged Puig Has Not Stated a Legally Sufficient Claim**

To establish a "reasonable probability" under the anti-SLAPP statute, Puig must show a "minimum level of legal sufficiency and tribality." *Linder v. Thrifty Oil Co.,* 23 Cal.4th 429, 438 n. 5 (2000).  A plaintiff fails to establish such minimal merit when the cause of action arises from the publication of statements that are privileged as a matter of law. *See, e.g., J–M Manufacturing Co., Inc.,* 247 Cal.App.4th at 98. Since all of the statements made by Jane Roe are privileged as a matter of law, Puig cannot show a reasonable probability of prevailing on his claim, because there are no unprivileged defamatory statements.

**(f)    Because Jane Roe's Statements Are All Privileged Under the Fair and True Reporting Privilege, Puig's Counterclaim Cannot Be Saved by an Amendment**

Federal Rules of Civil Procedure provide that "[t]e court should freely give leave [to amend] when justice so requires. Fed. R. Civ. P. 15(a)(2). Where a motion to dismiss is granted, a district court should provide leave to amend, unless it is clear that the complaint could not be saved by any amendment. *See Eminence Capital, LLC*

18

*v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  As it applies here, even in viewing all three articles in their entirety, all of Jane Roe's statements are absolutely privileged under the fair and true reporting privilege. Because Jane Roe's allegedly defamatory statements were privileged, there is no reasonable probability that Puig can prevail on his claims. As such, Puig's counterclaim cannot be saved by an amendment and should be dismissed outright.

Critically, on June 11, 2021, during the parties meet and confer conference regarding Jane Roe's intent to file the instant motion and a Motion to Dismiss pursuant to FRCP 12(b)(6) (filed concurrently herewith), Jane Roe clearly and unequivocally laid out her basis for filing these motions. <u>Rayfield Decl</u>. ¶ 5.  Counsel made clear that she believed all statements as pled were protected under the true and fair reporting privilege or were otherwise entitled to protection under the First Amendment and therefore could not be saved by any amendment. *Id*. Thereafter, on the eve of Jane Roe's deadline to file these motions, Puig filed his Amended Answer and Counterclaim.  *See generally*, <u>Amended Answer and Counterclaim</u>.  In it, Puig added a host of new – but ultimately unavailing – "facts" and allegations in a transparent attempt to salvage his baseless and frivolous counterclaim.  Puig clearly expended a great deal of time and effort attempting to set forth all of the best facts he could to save his causes of action for defamation. However, even this is not enough to save his counterclaim. Puig has already gotten two bites of the apple in making baseless accusations against Jane Roe.  Puig's Amended Counterclaim only serves to demonstrate that his complaint **<u>cannot</u>** be saved by any amendment. Accordingly, Jane Roe respectfully requests the Court strike Puig's Amended Counterclaim without leave to amend.

### 2.    Jane Roe's Counsel's Public Statements Are Not Exempt By California Civil Code § 47(d)(2)(A)

California Civil Code § 47(d)(2)(A) holds that statements made in violation of

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone  (949) 252-9990

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

Rule 5-120[5] of the State Bar Rules of Professional Conduct are exempt from protection under the fair and true reporting privilege. Rule 3.6(a) governing Trial Publicity states:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a ***substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.*** (emphasis added)

During the parties second meet and confer conference prior to the filing of the instant Motion, counsel for Puig indicated for the first time that Jane Roe's counsel's statements, in general, ran afoul of Rule 3.6, because they materially prejudiced **the defendant**- Puig. However, this is not the rule. If it was, any statement made by a party that was prejudicial to the opposing party would violate this rule. Rather, Puig must demonstrate that the statements made by counsel were made with knowledge that they would materially prejudice the adjudicative proceeding itself. Puig has not – and cannot – make such a showing.

Moreover, any assertion by Puig that counsel's press release disseminated by the Cincinnati Enquirer violate 3.6 should be dismissed outright pursuant to Rule 3.6(c):

> Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

Counsel's April 14, 2021 press release was made in order to protect Jane Roe

---

[5] Jane Roe notes that Rule 5-120 has been amended and is now codified as ABA Model Rule 3.6.

1   from the undue and prejudicial effect of Puig's blatantly false and misleading press

2   release. <u>Rayfield Decl</u>. ¶ 4. The subsequent information put out by counsel related to

3   Puig's barrage of 18 text messages (all of which went unanswered) and Jane Roe's

4   eventual responses was necessary in order to rebut Puig's misrepresentation that Jane

5   Roe sent Puig "a series of affectionate and endearing messages." *See* Exhibit "12" to

6   <u>Rayfield Decl</u>. Puig and his counsel's further gross and intentional misrepresentation

7   that Jane Roe was heterosexual woman engaged to a male, by indicating that she lied

8   about the assault so her "fiancé" would not find out, forced Jane Roe to publicly clarify

9   that she is a lesbian and her female fiancée was present with her on the night of the

10   assault. *See* Exhibit "12" to <u>Rayfield Decl</u>. Because Jane Roe and her counsel's

11   subsequent statements as published by the Cincinnati Enquirer were made necessary

12   by Puig's blatantly false and prejudicial press release, they are permissible pursuant

13   to Rule 3.6(c) and therefore do not violate California Civil Code § 47(d)(2)(A).

14   Puig has not alleged that Jane Roe's counsel made any defamatory statements

15   contained in the ESPN article that violate Rule 3.6, and Jane Roe contends there are

16   none. With respect to counsel's statements in the KTLA interview, Puig's argument is

17   meritless. Puig has not put forth any evidence demonstrating that Jane Roe's counsel

18   knew or should have known that the statement had a ***substantial likelihood*** of

19   ***materially*** prejudicing the sexual abuse case at hand. The statement was issued long

20   before any jury pool was formed – in fact, it was issued well before a trial date was

21   even selected – and it did not set forth any information that Puig has contended is

22   inadmissible. To the contrary, Puig contends that the text messages constitute

23   evidence that "completely exonerate" him. *Id*. While Puig may not like the statements,

24   they are not defamatory or in violation of the Rules on Trial Publicity as they are

25   ostensibly true[6] and a fair summary of the filed complaint.   Accordingly, any

26   _____

27   [6] Again, Jane Roe maintains that Puig's text immediately after the assault warning her

28

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

arguments put forth by Puig that counsel's public statements are exempt from the privilege pursuant to California Civil Code § 47(d)(2)(A) should be dismissed outright.

## V.   <u>CONCLUSION</u>

This is a classic SLAPP suit. When a celebrity is accused of sexual assault, those accusations are a matter of public interest. Where, as here, a defendant sues to stop that speech, he must show that his case has merit. This case does not. Puig's counterclaim is legally deficient in multiple respects. This Court can and should strike it because Jane Roe's statements are absolutely privileged under the fair and true reporting privilege.  For the foregoing reasons, Plaintiff/Counter-Defendant, Jane Roe, respectfully requests that the Court grant her relief and strike and dismiss Puig's First and Second Causes of Action.

DATED: July 8, 2021          **MANLY STEWART FINALDI**


By:    <u>/s/ Taylor Rayfield</u>
TAYLOR RAYFIELD
Attorneys for Plaintiff

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

that what happened was "private" between them, followed by a barrage of 18 unanswered text messages, do in fact demonstrate that Puig sexually assaulted Jane Roe. *See* <u>Text Messages</u>, Exhibit "1" to <u>Roe Decl</u>.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JANE ROE'S MOTION TO STRIKE
YASIEL PUIG'S FIRST AMENDED COUNTERCLAIM

CERTIFICATE OF SERVICE
*Jane Roe v. Yasiel Puig et al.*
**Case No.: *2:20-cv-11064-FMO-MRW***

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Orange, State of California, and not a party to the above-entitled cause.

On July 8, 2021, I served a true copy of **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JANE ROE'S MOTION TO STRIKE YASIEL PUIG'S FIRST AMENDED COUNTERCLAIM PURSUANT TO CODE OF CIVIL PROCEDURE § 425.16**

[  ]    By personally delivering it to the persons(s) indicated below in the manner as provided in FRCivP5(B)

[  ]    By depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the parties indicated on the attached service list;

[X]    By ECF: On this date, I electronically filed the following document(s) with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet;

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

[X] (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on **July 8, 2021,** at Irvine, California.

/s/Kathy Frederiksen

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JANE ROE'S MOTION TO STRIKE
YASIEL PUIG'S FIRST AMENDED COUNTERCLAIM

**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone  (949) 252-9990

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

1

## <u>SERVICE LIST</u>

2

**Alan J Jackson**
**Caleb E Mason**

3

Werksman Jackson and Quinn LLP

4

888 West 6th Street 4th Floor
Los Angeles, CA 90017

5

213-688-0460
Fax: 213-624-1942

6

Email: ajackson@werksmanjackson.com
cmason@werksmanjackson.com

7

*Attorneys for Defendant Yasiel Puig*

**Reed T Aljian**

8

Daily Aljian LLP

9

100 Bayview Circle
Suite 5500

10

Newport Beach, CA 92660
949-861-2524

11

Fax: 949-269-6364
Email: ra@dallp.com

12

*Attorneys for Defendant Yasiel Puig*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JANE ROE'S MOTION TO STRIKE YASIEL PUIG'S FIRST AMENDED COUNTERCLAIM