ALAN JACKSON (State Bar No. 173647)
  ajackson@werksmanjackson.com
CALEB MASON (State Bar No. 246653)
  cmason@werksmanjackson.com
WERKSMAN JACKSON & QUINN, LLP
888 W. 6th St. Fourth Floor
Los Angeles, CA 90017
Tel: (213) 688-0460

REED ALJIAN (State Bar No. 211010)
  ra@dallp.com
DAILY ALJIAN LLP
100 Bayview Circle, Suite 5500
Newport Beach, CA  92660
Tel: (949) 861-2524

Attorneys for Defendant and
Counter-Complainant YASIEL PUIG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JANE ROE,<br><br>              Plaintiff,<br><br>       v.<br><br>YASIEL PUIG; and DOES 1-10, inclusive,<br><br>              Defendants. | CASE NO. 2:20-cv-11064-FMO-MRW<br><br>**DEFENDANT AND COUNTER-COMPLAINANT YASIEL PUIG'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT JANE ROE'S MOTION TO STRIKE FIRST AMENDED COUNTERCLAIM PURSUANT TO CODE OF CIVIL PROCEDURE § 425.16**<br><br>Judge:          Hon. Fernando Olguin<br><br>Hearing Date: August 12, 2021<br>Time:          10:00 a.m.<br>Courtroom:      6D<br><br>Action Filed:  Oct. 29, 2020<br>FAC Filed:     Dec. 30, 2020<br>Trial date:    May 3, 2022 |

# TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION ..................................................... 1

II.  BRIEF FACTUAL BACKGROUND .................................... 1

III.  LEGAL DISCUSSION................................................. 2

    A.  California's Anti-SLAPP Statute and the *Erie* Doctrine. ............................ 2

    B.  *Planned Parenthood* and the Limits of the Anti-SLAPP Statute. ................. 4

    C.  Legal Burden for Motions To Strike Under the Anti-SLAPP Statute ........... 6

        1.  Step One: Roe Has Failed to Demonstrate that Her Statements and Her Counsel's Statements Arise from Activities Covered by Section 425.16. ................................................... 7

            a.  The Statements Are Not An Issue of Public Interest. ............... 8

        2.  Step Two: The minimal "probability of success" standard ............... 11

            a.  Puig has pled and can prove each element of his claims. ........ 12

                i.  The statements were made to persons other than Puig...13

                ii.  The audience reasonably understood the statements were about Puig. ........................................... 14

                iii.  The statements are false and the speakers of the statements knew them to be false. ................................ 14

                iv.  The statements are *per se* malicious ............................. 15

                v.  Puig has been damaged. ................................. 16

            b.  Neither Roe nor her lawyer's statements are privileged under Civil Code section 47(d) as a "true and fair report." ..... 17

            c.  Ms. Rayfield's statements are not a privileged "true and fair report." ................................................... 19

            d.  None of the alleged defamatory statements are opinion. ........22

    C.  Attorneys' Fees.............................................. 23

Case No. 2:20-cv-11064-FMO-MRW

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE

        1.    Roe Has Waived her Right to Attorneys' Fees ....................................23

        2.    Puig Requests Attorneys' Fees ............................................................24

D.    If the Motion is Granted, Even in Part, Puig Is Entitled To Leave To Amend and/or To Take Discovery. .......................................25

IV.    CONCLUSION ...........................................................................................25

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328...........................................................3

*American Dental Ass'n v. Kohrrami*, 2004 WL 3486525 ................................................17

*Argentieri v. Zuckerbuerg*, 8 Cal.App.5th 768 ................................................17

*Blatt v. Pambakian*, 432 F.Supp.3d 1141 ..............................................17, 18, 19

*Carbone v. Cable News Network, Inc.,* 910 F.3d 1345 ........................................4

*Carolina Cas. Ins. Co. v. Team Equip. Inc.*, 741 F.3d 1082..............................25

*Cho v. Chang*, 219 Cal.App.4th 521 ..............................................7, 11

*Citizens of Humanity, LLC v. Ramirez* 63 Cal.App.5th 117................................6

*Cuenca v. Safeway San Francisco Employees Fed. Credit Union* (1986) 180 Cal.App.3d 985 ................................................15

*Decker v. U.D. Registry, Inc.*, 105 Cal.App.4th 1382 ................................24

*Del Nigro v. AM Properties, LLC, et al.*, 2020 WL 220037 ................................24

*FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133 ................................8

*Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415 ................................3

*Good Gov't Group of Seal Beach, Inc. v. Superior Court*, 22 Cal.3d 672................23

*Grenier v. Taylor*, 234 Cal.App.4th 471................................................8, 9

*Harman v. City of Santa Cruz, CA*, 261 F.Supp.3d 1031 .................................................. 10

*Healthsmart Pacific, Inc. v. Kabateck*, 7 Cal.App.5th 416 ......................................... 17, 19

*Heineke v. Santa Clara University*, 2017 WL 6026248 .................................................. 15

*Higginbotham v. South East Employee Leasing Services, Inc.*, 2020 WL 5535421 ......... 23

*Hunter v. CBS Broadcasting, Inc.*, 221 Cal.App.4th 1510 .............................................. 11

*In re Hill*, 2006 WL 2577211 ........................................................................................ 24

*Intercon Solutions, Inc. v. Basel Action Network*, 969 F.Supp.2d 1026 ............................ 4

*Jarrow Formulas, Inc. v. LaMarche* 31 Cal.4th 728 ........................................................ 6

*Kilgore v. Younger*, 30 Cal.3d 770 ................................................................................ 17

*Klein v. City of San Clemente*, 584 F.3d 1196 ................................................................ 10

*La Liberte v. Reid*, 966 F.3d 79 ....................................................................................... 3

*Littlefield v. Nutribullet, LLC*, 2017 WL 10438897 ....................................................... 21

*Makaeff v. Trump University, LLC*, 736 F.3d 1180 ...................................................... 3, 15

*Mandel v. Hafermann*, 503 F.Supp.3d 946 ..................................................................... 4

*Martinez v. Metabolife Int'l, Inc.*, 113 Cal.App.4th 181 ................................................... 9

*Massie v. Summer*, 624 F.2d 72 ..................................................................................... 10

*McErlain v. Park Plaza Towers Owners Association*, 2014 WL 459777 ........................... 9

*Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832 ..................................................... 3, 12

ii                    Case No. 2:20-cv-11064-FMO-MRW

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 ........................................................23

*Moore v. Rodriguez*, 2021 WL 2222590 ...............................................................23

*Nano Foundation, Ltd. v. Silver*, 2019 WL 6723428 ........................................5, 12

*Navellier v. Sletten*, 29 Cal.4th 82 ......................................................................11

*New York Times Co. v. Sullivan*, 376 U.S. 254 ...............................................13, 15

*Okorocha v. Duff*, 2012 WL 12856302 ................................................................10

*Oracle USA, Inc. v. Qtrax, Inc.*, 2011 WL 4853436 ...........................................24

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress* 890
    F.3d 828 ....................................................................................3, 4, 5, 11

*Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973 ............................11

*Sanchez v. American Media, Inc.*, 2020 WL 8816343 ...................................11, 25

*Shames v. Utility Consumers' Action Network*, 13 Cal.App.5th 29 ...................24

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 ......16

*Terry v. Davis Cmty. Church*, 131 Cal.App.4th 1534 .........................................9

*Todd v. Lovecraft*, 2020 WL 60199 ........................................................4, 5, 13, 16

*Tran v. Velocity Investments LLC* 2019 WL 11322802 ...................................1, 5, 12

*Travelers Casualty Insurance Co. of America v. Hirsh*, 831 F.3d 1179 .............3

*U. S. v. Taylor*, 569 F.2d 448 .............................................................................10

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE

*Unity Healthcare, Inc. v. County of Hennepin*, 308 F.R.D. 537 .......................... 4

*Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081 .......................... 25

*Walker v. Armco Steel Corp.*, 446 U.S. 740 .......................... 2

*Yow v. Nat'l Enquirer, Inc.*, 550 F.Supp.2d 1179 .......................... 14

*Z.F. v. Ripon Unified Sch. Dist.*, 482 F.Appx. 239 .......................... 4, 12

**STATUTES**

Business and Professions Code section 6068 .......................... 20

California Code of Civil Procedure section 128.5 .......................... 24

California law. Cal. Penal Code § 243.4 .......................... 14

Civil Code section 47 .......................... 17, 19, 20, 21

**OTHER AUTHORITIES**

1996 Cal. Legis. Serv. Ch. 1055 .......................... 20

CACI No. 1701 .......................... 13

CACI No.1700 .......................... 13

**RULES**

CA ST. RPC Rule 3.6 .......................... 20, 21, 22

**TREATISES**

5 Witkin, Cal. Procedure (5th ed.2008), Pleading, § 1008 .......................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant and Counter-Complainant Yasiel Puig's ("Puig") operative First Amended Answer and Counter Claims ("FAA") alleges that Plaintiff and Counter-Defendant Jane Roe ("Roe"), both individually and through her counsel, made three defamatory statements regarding Puig during a video interview with a KTLA news reporter, which was published on KTLA on November 2, 2020 and remains available on the KTLA website to this day. Roe moves to strike the counterclaims pursuant to California's anti-SLAPP statute (the "Motion"). She further contends the Motion can be resolved at the pleadings stage without consideration of any evidence; however, in support of her Motion, she presents voluminous evidence, including 15 exhibits containing over 160 pages, plus a video, to present factual challenges to both liability and damages. Because there is a "significant factual component" to the Motion (and the opposition), the appropriate decision is to deny the Motion, allow discovery to proceed, and defer the matter to resolution at the summary judgment stage or at trial. *See Tran v. Velocity Investments LLC* 2019 WL 11322802 at *1 (C.D. Cal. April 2019)

Even if the Motion can be resolved at this stage (on a Rule 12 standard), Roe has not satisfied her burden of proof. The statements at issue are not protected speech under California Civil Procedure Code section 425.16. Even if they were, Puig's FAA alleges facts sufficient to support each element of each cause of action and Puig has made a prima facia case for each claim, based upon the evidence. Moreover, the statements at issue are not privileged under Civil Code section 47 and are not opinions. Therefore, Puig respectfully requests that the Motion be denied.

## II.   BRIEF FACTUAL BACKGROUND

On or about October 30, 2020, Roe filed her lawsuit against Puig in Los Angeles County Superior Court. On November 2, 2020, KTLA published a videotaped interview by KTLA reporter Mary Beth McDade of Roe and her attorney Taylor Rayfield. It is

unknown to Puig when that interview took place. Roe appeared by telephone. Ms. Rayfield appeared live.  Before and during that interview, Roe and Ms. Rayfield made knowingly false statements about Puig. Those statements during that interview form the basis of Puig's counterclaims against Roe. On June 17, 2021, Puig filed his FAA. The FAA asserts two causes of action, one for defamation *per se* and one for defamation *per quod*. Puig seeks recovery of the damages caused by three alleged defamatory statements made during the KTLA interview, stated as follows in the FAA:

1.  "JANE ROE stated to Mary Beth McDade and KTLA producers on November 2, 2020 that PUIG sexually assaulted her."

2.  "JANE ROE's counsel of record [Ms. Rayfield], on JANE ROE's behalf, represented to Mary Beth McDade and KTLA on November 2, 2020 that JANE ROE has text messages proving PUIG sexually assaulted JANE ROE."

3.  "JANE ROE's counsel of record, on JANE ROE's behalf, represented to Mary Beth McDade and KTLA on November 2, 2020 that JANE ROE has text messages wherein PUIG admitted "something happened," and, in the context of the interview, that she claimed to have text messages wherein PUIG admitted to sexually assaulting JANE ROE."

ECF No. 67, ¶¶ 55, 68, 18:21-19:5, 20:14-24.

Those statements constitute the gravamen of the FAA.  Puig is not suing on other statements made by Roe or her attorney, including, *e.g*., statements included in subsequent articles with ESPN or the Cincinnati inquirer. Roe's Motion repeatedly misidentifies the statements on which Puig is suing.

## III.   LEGAL DISCUSSION

### A.   California's Anti-SLAPP Statute and the *Erie* Doctrine.

State procedural laws are not used in federal court if to do so would result in a "direct collision" with a Federal Rule of Civil Procedure. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50 (1980). This is a fundamental policy of the *Erie* doctrine. *Gasperini v. Center*

1  *for Humanities, Inc.*, 518 U.S. 415, 426-27 (1996) ("Under the *Erie* doctrine, federal courts

2  sitting in diversity apply state substantive law and federal procedural law.")

3  "The degree to which the anti-SLAPP provisions are consistent with the Federal

4  Rules of Civil Procedure has been hotly disputed." *Planned Parenthood Federation of*

5  *America, Inc. v. Center for Medical Progress* 890 F.3d 828, 833 (9th Cir. 2018) ("*Planned*

6  *Parenthood*"). Courts within the Ninth Circuit have demonstrated a trend towards finding

7  that at least portions of Section 425.16 do not apply in federal court, including (for

8  example) its mandatory stay on discovery because they directly conflict with Rule 56 of

9  the Federal Rules of Civil Procedure. *Id., citing Metabolife Intern., Inc. v. Wornick*, 264

10  F.3d 832, 846 (9th Cir. 2001).

11  In *Planned Parenthood*, the court ruled that California's anti-SLAPP statute had

12  some limited applications in Federal court. This is an evolving area of law, and Puig

13  preserves the argument that the dissenting judges were correct, and any application of

14  California's anti-SLAPP statute in Federal court is an improper abrogation of the Federal

15  Rules of Civil Procedure and a clear violation of the *Erie Doctrine*. *See Makaeff v. Trump*

16  *University, LLC*, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., dissenting from denial

17  of rehearing en banc) (stating that "California's anti-SLAPP statute conflicts with Federal

18  Rules 12 and 56" because "[t]aken together, those rules establish the exclusive criteria for

19  testing the legal and factual sufficiency of a claim in federal court"); *Travelers Casualty*

20  *Insurance Co. of America v. Hirsh*, 831 F.3d 1179, 1183-85 (9th Cir. 2016) (Kozinski, J.,

21  concurring) (noting direct conflict between California's anti-SLAPP statute and FRCP 12,

22  because anti-SLAPP motions require "an evaluation on the merits", thus *Makaeff* should

23  have been heard en banc and reversed); *La Liberte v. Reid*, 966 F.3d 79, 87 (2nd Cir. 2020)

24  (recognizing direct conflict between California anti-SLAPP and FRCP 12 and 56, and

25  thereby refusing to apply in diversity case).

26  This position represents the growing trend in Federal courts nationwide. *See, e.g.,*

27  *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015) (finding that

28

special motion to strike provision of D.C. Anti-SLAPP Act did not apply in federal court, because it "conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial"); *Carbone v. Cable News Network, Inc.,* 910 F.3d 1345, 1350-51 (11th Cir. 2018) (Georgia anti-SLAPP motion to strike procedure conflicts with FRCP 8, 12, and 56, and therefore cannot be applied in federal court); *Unity Healthcare, Inc. v. County of Hennepin*, 308 F.R.D. 537, 545 (D. Minn. 2015) (Minnesota anti-SLAPP motion to dismiss procedure conflicts with FRCP 12 and 56, and therefore cannot be applied in federal court); *Intercon Solutions, Inc. v. Basel Action Network*, 969 F.Supp.2d 1026, 1044-48 (Washington anti-SLAPP statute conflicts with FRCP 12 and 56, and therefore cannot be applied in federal court).  For these reasons, Puig respectfully requests that Roe's Motion be denied in its entirety.

### B.   *Planned Parenthood* **and the Limits of the Anti-SLAPP Statute.**

Applying *Planned Parenthhood*, the application of Section 425.16 is limited. "[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." *Planned Parenthood*, 890 F.3d at 834. And, in that case, "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.*; *see also Z.F. v. Ripon Unified Sch. Dist.*, 482 F.Appx. 239, 240 (9th Cir. 2012) (stating that where factual challenges are raised, "the [anti-SLAPP] motion must be treated as though it were a motion for summary judgment and discovery must be permitted").

Here, Roe has presented a voluminous amount of extrinsic evidence and she makes numerous factual challenges to the FAA.  She nonetheless asserts that this Court must analyze her alleged legal challenges first, using a so-called Rule 12 analysis, and ignore the fact that she also makes factual challenges. *See* Motion, ECF No. 81-1, 6:21-23. In support of her assertion, Roe cites *Mandel v. Hafermann*, 503 F.Supp.3d 946, 961 (N.D. Cal. 2020) ("*Mandel*"), which relied upon an unpublished Northern District court opinion, *Todd v. Lovecraft*, 2020 WL 60199 at *8 (N.D. Cal. January 2020) ("*Todd*").

Roe is incorrect. The Northern District court cases are not binding authority. They were incorrectly decided. And they contradict the analysis employed by the Central District, including this Court.[1]  Indeed, this Court has previously addressed an anti-SLAPP motion that presented both legal and factual challenges and concluded that where there is a "significant factual component" submitted by an anti-SLAPP movant, the best practice is to deny the anti-SLAPP motion and wait until the matter proceeds to the summary judgment stage for a determination of the factual and legal disputes brought in the motion. *Tran v. Velocity Investments LLC* 2019 WL 11322802 at *1 (C.D. Cal. April 2019). Other courts have come to the same conclusion. *Nano Foundation, Ltd. v. Silver*, 2019 WL 6723428 *2 (C.D. Cal. August 2019) (stating "Because we cannot yet say whether Defendant's statements constitute defamation as a matter of law, and because the Defendant has challenged both the legally and factually sufficiency of the complaint, we cannot grant the motion to strike. The resolution of the anti-SLAPP motion is inextricably bound to the resolution of the underlying complaint, so discovery must proceed on all issues…").

Roe submitted two declarations, one by her and one by Ms. Rayfield. The declarations attach 15 exhibits containing approximately 160 pages of documents and almost 10 minutes of video. The exhibits are offered as factual challenges to liability on the asserted causes of action and to damages, whether the statements are "opinion," and whether Ms. Rayfield violated Rules of Professional Conduct 3.6 (statements that violate Rule 3.6 are not privileged as a matter of law). *See, e.g.,* ECF No. 81-4, ¶¶ 9-15, Exs. 4-9(b); *see also* ECF No. 81-1, 4:5-13, 14:4-8. ECF No. 81-1, 20:11. Due to these factual challenges, and consistent with *Planned Parenthood*, *Tran*, and *Nano* the Motion cannot

---

[1]      Roe also misstated the content of those cases. The analysis from those cases is that the two-step analysis is discretionary, not obligatory. For example, in *Todd*, the Court stated that where an anti-SLAPP motion involves both legal and factual challenges, "the court would **likely** have to address the issues in two stages." *Id. (*emphasis added).

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE

be resolved at this stage. Discovery must be permitted to address those factual challenges and, thereafter, the matter may be considered at the Rule 56 stage or, if not, at trial on the merits. For these reasons, Puig respectfully requests that the Court deny the Motion without further analysis.

### D.    Legal Burden for Motions To Strike Under the Anti-SLAPP Statute

Should the Court find that resolution of Roe's motion at this time would not conflict with the Federal Rules, and find that it can consider the matter at this time (despite the numerous factual challenges), the anti-SLAPP analysis is a two-step process:

> First, the court decides whether [Roe] has made a threshold showing that the challenged cause of action is one arising from protected activity. [Roe's] burden is to demonstrate that the act or acts of which [Puig] complains were taken in furtherance of [Roe's] right of petition or free speech under the United States or California Constitution in connection with a public issue, as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether [Puig] has demonstrated a probability of prevailing on the claim. [Citation.]

*Citizens of Humanity, LLC v. Ramirez* 63 Cal.App.5th 117, 127 (Cal. Ct. App. 2021) (internal citations and quotation marks omitted) (quoting *Jarrow Formulas, Inc. v. LaMarche* 31 Cal.4th 728, 733 (Cal. 2003)). Thus, an anti-SLAPP motion may only be granted where the moving party prevails on *both* prongs. The second prong need not be reached if the moving party fails to demonstrate that the challenged action is one arising from protected activity. *Id.*

The FAA identifies three claimed defamatory statements – one by Roe and two by Ms. Rayfield on Roe's behalf. In cases where a cause of action involves multiple statements, some of which are protected and some of which are not, i.e., "mixed claims," the motion is treated like an ordinary motion to strike with respect to those allegations. Therefore, the court may dismiss a cause of action only if Roe establishes that *all* of the statements are protected and Puig fails to establish a probability of success as to *all* of those

allegations.  If any statement survives, the cause of action also survives.  As one California Court of Appeal has explained:

> Striking the entire cause of action would plainly be inconsistent with the purposes of the statute.  Striking the claims that invoke protected activity but allowing those alleging nonprotected activity to remain, would defeat none of them.  Doing so also is consonant with the historic office of a motion to strike: "to reach certain kinds of defects in a pleading that are not subject to demurrer."  (*See* 5 Witkin, Cal. Procedure (5th ed.2008), Pleading, § 1008, p. 420.)  That is what the trial court did in this case. Its ruling makes sense, and renders justice to both sides. We believe it was correct.

*Cho v. Chang*, 219 Cal.App.4th 521, 527 (Cal. Ct. App. 2013). Therefore, as a matter of California law, even assuming *arguendo* that some of the allegations in the counter-complaint are protected under Section 425.16, the remainder of Puig's allegations and the related causes of action still survive.

### 1.   Step One: Roe Has Failed to Demonstrate that Her Statements and Her Counsel's Statements Arise from Activities Covered by Section 425.16.

Civil Procedure Code section 425.16(e) provides as follows:

> As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Section 425.16(e).

Roe contends that the three alleged defamatory statements at issue in the FAA are protected speech under Section 425.16(e), subsections (3) or (4).[2] She contends that the statements were "made in a public forum," are "matters of public interest," and were "in furtherance of the exercise of the constitutional right of petition or constitutional right of free speech…" ECF No. 81-1, 7:22, 8:19, 10:18-19. Puig agrees the statements were made in a public forum. However, the balance of Roe's contentions lack merit.

### a.    The Statements Are Not An Issue of Public Interest.

In order for Subsections (e)(3) and (4) to apply, the matter must involve "an issue of public interest."

> Section 425.16 does not define "an issue of public interest." Nevertheless, the statute requires the issue to include attributes that make it one of public, rather than merely private, interest. [Citation.]…"[P]ublic interest" is not mere curiosity. Further, the matter should be something of concern to a substantial number of people. Accordingly, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. Additionally, there should be a degree of closeness between the challenged statements and the asserted public interest. The assertion of a broad and amorphous public interest that can be connected to the specific dispute is not sufficient. [Citation.] One cannot focus on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based. In evaluating the first step of the anti-SLAPP statute, the focus must be on the *specific nature of the speech* rather than the generalities that might be abstracted from it. [Citation.]

*Grenier v. Taylor*, 234 Cal.App.4th 471, 481-82 (Cal. Ct. App. 2015). Further, "it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 150 (Cal. 2019).

---

[2]    Roe does not contend the statements are protected on the basis that they were made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law. She also does not cite to or attempt to apply subsection (e)(2). Therefore, she appears to concede Section 425.16(e)(1)-(2) do not apply and, consequently, Puig will not address those subsections further.

Roe does not meet her burden of proof that the alleged conduct is protected simply because the FAA may contain some references to protected activity. *Martinez v. Metabolife Int'l, Inc.*, 113 Cal.App.4th 181, 188 (Cal. Ct. App. 2004). Rather, "it is the principal thrust or gravamen of the [Puig's] cause of action that determines whether the anti-SLAPP statute applies." *Id.* "[T]he California Court of Appeal has focused on the nature of the challenged adverse action, rather than on the fact that the defendant may have, at least in part, accomplished the challenged adverse action by engaging in protected activity." *McErlain v. Park Plaza Towers Owners Association*, 2014 WL 459777 (N.D. Cal. Feb. 3, 2014).

Although Roe contends the matters are protected because they allegedly involve issues of public interest, she has failed to assert anything more than "a broad and amorphous public interest" (*Grenier*, 234 Cal.App.4th at 481) in the form of "whether [members of the public] should interact with Puig and allegations of sexual assault against Puig can serve to inform those decisions." ECF No. 81-1, 9:13-14. This is insufficient as a matter of law. Roe has alleged at most a very private interest in redressing harm allegedly caused to her by Puig. Roe argues that private relations can become matters of public interest, relying on *Terry v. Davis Cmty. Church*, 131 Cal.App.4th 1534, 1547 (2005). However, *Terry* is clearly distinguishable. In *Terry*, the court found that a report alleging that an assistant church minister had engaged in an inappropriate sexual relationship with a minor church member was a matter of public interest because it concerned protecting children within that church's youth programs, in which the assistant church minister participated. *Id.* at 1548. Similarly, in *Grenier, supra*, statements made regarding a pastor misusing funds and molesting a child were of public interest because the pastor led a community of up to 1,000 members (who donated funds to the church), and served as the "members' spiritual and moral leader." *Grenier,* 234 Cal.App.4th at 483. These allegations were directly of issue to the community – they could, for example, "lead to discussion within the membership and the implementation of new financial standards." *Id.*

Again, "[o]ne cannot focus on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based." *Id*. at 482. With the exception of one vague reference in the Motion to Puig engaging in a "pattern of violent and brutish behavior" (which is not alleged in Roe's operative pleading, and which appears to refer to baseball games), there is no nexus between the conduct at issue and any clearly-articulated public interest. Roe has not alleged that Puig is a threat to any community he belongs to or leads (and certainly does not allege that in the operative pleading) – instead, she has amorphously alleged harm to "the public at large." ECF No. 81-1, 9:12. Rather than protected speech, Roe's conduct "can be characterized at best as a collection of insults and attacks on [Puig]'s character," leaving no explanation as to how Puig's defamation claims would be "designed to chill [Roe's] First Amendment rights." *Okorocha v. Duff*, 2012 WL 12856302 *2 (C.D. Cal. October 2012.) Were the Court to accept Roe's reasoning, it would completely abrogate any liability for defamation for *any* tortious act, no matter how vile the accusation; an accuser would need only argue that the public interest is served, per se, by the public's being on notice of the accusations. Such an argument is a reductio ad absurdum.

But even further assuming that there is a significant nexus between the conduct at issue and a public interest in the information, public interests are not absolute. Even the public interest in upholding free speech principles "may give way to a 'strong showing of other competing public interests.'" *Harman v. City of Santa Cruz, CA*, 261 F.Supp.3d 1031, 1051 (N.D. Cal. 2017), quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). And it is well-established that there is a public interest in the fairness and integrity of judicial proceedings. *Massie v. Summer*, 624 F.2d 72, 74 (9th Cir. 1980), citing *U. S. v. Taylor*, 569 F.2d 448 (7th Cir. 1978), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978). As explained in Step Two, *supra*, the defamatory statements at issue are substantially likely to prejudice the instant proceedings.

Because the three defamatory statements – the statement that Puig sexually assaulted Roe; the statement that Roe has text messages proving Puig sexually assaulted Roe; and the statement that Roe has text messages in which Puig admitted that "something happened" – are not issues of public interest, neither subsections (e)(3) nor (e)(4) apply. Therefore, Jane Roe has failed to demonstrate that her statements and her counsel's statements are protected activities within the anti-SLAPP statute and the Court need not proceed to the second step of the anti-SLAPP analysis.

### 2.    Step Two: The minimal "probability of success" standard

Even assuming the Court determines that one or more of the three alleged defamatory statements identified in the FAA constitute protected speech under Section 425.16, then the analysis proceeds to Step Two only with respect to the alleged protected statements. *Cho*, 219 Cal.App.4th at 527. Section 425.16 confers no immunities; rather, it simply requires Puig to provide a minimal threshold showing regarding the claim alleged. The non-moving party need only "present the 'minimal' evidence necessary to demonstrate a reasonable probability of prevailing on the merits." *Hunter v. CBS Broadcasting, Inc.*, 221 Cal.App.4th 1510, 1525-26 (Cal. Ct. App. 2013) (internal citations omitted). "To meet this burden, the plaintiff must demonstrate that the complaint is [1] legally sufficient and [2] supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Navellier v. Sletten*, 29 Cal.4th 82, 89 (Cal. 2002).

As explained, if Roe had based the Motion only on alleged legal deficiencies in the complaint, the Motion would be properly treated as a motion under Rule 12. *Planned Parenthood*, 890 F.3d at 834, quoting *Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973, 983 (C.D. Cal. 1999). If that were the case, the Court would limit its review to the pleadings and matters which are judicially noticeable, and not rely on extrinsic evidence, because "to do so in a 12(b)(6) motion would convert it to a Rule 56 motion for summary judgment." *Sanchez v. American Media, Inc.*, 2020 WL 8816343 *8 (C.D. Cal.

December 2020.) Here, however, Roe has presented voluminous evidence and made factual challenges to liability and damages. *See, e.g.,* ECF No. 81-4, ¶¶ 9-19, Exs. 4-13; ECF No. 81-2, ¶ 3, Ex. 1; *see also* ECF No. 81-1, 3:17-5:13. Therefore, "the [anti-SLAPP] motion must be treated as though it were a motion for summary judgment and discovery must be permitted." *Z.F.*, 482 F.Appx. at 240. Consequently, the Court cannot reach Roe's factual challenges to the complaint at this time, for to do so would conflict with FRCP 56. *Metabolife*, 264 F.3d at 846.

Out of an extreme abundance of caution, Puig will respond to the Motion both on a Rule 12 and Rule 56 basis – *i.e.*, based upon the facts alleged and based upon the evidence. To the extent that Puig has failed to alleged facts sufficient to state a cause of action, Puig respectfully requests an opportunity to amend. To the extent Puig has failed to proffer facts sufficient to create a material dispute, Puig respectfully requests discovery to address those matters. *Metabolife Intern., Inc.* 264 F.3d at 846; *Z.F. v. Ripon Unified Sch. Dist.*, 482 F.Appx. at 240; *Tran*, 2019 WL 11322802 at *1; *Nano Foundation, Ltd.*, 2019 WL 6723428 at *2.

### a.      Puig has pled and can prove each element of his claims.

The elements of Puig's first cause of action for defamation *per se* are as follows:  (1) that Roe made the statements to person(s) other than Puig; (2) that those people reasonably understood that the statement(s) were about Puig; (3) that they reasonably understood the statement(s) to mean that Puig had committed a crime; (4) that the statement(s) were false; and (5) that the speaker of the statements knew the statement(s) were false or had serious doubts about the truth of the statement(s). Judicial Council of California Civil Jury Instructions ("CACI") No. 1700. The elements of Puig's second cause of action for defamation *per quod* are largely the same as defamation *per se*, except that Puig must also allege and prove damages: (1) that Roe made one or more of the statement(s) to persons other than Puig; (2) that they reasonably understood that the statement(s) were about Puig; (3) that because of the facts and circumstances known to the listener of the statement(s),

Roe tended to injure Puig in his occupation, or to expose him to hatred, contempt, ridicule, or shame, or to discourage others from associating or dealing with him; (4) that the statement(s) were false; (5) that Puig suffered harm to his property, business, profession, or occupation as a result of the statement(s); (6) that the statement(s) were a substantial factor in causing Puig's harm, and (7) the speaker of the statements knew the statement(s) were false or had serious doubts about the truth of the statement(s). CACI No. 1701.

"In deciding whether a statement is reasonably susceptible of a defamatory meaning, a court must use a totality of the circumstances test and put itself in place of an average reader and determine the natural and probable effect of the statement. [Citation.] [W]e look to what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the communication. [Citation.]" *Todd*, *supra*, 2020 WL 60199 at *15 (citations and quotation marks omitted); *see also* CACI Nos. 1700 and 1701. As a public figure, Puig must additionally show the statements were made with actual malice. Actual malice means "knowledge that [the statements were] false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

### i.      The statements were made to persons other than Puig.

The FAA alleges that the statements of Roe and her counsel were made to KTLA reporter Ms. McDade. *See, e.g.,* ECF No. 67, ¶¶ 55-56, 18:21-19:7. Therefore, Puig has sufficiently alleged the first element. Further, the evidence supports that allegation. Jane Roe participated in an interview with KTLA reporter Mary Beth McDade that was videotaped and published on November 2, 2020. Declaration of Reed Aljian ("Aljian Dec.") ¶¶ 3-4, Exs. B (audio/video), C (transcripts). The audio and video of the interview, as well as a written report of the interview, were published on KTLA's website and remains there to this date. *Id.* ¶ 3, Ex. B.

   **ii.  The audience reasonably understood the statements
were about Puig and are per se defamatory.**

  The FAA alleges that the statements of Roe and her counsel were made regarding
Puig. *See, e.g.,* ECF No. 67, ¶¶ 55-56, 18:21-19:7. Therefore, Puig has sufficiently alleged
the second element. Further, the evidence supports that element. During the KTLA
interview, Puig's name was mentioned seven times, including by Roe's counsel. Aljian
Decl. ¶¶ 3-4, Exs. B, C. There is no reasonable possibility that anyone would believe the
statements referred to anyone else.

  Furthermore, the FAA alleged, and the evidence supports the finding that, Roe's
statements and her counsel's statements on Roe's behalf accused Puig of committing a
crime of sexual assault; that Roe and her counsel stated that they had written proof of that
alleged crime; and that Roe and her counsel stated that they had written proof that Puig had
admitted to committing a crime, all of which is per se defamatory. *See, e.g.,* ECF No. 56,
18:21-19:5. Sexual assault and battery are crimes punishable under California law. Cal.
Penal Code § 243.4. "An allegation the plaintiff is guilty of a crime" and "[s]tatements
which falsely impute the commission of a crime" are both "libelous on their face." *Yow v.
Nat'l Enquirer, Inc.*, 550 F.Supp.2d 1179, 1183 (E.D. Cal. 2008). This applies not just to
Roe's statements accusing Puig of a crime, but naturally would include Ms. Rayfield's
statements that text messages prove Puig committed a crime and that Puig admitted to
committing a crime. Accordingly, all of these allegations are libelous on their face for
purposes of a defamation per se cause of action.

   **iii.  The statements are false and the speakers of the
statements knew them to be false.**

  The FAA alleges that three statements were false and that the speakers knew them
to be false, or had serious questions about the truth of their statements. ECF No. 67, ¶¶ 59-
60, 19:15-18, ¶¶ 72-73, 21:12-16. Therefore, Puig has adequately pled this element.
Further, the evidence supports that element or, at least, there is a material factual dispute

1   as to the truth of those statements. Puig contends the two engaged in consensual sex.

2   Declaration of Yasiel Puig ("Puig Decl.") ¶ 2, Aljian Decl. ¶ 2, Ex. A. There are no text

3   messages between the two parties that prove that sexual assault occurred. There are no text

4   messages between the two in which Puig admitted he sexually assaulted Roe or that

5   "something happened." ECF No. 81-3; Puig Decl. ¶ 3, Exs. A, B. This alone is sufficient

6   to create a material dispute of fact as to whether or not Roe's statements were false. Puig

7   will address Roe's "opinion" (interpretation) defense in Section III.B.2.d. In brief, these

8   are clearly not statements of opinion and the assertion that they are is absurd. They are fact

9   assertions claiming that Roe and her counsel possessed documents they did not in fact

10  possess.

11          **iv.    The statements are *per se* malicious.**

12          The FAA alleges that these statements were made with actual malice. ECF No. 67,

13  ¶ 62, 19:20-23. The FAA also alleged, as stated, that Roe and Ms. Rayfield's statements

14  were knowingly false statements. Therefore, Puig has adequately plead this element. *See*

15  *Cuenca v. Safeway San Francisco Employees Fed. Credit Union* (1986) 180 Cal.App.3d

16  985, 997, 225 Cal.Rptr. 852 (citations omitted) (stating malice may also be established by

17  showing that defendants "lacked reasonable grounds to believe the statement true and

18  therefore acted with reckless disregard for plaintiff's rights"); *Makaeff,* 715 F.3d at 258

19  (stating malice requires a showing that a statement was made "with knowledge that it was

20  false or with reckless disregard of whether it was false or not"); *New York Times Co.*, 376

21  U.S. at 280 (stating that malice is established where the defendant made a statement "with

22  knowledge that it was false or with reckless disregard of whether it was false or not");

23  *Heineke v. Santa Clara University*, 2017 WL 6026248 (N.D. Cal., Dec. 5, 2017) (stating

24  unequivocal denials of the allegations was enough to meet burden to show malice at the

25  anti-SLAPP stage).

26          Further, the evidence supports that element. Puig states he did not sexually assault

27  Roe. Puig Decl. ¶ 2; Aljian Decl. ¶ 2, Ex. A. There is no evidence of sexual assault. There

28

                                        **15**

is no evidence of any admission by Puig of sexual assault. Accordingly, taking Puig's declaration to be true (that he did not assault Roe), as the Court must for purposes of a Rule 56 analysis (*see T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631), the only logical conclusion that can be drawn from Roe's statements are that she knew that they were false when made, and therefore, made them with malice.

### v. Puig has been damaged.

Puig does not need to prove damages for purposes of defamation *per se*. *Todd*, *supra*, 2020 WL 60199 at *15. For purposes of defamation *per quod*, the FAA alleges harm and proximate cause. ECF No. 67, ¶¶ 61, 64-66, 19:19, 19:25-20:9. Therefore, Puig has adequately pled this element. Further, the evidence supports that element.

In 2012, Puig began his MLB career by signing a seven-year contract with the Los Angeles Dodgers. Puig Decl. ¶ 4. In 2019, Puig signed a one-year contract and split his season between the Cincinnati Reds and Cleveland Indians. *Id*. Just prior to the shortened 2020 season, and the worldwide COVID pandemic, Puig was offered a one-year contract with the Atlanta Braves. *Id.* Unfortunately, Puig suffered from a positive COVID diagnosis and the contract offer was rescinded. *Id.* Puig eventually recovered from COVID, but due to the shortened season, he remained unsigned. *Id*.

In 2021, Puig intended to participate in the regular MLB season. *Id.*, ¶ 5. However, as Puig contends and will seek to take discovery to prove that the proximate cause of his harm are the defamatory statements at issue. Indeed, this fact is reflected in news articles, including a March 11, 2021 ESPN article, stating "teams that reportedly expressed interest in Puig…have factored [Roe's] allegations into their decisions" and "[n]obody wants the headache" Aljian Dec. ¶ 5, Ex. D. As a result, Puig signed with El Aguila de Veracruz in the Mexican League. Puig Decl. ¶ 5.

Puig's merit as a baseball player is without question. Puig has a lifetime batting average of .277 with 132 home runs, 415 runs batted in, and 79 stolen bases. *Id*., ¶ 5. This season in the Mexican league, Puig continues his strong play. *Id.* ¶ 8. Roe contends that

Puig has not been signed for other reasons.  She argues that "Puig's inability to secure employment amongst MLB teams stems from his long-standing reputation of misconduct and violence – both on and off the field – coupled with repeated instance of tardiness, discipline, and disputes with fans, teammates, and coaches alike." ECF No. 81-1, 4:6-9. Consequently, this is simply a material factual dispute about causation.  This is a factual dispute for a jury. Puig has satisfied his burden with respect to damages, and the matter must proceed to permit discovery of these issues.

> **b.    Neither Roe nor her lawyer's statements are privileged under Civil Code section 47(d) as a "true and fair report."**

Roe contends that the three statements at issue are privileged under Civil Code section 47 (d) as a "fair and true report" of the instant proceedings. Roe is incorrect. A publication is "fair and true" if it captures the substance of the judicial proceedings being reported. *Kilgore v. Younger*, 30 Cal.3d 770, 777 (Cal.1982). "To be 'fair and true,' the report must [capture] the substance, the 'gist' or 'sting', of the subject proceedings as measured by considering the natural and probable effect [of the report] on the mind of the average reader." *Blatt v. Pambakian*, 432 F.Supp.3d 1141, 1170 (C.D. Cal. 2020) ("*Blatt*"), *quoting Argentieri v. Zuckerbuerg*, 8 Cal.App.5th 768, 787-88 (Cal. Ct. App. 2017). "[S]tatements are privileged if they are fair and true reports *about the proceedings* or of what was *said in the proceedings*." *Healthsmart Pacific, Inc. v. Kabateck*, 7 Cal.App.5th 416, at 435 (Cal. Ct. App. 2016). But statements are not privileged where they "appear as statements of fact rather than a report of judicial proceedings." *American Dental Ass'n v. Kohrrami*, 2004 WL 3486525 *4 (C.D. Cal. January 2004.) "There is [] a critical difference between communicating to the media what is alleged in a complaint and communicating the alleged facts without reference to the complaint." *Healthsmart*, 7 Cal.App.5th at 435. This is because while California law protects reports of *allegations* made to the media, no protection is afforded to individuals "if they informed the media that such facts were true." *Id*.

Here, the statements alleged in the FAA—the three statements set forth above—are *not* statements about what is *alleged* in Roe's operative complaint. They are assertions that Puig in fact committed a crime, and that Roe and her counsel possess certain alleged pieces of evidence that prove he committed a crime and admitted to it. The instant case presents analogous circumstances to those in *Blatt*. In *Blatt*, the parties were involved in an initial lawsuit alleging that Blatt, the CEO of the dating app Tinder, sexually harassed its Vice President, and attempted to cover this up in advance of a board meeting regarding the company's valuation. After the lawsuit was initiated, former Tinder executives Pambakian and Rad provided information for articles published by CNN and the Verge, and Rad appeared in a CNN broadcast. Blatt sued Pambakian and Rad for defamation for statements made during these articles and the broadcast, and Pambakian and Rad responded with an anti-SLAPP motion, arguing that their statements were privileged as fair and true reports of the ongoing litigation. The *Blatt* Court granted in part and denied in part their motion. The Court ruled that public statements made in the media subsequent to the filing of the complaint that added details that were absent from the complaint and that could be "expected to produce a different effect on the reader" were not privileged. *Id*. at 1172-73.

Here, Roe's statements to KTLA include precisely such added details not found in the October 2020 operative complaint. In particular, Roe's statements to KTLA included the following added graphic detail: "I walked into the restroom and I felt someone follow behind me. Next thing I know the door was slammed. I really had no way of getting out. He was just saying, like, come on, baby. Like, weird things like that." Aljian Decl., ¶ 4, Ex. C. These statements are absent from Roe's original complaint (ECF No. 1-1, *passim*), which was operative when the statements were made, and would therefore be "expected to produce a different effect on the reader" than the complaint itself. *Blatt,* 324 F.Supp.3d at 1172-73. Moreover, *all* of Roe's statements are issued as statements of fact. Roe never stated "I alleged in the complaint" or "as alleged in the lawsuit" or words to that effect. Roe's speech is not protected because rather than simply communicating that she has

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE

1   alleged Puig sexually assaulted her, she "informed the media that such facts were true,"

2   which is expressly not privileged. *Healthsmart*, 7 Cal.App.5th at 435. Such assertions void

3   any protection which might otherwise be afforded by the fair and true reporting privilege.

4   *Id*.

5        Similarly, Ms. Rayfield's statements to KTLA are not about the allegations in the

6   underlying complaint at all, but rather assert that she possesses documents proving that

7   Puig committed sexual assault and that Puig admitted committing sexual assault. ECF No.

8   67, ¶ 38, 15:15-19. Just as the non-movants in *Blatt* were not privileged when they claimed

9   to be in possession of smoking-gun emails, Ms. Rayfield's statements are communicated

10   as facts rather than allegations, and carry a different "gist or sting" than what the operative

11   complaint alleges. *Blatt*, 432 F.Supp.3d at 1170. In fact, neither Roe nor Ms. Rayfield ever

12   even mentioned the operative complaint in their statements.  It is one thing to say,

13   "Yesterday we filed a lawsuit making certain allegations."  That is not what Roe and her

14   counsel did. Instead, they went on television and made different and more detailed

15   allegations that are not found in the lawsuit, and they asserted that they possessed

16   documents proving Puig's culpability and in which Puig admitted culpability. No such

17   allegation is found anywhere in the operative complaint.  Roe's and her counsel's public

18   statements do not have "the same gist or sting as the allegations contained in the

19   [underlying complaint]." *Id*. at 1174.  They are not privileged. As in *Blatt*, the natural and

20   probable effect of the statements Roe and her counsel made was entirely different from that

21   of the allegations contained in the operative complaint

22          **c.**    **Ms. Rayfield's statements are expressly exempt under**

23               **Section 47(d)(2)(A).**

24        Ms. Rayfield's statements are not privileged for an additional reason. California

25   Civil Code section 47, specifically exempts from the privilege "an extrajudicial statement

26   that the lawyer knows or reasonably should know will (i) be disseminated by means of

27   public communication and (ii) have a substantial likelihood of materially prejudicing an

28

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE

adjudicative proceeding in the matter." 1996 Cal. Legis. Serv. Ch. 1055 (S.B. 1540); *see* Cal. Civ. Code § 47 (d)(2), CA ST. RPC Rule 3.6 (formerly Rule 5-120). Whether an extrajudicial statement violates this rule depends on many factors, including: (i) whether the extrajudicial statement presents information clearly inadmissible as evidence in the matter for the purpose of proving or disproving a material fact in issue; (ii) whether the extrajudicial statement presents information the lawyer knows[] is false, deceptive, or the use of which would violate Business and Professions Code section 6068, subdivision (d) or rule 3.3….; and (iv) the timing of the statement. CA ST. RPC Rule 3.6, Comment 1.

Here, as alleged in the FAA, Ms. Rayfield asserted, on Roe's behalf, to be in possession of text messages proving Puig sexually assaulted Roe, and text messages containing an admission by Puig that "something happened." ECF No. 67, ¶ 38, 15:15-19. The "something happened" was clearly and reasonably understood in the context of the interview as referring to sexual assault.

First, Ms. Rayfield's statements were expressly intended to be disseminated to a massive public audience potentially reaching the entire jury pool (including millions of residents of Los Angeles County). KTLA is among Los Angeles's most popular primetime local news station.[3] Second, the statements are objectively inaccurate. There are no such text messages proving sexual assault or an admission of sexual assault. ECF No. 81-3; Puig Decl. ¶ 3, Exs. A, B. In a desperate and failed attempt to justify their conduct, Roe and Ms. Rayfield claim to rely upon a single message from Puig to Roe that clearly does not provide written proof that a sexual assault occurred or an admission of anything. In short,

---

[3]   The interview with KTLA was aired at 10:11 p.m. Aljian Decl. ¶ 3, Ex. B. KTLA's primetime 10 pm – 11 pm segment is reported as having the highest viewership among Los Angeles local news networks, at over 100,000. "KTLA 5 Most Watched in Los Angeles for May", available at https://newson.news/tv/02062018436-ktla-5-most-watched-in-la-may/ (Last visited July 12, 2021); *see also* "KTLA 5 News is Los Angeles' Most-Watched Local A.M. News, No. 1 at 10 P.M.", available at https://ktla.com/seen-on-tv/ktla-5-news-is-los-angeles-most-watched-local-a-m-news-no-1-at-10-p-m/ (Last visited July 12, 2021).

DEFENDANT'S OPPOSITION TO MOTION TO STRIKE

Ms. Rayfield said on television that she possessed certain damning evidence, when in fact she did not possess any such thing and she knew that she did not possess any such thing. Having made these statements in this fashion (a television interview that would likely be viewed by millions, and that remains available online to this date), Ms. Rayfield knew (or reasonably should have known) that there was a substantial likelihood of materially prejudicing this matter. Cal. Civ. Code § 47 (d)(2), CA ST. RPC Rule 3.6. Finally, the statement that there are text messages proving sexual assault and admissions of sexual assault is an extrajudicial statement regarding inadmissible evidence because, as stated, there are no such messages.

Roe's Motion challenges Ms. Rayfield's Rule 3.6 violations on the evidence, claiming that Puig does not have any evidence of Ms. Rayfield's knowledge of falsity and intent to prejudice.[4] This merely creates a material fact in dispute. And a reasonable trier of fact could straightforwardly determine that her intent was to impact the jury, litigate the case in the press, and to prejudice these proceedings. The obvious falsity of the claims, the clear deceit in making these claims, and the lack of any evidence to support the claims

---

[4]      In fact, Roe's Motion goes so far as to state "Puig must demonstrate that the statements made by [Ms. Rayfield] were made with knowledge that they would materially prejudice the adjudicative proceeding itself. Puig has not – and cannot – make such a showing." ECF No. 81-1, 20:13-16. Because Ms. Rayfield's knowledge and intent is relevant to the determination of whether or not her comments violated Rule 3.6 (and, therefore, whether it is privileged under California law), Puig is entitled to take and will seek to take discovery of those factual issues, including deposing Ms. Rayfield, placing her under penalty of perjury, and examining her regarding these matters. *See, e.g., Littlefield v. Nutribullet, LLC*, 2017 WL 10438897 *4 (stating opposing counsel may be deposed where (1) there are no other means to obtain the information, (2) the information is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case.) And it does not go unnoticed that Roe's Motion makes reference to these disputes and challenges the existence of facts addressing those issue, and yet Ms. Rayfield's declaration does not address or make any reference to her knowledge or intent. Until her deposition, this remains yet another critical factual dispute that requires discovery to resolve and precludes a decision at this time.

weighs in favor of a finding that the statements violated Rule 3.6. CA ST. RPC Rule 3.6,
Comment 1. Therefore, Ms. Rayfield's statements, made on Roe's behalf in her capacity
as Roe's agent and authorized spokesperson, are expressly exempted from Section 47 and,
consequently, are not privileged. To the extent that discovery would be necessary (as Roe
contends), the Motion should be denied to permit the parties to obtain this discovery.

### d.    None of the alleged defamatory statements are opinion.

Roe contends the statements at issue are opinion. She makes vague references to
statements by Roe, but principally appears to raise this as a defense to Ms. Rayfield's
defamatory statements. (Roe does not contend, nor could she, that the direct factual
assertion that Puig sexually assaulted her is a "statement of opinion.") Roe's assertions that
her counsel's statements are opinion is frivolous and is nothing more than a strawman
argument. The statements at issue in the FAA, set forth above, were asserted
straightforwardly as statements of fact: that Puig in fact committed the alleged events of
October 31, 2018 (ECF No. 67, ¶¶ 38, 42, 46, 15:10-19, 16:10-14, 16:26-17:5), that Roe
was in fact in possession of text messages proving he sexually assaulted her (*id*., ¶ 38,
15:15-17), and that Roe was in fact in possession of text messages containing Puig's
admission of guilt (*id*., ¶ 38, 15:17-19.) These are direct factual contentions – not
statements of opinion.

In support of this "opinion" contention, Roe asserts that the parties may have a
difference of opinion as to the "interpretation" of the text messages (an assertion which, at
the risk of repetition *ad nauseum*, requires a Rule 56 analysis following discovery). But
Roe and her counsel have made substantial and prejudicial assertions of fact and cannot
now hide behind the assertion that the ultimate subject of some of the assertions is subject
to interpretation. Roe's argument *might* hold water if she had simply stated that she
believed that Puig would ultimately be found liable for the acts as alleged in the complaint.
But that is *not* what she said.  The statements she and Ms. Rayfield actually made on
television are quite simply not statements of opinion. If a person states, "John raped me, I

have proof that he raped me, and he admitted to raping me," she cannot defeat a defamation suit on the pleadings by  contending—post hoc, after going on television and publicly accusing John of rape—that her statements were only her "opinion." Accusations of misconduct, unless consisting of "loose, figurative, or hyperbolic language" are not constitutionally protected as statements of opinion. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990) (newspaper article stating that an individual lied at a hearing not mere statement of opinion). No figurative language is present here: Roe's and Roe's counsel's statements are purely statements of fact.

For purposes of a Rule 12 analysis, Puig has adequately pled that Roe and her counsel issued these statements as facts. And to the extent that a factfinder could find that there is any ambiguity as to whether  they were factual assertions, that is for the jury: "it is for the jury to determine whether an ordinary reader would have understood the article as a factual assertion…" *Good Gov't Group of Seal Beach, Inc. v. Superior Court*, 22 Cal.3d 672, 682 (Cal. 1978). Accordingly, for purposes of Rule 56, there is at the very least a material dispute of fact to be resolved at trial as to whether these statements were statements of fact.

### C.    Attorneys' Fees

#### 1.    Roe Has Waived her Right to Attorneys' Fees

In Roe's Notice of Motion (ECF No. 81), Roe states that she "reserves the right to request that the Court enter an award of attorneys' fees and costs pursuant to Code of Civil Procedure § 425.16(c). *Id.*, 2:12-13. But Roe does not actually make this request in either the Notice or Motion (ECF Nos. 81, 81-1, *passim*). As such, Roe has waived her right to attorneys' fees. *See Moore v. Rodriguez*, 2021 WL 2222590 (S.D. Cal. June 2021) (despite being prevailing parties and thus entitled to fees, defendants who did not request attorneys' fees in anti-SLAPP motion not awarded fees). Other courts outside the anti-SLAPP context have held the same: *Higginbotham v. South East Employee Leasing Services, Inc.*, 2020 WL 5535421 (E.D. Cal. September 2020) (refusing to consider subsequent request for

attorneys' fees where not initially requested); *Del Nigro v. AM Properties, LLC, et al.*, 2020 WL 220037 (C.D. Cal. February 2020) (same); *In re Hill*, 2006 WL 2577211 (Bankr. E.D. Cal. September 2006) (same); *Shames v. Utility Consumers' Action Network*, 13 Cal.App.5th 29 (Cal. Ct. App. 2017) (same); *Oracle USA, Inc. v. Qtrax, Inc.*, 2011 WL 4853436 (N.D. Cal. September 2011) (attorneys' fees not recommended where even though moving papers asked for attorneys' fees, supplemental filing did not).

### 2. Puig Requests Attorneys' Fees

A prevailing non-moving party to an anti-SLAPP motion is entitled to mandatory fees, should the Court find that the motion "is frivolous or is solely intended to cause unnecessary delay…" (Section 425.16(c)(1).) Because this section makes reference to California Code of Civil Procedure section 128.5, "a court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney fees under the anti-SLAPP statute." *Decker v. U.D. Registry, Inc.*, 105 Cal.App.4th 1382, 1392 (Cal. Ct. App. 2003). This requires a finding that the anti-SLAPP "motion is 'totally and completely without merit' (§ 128.5, subd. (b)(2)), that is, 'any reasonable attorney would agree such motion is totally devoid of merit.'" *Decker*, 105 Cal.App.4th at 1392.

Here, Roe's Motion is completely without merit. Indeed, among other things, Roe claims to seek relief of Court under the Rule 12 analysis but presents voluminous evidentiary records and makes numerous factual challenges in support of her various arguments. Prior precedent, including this Court's prior rulings, establish that anti-SLAPP motions that include a "significant factual component" must be denied and addressed at the summary judgment stage for a determination of the factual and legal disputes after discovery on the merits. Moreover, Roe's Motion is replete with false and unsupportable statements, including the allegation that any of the messages between the parties actually prove sexual assault occurred or that Puig made any admissions. For the foregoing reasons, Roe's Motion is frivolous and Puig requests that the Court award Puig fees for having to defend an unnecessary motion in the amount of $47,027.50. Aljian Dec. ¶ 19.

**D.    If the Motion is Granted, Even in Part, Puig Is Entitled To Leave To Amend and/or To Take Discovery.**

"California and federal courts [] differ with respect to granting leave to amend if an anti-SLAPP movant succeeds." *Sanchez*, 2020 WL 8816343 at *4. Although California courts do not grant leave to amend upon a successful anti-SLAPP motion, failure to do so in federal court directly collides with Fed.R.Civ.P. 15(a)'s policy favoring liberal amendment. *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Accordingly, federal courts will liberally grant leave to amend, unless doing so would be futile. *Carolina Cas. Ins. Co. v. Team Equip. Inc.*, 741 F.3d 1082, 1085 (9th Cir. 2014). Therefore, should the Court grant any portion of Roe's Motion, Puig respectfully requests leave to amend his First Amended Answer and Countercomplaint pursuant to Fed.R.Civ.P. 15(a). To the extent the Court finds any evidence is deficient at this time, Puig respectfully requests the right to take discovery.

## IV.    CONCLUSION

For the foregoing reasons, Puig respectfully requests that this Court enter an order (1) denying Roe's Motion in its entirety, and (2) awarding Puig reasonable fees and costs incurred in defending against the Motion.

Dated:       July 22, 2021              WERKSMAN, JACKSON, & QUINN LLP

By: /s/ Alan Jackson
                                                   ALAN JACKSON
                                                   Attorneys for Defendant and Counter-
                                                   Complainant YASIEL PUIG

Dated:       July 22, 2021              DAILY ALJIAN LLP

By: /s/ Reed Aljian
                                                   Reed Aljian
                                                   Attorneys for Defendant and Counter-
                                                   Complainant YASIEL PUIG