JOHN C. MANLY (State Bar No. 149080)
jmanly@manlystewart.com
TAYLOR RAYFIELD (State Bar No. 272300)
trayfield@manlystewart.com
COURTNEY P. PENDRY (State Bar No. 327382)
cpendry@manlystewart.com
**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990
Facsimile: (949) 252-9991

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JANE ROE,<br><br>               Plaintiff,<br><br>    v.<br><br>YASIEL PUIG, and DOES 1-10, inclusive,<br><br>               Defendant. | Case No. 2:20-cv-11064-FMO-MRW<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION OF DISCOVERY DISPUTE RE JANE ROE'S OBJECTIONS TO SUBPOENAS FOR EMPLOYMENT AND FINANCIAL RECORDS ISSUED BY DEFENDANT YASIEL PUIG**<br><br>Date:        September 8, 2021<br>Time:        9:30 a.m.<br>Courtroom: 550<br><br>Fact Discovery Cutoff:  Oct. 11, 2021<br>Expert Discovery Cutoff: Dec. 25, 2021<br>Pre-Trial Conference:   April 15, 2022<br><br>Trial Date:          May 3. 2022 |

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      SUMMARY OF THE ACTION AND COUNTERCLAIMS .......................... 1

II.     FACTS RELEVANT TO THE DISPUTED DISCOVERY; STATEMENT OF COMPLIANCE WITH LOCAL RULE 37-1 ................... 1

III.    INTRODUCTORY STATEMENTS .................................................. 2

    A.    Jane Roe's Introductory Statement ................................ 2

    B.    Puig's Introductory Statement ...................................... 3

IV.     THE DISCOVERY REQUESTS AND RESPONSES AT ISSUE .................. 4

V.      JANE ROE'S CONTENTIONS .................................................... 4

    A.    The Court Must Quash Puig's Subpoenas ........................ 4

        1.    Puig Seeks Privacy-Protected Documents That Are Neither Relevant Nor Proportionate to the Needs of the Case. ................. 4

        2.    Production of These Highly-Sensitive, Irrelevant Records Would Severely and Unnecessarily Infringe Upon Plaintiff's Privacy Rights. ................. 7

    B.    A Protective Order is Necessary to Protect Jane Roe If the Motion to Quash Is Not Granted ................................ 10

        1.    The Court Has the Power to Grant This Protective Order ......... 10

        2.    Good Cause Exists to Issue A Protective Order ........................ 11

VI.     PUIG'S CONTENTIONS ............................................................ 12

    A.    Puig Does Not Oppose Modification of the Protective Order to Designate Financial Records Confidential. ............................ 12

    B.    The Subpoenas Seek Relevant Documents. ......................... 13

VII.    The Responsive Documents are Proportional to the Needs of the Case. ........ 17

    A.    Countervailing Interests Outweigh the Privacy Interests at Issue. ....... 19

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

Barsamian v. City of Kingsburg,
   2008 WL 2168996 (E.D. Cal. 2008) ....................................................19

*Bd. of Trs. v. Superior Court,*
   (1981) 119 Cal.App.3d 516 ..........................................................8, 9, 11

Blankenship v. Hearst Corp.,
   519 F.2d 418 (9th Cir. 1975) ..........................................................13

*Breed v. U.S. Dist. Court of Northern Dist. of Cal.,*
   542 F.2d 1114 (9th Cir. 1976) ..........................................................7

*Britt v. Superior Court,*
   (1978) 20 Cal.3d 844 ...............................................................11, 19

*Cobb v. Superior Court,*
   (1979) 99 Cal.App.3d 543 ..............................................................8

Cook v. Yellow Freight System, Inc.,
   132 F.R.D. 548 (E.D. Cal. 1990) ......................................................19

Davis v.  Kelly Services, Inc.,
   2017 WL 10562943 (C.D. Cal. 2017) ...............................................19

*Davis v. Superior Court,*
   7 Cal.App.4th 1008 (1992) ..............................................................6

*El Dorado Savings & Loan Association v. Superior Court,*
   (1987) 190 Cal.App.3d 342 ........................................................8, 11

Evans v. Affiliated Computer Services, Inc.,
   2014 WL 12600831 (C.D. Cal. May 9, 2014)........................15, 17, 19

*Fortunato v. Superior Court,*
   (2003) 114 Cal.App.4th 475 .......................................................8, 11

Frontline Medical Associates, Inc. v. Coventry Health Care,
   263 F.R.D. 567 (C.D. Cal. 2009)......................................................15

*Glenmede Tr. Co. v. Thompson,*
   56 F.3d 476 (3rd Cir. 1995) ............................................................11

*Heda v. Superior Court,*
   (1990) 225 Cal.App.3d 525 ............................................................11

*Hill v. Nat'l Collegiate Athletic Ass'n,*
   865 P.2d 633 (Cal. 1994).............................................................8, 9

*In re Roman Cath. Archbishop of Portland in Oregon,*
   661 F.3d 417 (9th Cir. 2011) ..........................................................11

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

JOINT STIPULATION RE MOTION TO QUASH PUIG'S SUBPOENAS

*Laub v. Horbaczewski*,
  331 F.R.D. 516 (C.D. Cal. 2019)...............................................................6, 7

*Mendez v. Superior Court*,
  206 Cal.App.3d 557 (1988) ..........................................................................6

Peck v. County of Orange,
  2020 WL 4218223 (C.D. Cal. July 10, 2020) ...........................15, 17, 19

*Phillips v. General Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) ...................................................................10

*Pioneer Elecs. (USA), Inc. v. Superior Court*,
  150 P.3d 198 (Cal. 2007)..........................................................................8, 9

Roberts v. Gulf Oil Corp.,
  147 Cal.App.3d 770 (1983) ........................................................................19

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984)......................................................................................11

Somers v. Digital Realty Trust, Inc.,
  2017 WL 2954909 (C.D. Cal. 2017 Jul. 11, 2017) ...................................15

*Soto v. City of Concord*,
  162 F.R.D. 603 (N.D. Cal. 1995) .................................................................6

Superior Communs. v. Earhugger, Inc.,
  257 F.R.D. 215 (C.D. Cal., 2009)..............................................................13

Vinson v. Superior Court,
  43 Cal.3d 833 (Cal. 1987) ..........................................................................19

*Williams v. Superior Court*,
  398 P.3d 69 (Cal. 2017)................................................................................8

Young v. U.S.,
  149 F.R.D. 199 (S.D. Cal. 1993) ...........................................15, 17, 19

**Statutes**

Cal. Civ. Code § 3295(c) ..................................................................................8
California Constitution, Article 1 ......................................................................8
California Constitution, Article 1, Section 1 .....................................................7

**Rules**

Fed. R. Civ. P. 26(a)(1)(A)(iii).......................................................................15
Fed. R. Civ. P. 26(a)(1)(iii)......................................................................15, 17
Fed. R. Civ. P. 26(b)(1) ..............................................3, 4, 7, 13, 15, 17
Fed. R. Civ. P. 26(b)(2)(C)(iii)........................................................................4
Fed. R. Civ. Pro. 26(c)(1) ......................................................................10, 13
Fed.R.Civ.Pro. 26(c)......................................................................................10
Federal Rule of Evidence 401.......................................................................4, 5

**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

iii

1

Rule 26 ................................................................................5, 13, 14, 15, 17

2

Other Authorities

3

2  1

4

L.R. 37 ........................................................................................................ 1

5

United States v. McGraw-Hill Companies, Inc.,
    2014 WL 164738 (C.D. Cal., 2014) ................................................. 13

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

JOINT STIPULATION RE MOTION TO QUASH PUIG'S SUBPOENAS

1   Pursuant to L.R. 37-2, the parties hereby submit this Joint Stipulation (the

2   "Motion") regarding Defendant Yasiel Puig's ("Puig") subpoenas duces tecum issued

3   to (1) Business A, (2) Business B (3) Business C, (4) Business D, and (5) Business

4   E[1].

5   **I.   <u>SUMMARY OF THE ACTION AND COUNTERCLAIMS</u>**

6   Plaintiff's operative complaint (the First Amended Complaint or "FAC")

7   asserts four causes of action against Defendant: (1) assault and battery, (2) intentional

8   infliction of emotional distress, (3) negligence, and (4) false imprisonment based on

9   an alleged sexual encounter between Plaintiff and Defendant during a Lakers game at

10  the Staples Center on October 31, 2018. On May 28, 2021, Defendant filed an Answer

11  to the FAC denying the allegations and bringing Counterclaims against Plaintiff for

12  (1) defamation per se and (2) defamation per quod and, on June 17, 2021, Defendant

13  filed a First Amended Answer and Counterclaims asserting the same two causes of

14  action (the "Answer").

15  **II.   <u>FACTS RELEVANT TO THE DISPUTED DISCOVERY; STATEMENT</u>**

16  **<u>OF COMPLIANCE WITH LOCAL RULE 37-1</u>**

17  On July 16, 2021, Puig served  Notices of Document Subpoena to Jane Roe's

18  personal businesses, Business A, Business B, , Business C, Business D, and Business

19  E. <u>Declaration of Taylor Rayfield</u> ("<u>DTR</u>") ¶ 2; Appendix of Puig's Subpoenas at

20  Issue.  The subpoenas were served electronically via email to Jane Roe's counsel on

21  July 15, 2021. <u>DTR</u> ¶ 2.  On July 15, 2021, counsel for Jane Roe confirmed receipt of

22  the subpoenas and asserted objections thereto. *Id*.  Each subpoena seeks production

23  of "the company's income statements, balance sheets, cash flow statements, and

24  evidence of all compensation paid to and funds distributed to [Jane Roe] via cash,

25

26  _____

[1] In order to preserve Jane Roe's anonymity, the parties have agreed to substitute the
27  true names of the subpoenaed businesses owed by Jane Roe with the above referenced
identifiers.
28

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

check, or electronic transfer, including loans, owner draws, dividends, salary and expense reimbursements, for the period from January 1, 2016 to the present date." *See* Appendix of Puig's Subpoenas at Issue. Each subpoena has the same production date of August 6, 2021 at 5:00 p.m. DTR ¶ 2.

On July 28, 2021 counsel for Jane Roe and Puig participated in a telephonic meet and confer conference to discuss the subpoenas and attempt to resolve the dispute informally. DTR ¶ 3. The parties ultimately were not able to resolve their disputes, thereby necessitating the instant Motion.

## III. INTRODUCTORY STATEMENTS

### A. Jane Roe's Introductory Statement

This dispute involves subpoenas issued by Puig to (1) Business A, (2) Business B, (3) Business C, (4) Business D, and (5) Business E. These are all business owned and operated by Jane Roe. However, as discussed *infra*, Jane Roe does not seek damages from Puig related to past or future loss of earnings or earning capacity. Rather, Jane Roe only seeks punitive damages and damages arising from emotional/psychological injuries inflicted upon her by Puig's sexual assault (including hospital and medical expenses, and past and future mental health treatment, and other related incidental expenses). Nevertheless, by the subject subpoenas, Puig is demanding documents that would disclose privacy-protected information contained within Jane Roe's financial and employment records. These confidential records have no probative value whatsoever to Jane Roe's claims against Puig. Rather, Puig is fishing for highly-sensitive information that has no relevance to this action in order to embarrass Jane Roe and cause her undue burden.

Counsel for Jane Roe has gone to great lengths to avoid the instant Motion. As a threshold matter, Jane Roe purposely did not include loss of past or future earnings or earning capacity in her Rule 26 Disclosures. Exhibit "1" to DTR. Further, Jane Roe has provided verified discovery responses wherein she expressly stated she is not seeking such damages. Exhibit "2" to DTR. Finally, Jane Roe offered to enter into a

stipulation confirming that she is not seeking past or future lost earnings or earning capacity. Exhibit "3" to <u>DTR</u>. Despite Jane Roe's best efforts to resolve this dispute without judicial intervention, Puig continues to improperly seek Jane Roe's financial and business records with respect to each of her companies.

### B. Puig's Introductory Statement

Roe's operative pleading seeks recovery of damages for loss of earnings and loss of earning capacity. See Declaration of Reed Aljian ("Aljian Decl."), Ex. B (FAC, ECF No. 19), ¶¶ 20, 28, 34, 42; p. 11, ¶¶ 3-4.  Her pleading also seeks recovery of damages for alleged permanent mental and physical disabilities allegedly caused by the incident at issue. Id. at Ex. B, ¶¶ 18-19, 26, 32, 40. And she wishes to present evidence and argument regarding how the alleged incident affected her work, ability to earn income, and ability to attend to business matters. See Declaration of Taylor Rayfield, Ex. 3 (July 26, 2021, email at 2:56 p.m., and Roe's response at 3:12 p.m. rejecting proposal). Therefore, she placed her earnings and earning capacity at issue. To address and defend against these allegations, Puig sought production of her financial records, including serving subpoenas to each of her businesses (the "Subpoenas"). Roe claims she is not seeking loss of earnings or loss of earning capacity, relying upon her Rule 26 Disclosures and discovery responses. However, the pleadings establish the scope of discovery. Fed. R. Civ. P. 26(b)(1). Roe is not precluded from supplementing or amending her disclosures and discovery responses to broaden the relief she is seeking to include the damages she expressly seeks in her operative pleading.

Puig proposed that Roe enter an express waiver of earnings and earning capacity damages and a waiver of her right to present evidence and argument relating to, among other things, her ability to work and her productivity at work. See Rayfield Decl., Ex. 3 (see July 26, 2021, email at 2:56 p.m.). Roe agreed to waive the damages but refused to waive the right to present related evidence and argument. See Rayfield Decl., Ex. 3 (see July 26, 2021, email at 3:12 p.m.). If she wishes to present evidence

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

or argument that Puig's alleged conduct somehow affected her productivity at work, then Puig must be allowed to take discovery relating to that issue, including whether the businesses' financials or her financials suggest that there was no impact on her work.

Puig does not object to including financial records relating to Roe among the categories of confidential records. However, Puig does oppose entry of an order quashing the Subpoenas. Therefore, Puig respectfully requests that the Court deny the motion to quash. As Puig does not oppose modification of the Protective Order (ECF No. 94) to address the responsive documents, Puig defers to the Court's discretion on that request.

## IV.    THE DISCOVERY REQUESTS AND RESPONSES AT ISSUE

See Appendix attached as Exhibit "A" to this Stipulation, which contains the contents of the subpoenas at issue.

## V.    JANE ROE'S CONTENTIONS

### A.    The Court Must Quash Puig's Subpoenas

#### 1.    Puig Seeks Privacy-Protected Documents That Are Neither Relevant Nor Proportionate to the Needs of the Case.

Puig's request for Jane Roe's employment and financial records through subpoenas violates Federal Rule of Civil Procedure 26(b)(1) because they are neither relevant to any party's claim or defense, nor proportionate to the needs of the case. The right to discovery is *not* limitless. Discovery may be denied where ". . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

The applicable test to assess the merits of a motion to quash is to ascertain whether evidence sought by the subpoena at issue is **relevant** to any party's claim or defense, **and proportional** to the needs of the case. Fed. R. Civ. P. 26(b)(1). Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

1   more or less probable than it would be without the evidence." Fed. R. Evid. 401. Here,

2   none of the information sought by Puig through his subpoenas is relevant because

3   Jane Roe's financial and employment records have no bearing on any facts at

4   consequence in this action. Jane Roe has repeatedly made it known that she is ***not***

5   seeking damages for any loss of earnings or earning capacity. Exhibit 2 to Plaintiff's

6   Rule 26 Disclosure.[2] Specifically, Jane Roe confirmed in ***verified discovery responses***

7   that she is not seeking damages for past or future loss of earnings or earning capacity

8   and has offered to stipulate to the same. Exhibit "2" to <u>DTR</u>.   Given that Jane Roe

9   has  confirmed on multiple occasions that she is not seeking any such damages,

10  Defendant has not—and cannot—provide a valid reason as to why Jane Roe's

11  employment history and financial records are relevant to any claims or defenses in

12  this action.

13      In spite of Jane Roe's clear, repeated waiver of any loss of earnings or earning

14  capacity claim, Puig has taken the untenable position that Jane Roe must either

15  stipulate to waiving "any claims to loss of earnings and loss of earning capacity and

16  agreeing not to present any evidence or argument of alleged inability to work, earn

17  income, attend to business matters, go to work, etc, and any physical or mental

18  disability as it relates to work," or else produce her financial and employment records.

19  Exhibit "3" to <u>DTR</u>. Puig further contends that, "[i]f Roe intends on presenting

20  evidence or argument regarding alleged impacts on her business or her ability to work,

21  we are entitled to the evidence related to those assertions, which includes the financial

22  records requested[3]." *Id.*  Puig's argument evidences a fundamental misunderstanding

23  of Plaintiff's damages claims. As is common among survivors of sexual assault, Jane

24

25  [2] Jane Roe is willing to further clarify damages she is seeking in this matter by

26  supplementing her initial disclosures.

27  [3] Jane Roe maintains that these considerations are more appropriately addressed

28  through motions *in limine*, jury instructions, etc.

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

Roe has suffered immense emotional and mental distress as a result of Puig's sexual abuse. Certainly, Jane Roe has experienced such emotional and mental distress while working at her place of employment (just as she has in all other facets of her life), and she reserves her right to present evidence of such emotional and mental distress in support of her damages case. However, Jane Roe **will *not*** claim that any mental or emotional distress that she experienced during her employment caused her to lose income or negatively impacted her ability to lose income.[4] Accordingly, Jane Roe has not put her financial status, or that of any of her business, at issue in this matter, and the records sought by Puig's subpoenas are therefore irrelevant to this action.

Even assuming *arguendo* that Jane Roe's financial and employment records had some nominal relevance to this litigation, such minimal probative value would not outweigh Jane Roe's right of privacy with regard to these highly-sensitive records.[5] Since federal courts recognize state privacy laws as related to discovery requests,[6] it is important to note that mere speculation about the relevance of what *might* be found if discovery was allowed, as Puig reasons here, is an insufficient basis for discovery of matters protected by a constitutional right of privacy. *Davis v. Superior Court*, 7 Cal.App.4th 1008, 1017 (1992); *Mendez v. Superior Court* 206 Cal.App.3d 557, 570-571 (1988) (mere conjecture about what might be found is an insufficient basis for

---

[4] By way of example, to illustrate this distinction, Jane Roe may present evidence that she started crying during work one day while recalling Puig's assault, and therefore, she is emotionally distressed. However, Jane Roe will not argue that, because she started crying during work one day while recalling Puig's assault, either Jane Roe or any of her businesses lost income or earning potential.

[5] The infringement on Jane Roe's right of privacy is further discussed *infra*.

[6] *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019) ("Federal courts also consider privacy rights protected by state constitutions or statutes."); *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995) ("Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests.")

1   discovery of matters protected by the constitutional right to privacy).

2   Additionally, the information sought by Puig is not proportional to needs of the

3   case. Rule 26(b)(1) identifies six factors to consider when determining if the

4   proportionality requirements has been met: (1) the importance of the issues at stake

5   in the action; (2) the amount in controversy; (3) the parties' relative access to the

6   relevant information; (4) the parties' resources; (5) the importance of the discovery in

7   resolving the issues; and (6) whether the burden or expense of the proposed discovery

8   outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). The proportionality requirement

9   ensures that parties receive information necessary to plead their claims and argue their

10  defenses, without unduly burdening either party.

11  As set forth above, the information sought by Puig's subpoenas is of no import

12  whatsoever to the issues at stake in this action, while the undue burden upon Plaintiff

13  that would result from the production of these privacy-protected records would be

14  immense. Thus, Rule 26(b)(1)'s proportionality analysis militates in favor of quashing

15  the subpoenas at issue.

16           **2.   Production of These Highly-Sensitive, Irrelevant Records**

17                **Would Severely and Unnecessarily Infringe Upon Plaintiff's**

18                **Privacy Rights.**

19  The information requested by Puig's subpoenas is not only irrelevant and

20  disproportionate to the needs of the case, but is also protected by Jane Roe's

21  Constitutional right to privacy, such that production of these records would constitute

22  a serious invasion of privacy. *See* California Constitution, Article 1, Section 1. While

23  companies do not have a Constitutional right of privacy, Jane Roe does.

24  Federal courts recognize rights of privacy under state law in response to

25  discovery. *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019); *Breed v.*

26  *U.S. Dist. Court of Northern Dist. of Cal.*, 542 F.2d 1114, 1116 (9th Cir. 1976). When

27  a party seeks to discover documents subject to the constitutional right to privacy, the

28  degree and gravity of the contemplated invasion of privacy must be weighed against

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

1  any countervailing interest for reasonable discovery. *Williams v. Superior Court*, 398

2  P.3d 69, 87 (Cal. 2017). Discoverability is ***not*** broader than admissibility when it

3  comes to discovery of private matters.

4      The party asserting the privacy right must establish a legally protected privacy

5  interest, a reasonable expectation of privacy, and a threatened serious invasion of

6  privacy. *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 654-55 (Cal. 1994).

7  Once these elements are established, the party seeking the information must show an

8  ***important and legitimate countervailing interest*** for the disclosure of the private

9  information to overcome the right of privacy. *Williams*, 398 P.3d at 84; *Hill*, 865 P.2d

10  at 655-56. Notably, "[I]f defendant's legitimate objectives can be readily

11  accomplished by alternative means having little or no impact on privacy interests, the

12  prospect of actionable invasion of privacy is enhanced." *Id.* at 656.

13      Jane Roe has a legally protected privacy interest in both her employment and

14  financial records.  Jane Roe has a fundamental right of privacy regarding her

15  confidential financial affairs under California Constitution, Article 1, Section 1

16  because of the particularly sensitive information contained within one's personal

17  finances.  *Cobb v. Superior Court* (1979) 99 Cal.App.3d 543, 550; *Pioneer Elecs.*

18  *(USA), Inc. v. Superior Court*, 150 P.3d 198, 205 (Cal. 2007); Cal. Civ. Code §

19  3295(c). Similarly, Jane Roe's employment records fall within the constitutionally

20  protected zone of privacy. *Bd. of Trs. v. Superior Court*, (1981) 119 Cal.App.3d 516,

21  522 (disapproved of on other grounds by *Williams v. Superior Court*, 398 P.3d 69

22  (Cal. 2017)); *El Dorado Savings & Loan Association v. Superior Court* (1987) 190

23  Cal.App.3d 342, 345 (disapproved of on other grounds by *Williams*, 398 P.3d at 87

24  n.8). Employment records also include records of Jane Roe's annual or hourly

25  compensation, which, as discussed *supra*, fall within the protected zone of privacy

26  surrounding Jane Roe's personal financial affairs. *See Fortunato v. Superior Court*

27  (2003) 114 Cal.App.4th 475, 480-481 (a party's confidential financial affairs are

28  protected by privacy interests, even where the information sought is relevant to the

**MANLY STEWART FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

litigation).

Jane Roe has a clear expectation of privacy for both categories of documents that is "founded on broadly based and widely accepted community norms." *Hill*, 865 P.2d at 655. "[T]he state's privacy provision 'extends to one's confidential financial affairs as well as to the details of one's personal life[.]'" *Pioneer Elecs.*, 150 P.3d at 203. Further, there is a long history of "legislative concern 'for the protection of the kind of confidential personal data usually included in a personnel file is abundantly clear.'" *Bd. of Trs.*, *supra*,   (1981) 119 Cal.App.3d 516, 522 . It is a long-held community norm that personal financial information and employment records, like personnel files, are confidential.

As discussed above, Puig's purported reasoning for seeking this information is insufficient to establish a legitimate countervailing interest that would justify the invasion of Jane Roe's privacy. Even if Puig could establish that the information contained in Jane Roe's financial and employment records had some minimal relevance to Jane Roe's claims (which, Jane Roe asserts, he cannot), such would not be sufficient to meet the heightened threshold of relevance required to obtain these highly-sensitive records.

In Puig's July 26, 2021 response to Jane Roe's meet and confer letter, Puig argues that with respect to Jane Roe's privacy rights related to her earnings "was waived upon the filing of this action making the allegations of loss of earnings and seeking recovery of lost earnings." Exhibit "3" to <u>DTR</u>. This argument is meritless – particularly in light of the fact that Jane Roe has expressly waived her right to seek such damages. Under Mr. Aljian's logic, any plaintiff seeking monetary damages and/or decreased earnings—whether as a survivor of sexual assault, or injuries relating to a car accident—would surrender all financial privacy upon filing a lawsuit. As this Court is certainly aware—and as evidenced by the breadth of financial privacy—this is not the law.  Instead, this is a classic example of victim shaming and constitutes nothing more than a fishing expedition and only meant to harass and

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

intimidate Jane Roe.

Puig has made no showing whatsoever that he has a legitimate countervailing interest to invade Jane Roe's privacy by subpoenaing her employment history or financial information. Rather, Puig has merely proffered an argument that such documents are generally relevant. Such arguments do not come close to demonstrating a legitimate countervailing interest for this constitutionally protected private information. Given these facts, this Motion should be granted to prevent Puig from seeking this information.

**B.** **A Protective Order is Necessary to Protect Jane Roe If the Motion to Quash Is Not Granted**

**1.** **The Court Has the Power to Grant This Protective Order**

The trial court has wide discretion to impose limits on discovery, and the Federal Rules of Civil Procedure grant this Court broad latitude in crafting protective orders. Fed.R.Civ.Pro. 26(c); *See Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). A protective order may be issued for good cause merely "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R. Civ. Pro. 26(c)(1). For good cause, the Court may enter orders protecting specific information from disclosure or forbidding inquiry into certain matters, in accordance with Rule 26(c). *Id.*

To make a showing of "good cause," the moving party must show specific prejudice or harm will result without a protective order. *Id.* at 1210-11. The seven factors outlined in *Glenmede Tr. Co. v. Thompson* determine whether good cause exists: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

1  entity or official; and (7) whether the case involves issues important to the public. *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 n.5 (9th Cir. 2011) (citing *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3rd Cir. 1995)).

Trial courts are in the "best position to weigh fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the *trial court have substantial latitude to fashion protective orders*." at 1211-12 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (emphasis added)). Moreover, the U.S. and California Constitutions both provide that all people have the inalienable right to privacy. California case law holds that individuals have privacy interests in financial records, personnel records, medical records, and sexual history. *See* e.g., *Eldorado Savings & Loan Ass'n v. Superior Court* (1987) 190 Cal.App.3d 342, 346; *Heda v. Superior Court*, (1990) 225 Cal.App.3d 525, 530; *Britt v. Superior Court* (1978) 20 Cal.3d 844, 863. Here, counsel for Puig has repeatedly propounded unnecessary and intrusive discovery request and Jane Roe is entitled to protection against these abusive discovery tactics.

### 2.   Good Cause Exists to Issue A Protective Order

The *Glenmede* factors strongly support the entry of a protective order for Jane Roe's financial and employment records.[7]

Disclosure of Jane Roe's employment and financial records violates her right of privacy. Like medical records, an individual's employment and financial records are within a constitutionally protected zone of privacy. *See Bd. of Trs. v. Superior Court*, 119 Cal. App. 3d 516, 527 (1981); *Fortunato v. Superior Court* (2003) 114 Cal.App.4th 475, 480-481. Public disclosure of any of these documents would be a grievous violation of Jane Roe's privacy rights and could potentially subject Jane Roe

---

[7] It is Jane Roe's position that any employment records that she may be required to produce would be subject to the currently-operative Protective Order in this matter. To the extent that the Court disagrees, Jane Roe respectfully requests that the Court issue a separate Protective Order as to her employment records.

to substantial financial harm. Given that these documents are completely irrelevant to any claim or defense at issue, any violation of Jane Roe's right of privacy in this respect is unwarranted. Moreover, disclosure of any name of a business associated with Jane Roe risks revealing Jane Roe's identity.

Disclosure of Jane Roe's employment and financial records would cause Jane Roe undue burden--especially considering the irrelevance of the documents--and embarrassment. It would require Jane Roe to locate and assemble extensive records from five different companies. Further, the Subpoenas at issue require disclosure of sensitive financial information. If this information is made public it could negatively affect her ability to get a future loan, get deals or sponsorships from companies to support her social media career, and continue to build a social medial following. Revealing sensitive financial and employment records will affect whether new clients will choose to sign contracts with her to promote their products on her social media platform.

Accordingly, in the event that a Motion to Quash is not granted, there is more than enough good cause for this Court to issue to a protective order.

## VI.   **PUIG'S CONTENTIONS**

### A.   **Puig Does Not Oppose Modification of the Protective Order to Designate Financial Records Confidential.**

Buried at the end of Roe's position statement, Roe moves the Court for an Order issuing a protective order to prevent public disclosure of the responsive documents. The request is unnecessary. First, the Court has already entered a protective order in this action. See ECF No. 94. Second, Puig has no objection to the responding parties or Roe designating the records confidential under the terms of the Parties' Protective Order, with a reservation of rights to challenge the designation where appropriate.

Indeed, Puig offered this to Roe during the meet and confer process, and Roe rejected it. Specifically, in the email dated July 26, 2021, at 10:38 a.m., Puig's counsel stated "[t]he Court has entered a protective order. Puig has no objection to the

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

companies producing the records and designating them confidential. However, this is without waiver of Puig's right to challenge the designation under the terms of the protective order upon review of the records produced." See Declaration of Taylor Rayfield ("Rayfield Decl."), Ex. 3 (see July 26, 2021, email at 2:56 p.m.). Roe rejected the proposal, thereby preserving the right to present such evidence and argument. Id. at Ex. 3 (see July 26, 2021, email at 3:12 p.m.).

Now, Roe burdens the Court with a motion seeking the precise relief Puig had already offered and she rejected. Regardless, Puig has not changed his position regarding the Protective Order. He has no objection to an order modifying the current Protective Order to include all financial records of company's owned by Roe within the category of information that can be designated "confidential," with a reservation of rights to challenge the designation, where appropriate, under the terms of the order.

### B. The Subpoenas Seek Relevant Documents.

Puig is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Information does not need to be admissible in evidence to be discoverable. Id. As the requesting party, Puig has the initial burden of establishing relevance. See United States v. McGraw-Hill Companies, Inc. 2014 WL 164738, at *8 (C.D. Cal., 2014). The December 2015 amendments to Rule 26 of the Federal Rules of Civil Procedure did not shift the burden of proving proportionality to the party seeking discovery. See Fed. R. Civ. P. 26, Adv. Comm. Notes on Rules – 2015 Amendment ("Restoring the proportionality calculation to Rule 26(b)(1) . . . does not place on the party seeking discovery the burden of addressing all proportionality considerations."). Once Puig establishes relevance, the burden shifts to Roe to clarify, explain, and support why the request should be denied. See Blankenship v. Hearst Corp., 519 F.2d 418 (9th Cir. 1975); see also Superior Communs. v. Earhugger, Inc., 257 F.R.D. 215, 217 (C.D. Cal., 2009). For the reasons stated herein, the information is relevant, and Roe cannot meet her shifted burden.

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

Roe contends that the documents requested by the Subpoenas are not relevant because she "has repeatedly made it known that she is not seeking damages for any loss of earnings or earning capacity." See Sec. V(A)(1), supra. She cites to her Rule 26 Disclosure (see Rayfield Decl., Ex. 1) and her verified discovery responses stating that she is not seeking such damages (see Rayfield Decl., Ex. 2). She has made similar statements in emails between the parties. See Aljian Decl., Ex. A, pp. 12-13, 23 (see June 7, 2021, email from T. Rayfield stating "Plaintiff's Financial information have absolutely nothing to do with this litigation. Plaintiff is not making a claim of loss of earnings or earning capacity."). However, the fact remains, Roe and her attorney's contentions contradict the express allegations in her operative pleading, the First Amended Complaint ("FAC").

First, the FAC specifically claims damages for past and future lost income. See Aljian Decl., Ex. B (FAC, ECF No. 19), ¶¶ 20, 28, 34, 42. Paragraph 20 of the FAC, for example, alleges that "Plaintiff will sustain a loss of earning capacity, in addition to lost earnings, past, present, and future." Id.at Ex. B, ¶ 20. Furthermore, Paragraphs 3-4 of her Prayer seek recovery of "loss of earning capacity" and "loss of future earnings." Id. at Ex. B, p. 11. She has also alleged that Puig caused her to suffer permanent physical and mental disabilities: "Plaintiff was injured and hurt in her health, strength and activity, sustaining injuries to [her] body, and shock and injury to [her] nervous system and person, as well as psychological and emotional injuries, all of which said injuries have caused and continue to cause Plaintiff great physical, mental and nervous pain and suffering. Plaintiff is informed and believes and thereupon alleges that said injuries will result in some permanent disability[.]" Id. at Ex. B, ¶¶ 18, 26, 32, 40 (emphasis added).

In light of these allegations, Roe has certainly placed her financial status, earnings, and earning capacity at issue as well as her ability to work and function in the workplace. Therefore, Roe's financial records and that of her businesses (and the income she derives from her businesses) are relevant to the potential and actual

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

damages asserted and her contentions regarding an alleged disability. See Peck v. County of Orange, 2020 WL 4218223, at *6 (C.D. Cal. July 10, 2020) (ruling that a decedent's financial records are relevant to claims and defenses for past and future lost income); Evans v. Affiliated Computer Services, Inc., 2014 WL 12600831, at *5 (C.D. Cal. May 9, 2014) (citing case law compelling disclosure of financial records, such as tax returns, where plaintiffs asserted lost income and wages); Young v. U.S., 149 F.R.D. 199, 204-05 (S.D. Cal. 1993) (concluding that a defendant must be entitled to obtain discovery of tax returns to evaluate and defend against a claim for lost wages). Further, the records are material to the issue of causation and whether her claimed damages are a result of her alleged injuries. Therefore, the Subpoenas seek documents that are directly relevant to Roe's claimed damages and are clearly within the scope of permissible discovery under Fed. R. Civ. P. 26(b)(1).

Second, Roe's representations in her Rule 26 Disclosures arguably do not foreclose the earnings damages. The Rule 26 Disclosures are replete with qualifying language reserving her right to supplement the disclosure and to "update her damages amounts" with newly discovered evidence. Roe further qualifies her disclosure on the basis that her investigation is ongoing and that the "exact amount of damages" she seeks has not been determined at the initial stages of discovery. See Rayfield Decl., Ex. 1, pp. 1:23-2:6, 3:6-12, 4:19-26, 5:6-10. Courts in this District often look directly to the allegations in the operative pleading when ruling on the sufficiency of the scope of damages and computation of claimed damages set forth in a party's disclosure under Fed. R. Civ. P. 26(a)(1)(A)(iii). See e.g., Somers v. Digital Realty Trust, Inc., 2017 WL 2954909, at *9 (C.D. Cal. 2017 Jul. 11, 2017); Frontline Medical Associates, Inc. v. Coventry Health Care, 263 F.R.D. 567, 568 (C.D. Cal. 2009). Roe's Rule 26 Disclosure under Fed. R. Civ. P. 26(a)(1)(iii) is completely silent as to her alleged loss of income and earning capacity (which is information available exclusively to Roe and her businesses). Indeed, there is no express waiver of those damages in the disclosures. It is also ambiguous as to whether she may eventually

seek those damages at a later time.

Third, Roe's discovery responses also arguably do not foreclose seeking recovery of the damages alleged in the FAC. In response to Special Interrogatory Numbers 5-7, Roe states that she "is not making a claim for loss of earnings, including any loss of earning capacity or loss of future earnings." Rayfield Decl., Ex. 2, pp. 9:7-8, 10:3-4, 10:27-11:1. Roe may seek to amend or supplement the response, and she makes no express waiver of these damages at trial.

Puig has made proposals to resolve this dispute. Puig offered to withdraw the Subpoenas if Roe entered a stipulation and proposed order waiving any right to damages related to earnings or earning capacity. See Rayfield Declaration, Ex. 3 (see July 26, 2021, email at 2:56 p.m.); see also Aljian Decl., Ex. A, pp. 12-13 (June 8, 2021, email at 5:40 p.m., relating to similar document requests served directly upon Roe). Originally, during the Parties' telephonic meet and confer regarding the document requests propounded on Roe, Roe agreed to the express waiver. Id. at Ex. A, pp. 8-9 (see June 11, 2021, email at 5:51 p.m.). Immediately thereafter, however, Roe changed her mind and refused to enter the express waiver. Id. After service of the Subpoenas, and during the meet and confer process regarding this Motion, Puig offered to withdraw the Subpoenas if Roe agreed to (1) an express waiver of any claims to loss of earnings and loss of earning capacity and (2) a waiver of rights to present at trial any evidence or argument of alleged inability to work, earn income, attend to business matters, go to work, etc., and any physical or mental disability as it relates to work. See Rayfield Declaration, Ex. 3 (see July 26, 2021, email at 2:56 p.m.). Roe agreed to stipulate that "she is not seeking past or future lost earnings or earning capacity." Id. at Ex. 3 (see July 26, 2021, email at 3:12 p.m.). However, she did not want to foreclose Roe's ability to present evidence that the alleged incident affected her work, her productivity, or her income. She makes a vague reference to that issue in her position statement in footnotes 3-4 regarding crying at work. Although it is difficult to understand for what purpose that testimony might be

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

admissible at trial, it appears to be a backdoor means of introducing evidence of alleged financial harm.

In any event, this is in the discovery phase. The scope of discovery is determined by the pleadings. She is seeking lost earning and earning capacity. She is claiming permanent disabilities. She wants to present that evidence that the incident affected her work and her income. Therefore, Puig is entitled to evidence that the incident had no impact on her productivity or income, including the financial records at issue.

## VII.   The Responsive Documents are Proportional to the Needs of the Case.

Roe identifies the proportionality factors identified in Fed. R. Civ. P. 26(b)(1) and relies on her Rule 26 Disclosures and discovery responses to argue, in conclusory fashion, that the proportionality requirement is not met. See Sec. IV(A)(1), supra. While the burden of establishing proportionality does not fall on Puig alone, each factor is addressed below.

As to the first factor, the Subpoenas seek records that are directly relevant to Roe's claimed damages for loss of earnings and earning capacity (as discussed above). The Subpoenas do not seek Roe's tax returns. However, courts have ruled that even tax returns are discoverable when the plaintiff alleges loss of income and wages. See e.g., Peck, 2020 WL 4218223, at *6 (C.D. Cal. July 10, 2020); Evans, 2014 WL 12600831, at *5 (C.D. Cal. May 9, 2014); Young, 149 F.R.D. 199, 204-05 (S.D. Cal. 1993). Even if Roe does not seek damages for loss of income and earning capacity, the records are probative of the extent of her claimed mental and physical injuries for which she does seek damages, including her alleged physical and mental disability and her requested punitive damages. Accordingly, the records are highly important to the issues at stake in the action.

As to the second factor, the amount in controversy supports disclosure based on the severity of injuries Roe alleges to have suffered and will continue to suffer. Roe omits a computation of damages in her Rule 26 Disclosure for loss of income,

MANLY STEWART FINALDI

19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

but she seeks general damages in excess of $50,000.00 and punitive damages for injuries that she claims are so severe that they will result in permanent disability. See Aljian Decl., Ex. B, ¶¶ 18, 26, 32, 40. Based upon informal discussions, it is Puig's understanding that Roe is seeking millions of dollars in alleged damages. Aljian Decl., ¶ 4.

As to the third and fourth factors, Roe has superior access to the relevant information. And she or her businesses will need to expend minimal resources to produce the requested information. Puig has only requested income statements, balance sheets, cash flow statements, and evidence of compensation to Roe during a five-year period. These are all records that would typically be maintained and generated in the ordinary course of business and easily assessable. Roe has direct access to the information because the records are those maintained by businesses she admits she owns.

As to the fifth factor, the records are important in resolving issues pertaining to both Roe's alleged income, her physical and mental distress-related damages, and Puig's defenses. The Subpoenas seek records limited to less than three years before and after the alleged incident, which provide a comparative basis for evaluating Roe's activities and earnings over the two time periods. Puig disputes that Roe's illustrative example of offering evidence of her crying at work to show symptoms of emotional distress can be isolated from the inference that the alleged assault negatively impacted her income and earning potential, especially when presented to a jury at trial. Taking Roe's example one step further, countervailing evidence that her ability to work and that her businesses did not suffer a negative impact may be used to rebut the severity of her alleged emotional, mental, and physical harm or claims of permanent disability.

And as to the sixth factor, Roe has not provided any facts to show the burden on her or her businesses and the expense associated with producing the requested records, especially where the Protective Order can address any such concerns. Even if she had, she cannot dispute that the highly probative value of the limited scope of

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

1  records outweighs any minimal burden of production.

2       **A.**    **Countervailing Interests Outweigh the Privacy Interests at Issue.**

3       Roe contends that she has a legally protected privacy interest in both her

4  employment and financial records and that such interests preclude disclosure. But

5  privacy rights are not absolute. See Britt v. Superior Court, 20 Cal.3d 844, 855-56

6  (1978). Courts have frequently found that a party's need for information may

7  outweigh privacy rights that another party may have. See e.g., Peck, 2020 WL

8  4218223, at *6 (C.D. Cal. July 10, 2020); Evans, 2014 WL 12600831, at *5 (C.D.

9  Cal. May 9, 2014); Davis v. Kelly Services, Inc., 2017 WL 10562943 (C.D. Cal.

10  2017); Young, 149 F.R.D. 199, 204-05 (S.D. Cal. 1993); Barsamian v. City of

11  Kingsburg, 2008 WL 2168996 (E.D. Cal. 2008); Cook v. Yellow Freight System,

12  Inc., 132 F.R.D. 548, 552 (E.D. Cal. 1990). The courts in the foregoing cases have

13  concluded that employment records, financial records, and even tax returns are

14  discoverable over privacy objections where claims of lost income are alleged. Roe

15  has put her personal private information at issue in this litigation, and she "cannot be

16  allowed to make her very serious allegations without affording [Puig] an opportunity

17  to put their truth to the test." Vinson v. Superior Court, 43 Cal.3d 833, 842 (Cal. 1987).

18  Lastly, Puig served the Subpoenas on corporate business entities, which do not have

19  any constitutional rights to privacy. See Roberts v. Gulf Oil Corp., 147 Cal.App.3d

20  770, 791 (1983). Thus, any privacy interests in income statements, balance sheets,

21  and cash flow statements that are routinely maintained by businesses do not enjoy

22  equal privacy rights as individuals do under constitutional protections.

23       As previously explained, Puig has no objection to designating the responsive

24  financial records confidential under the terms of the Protective Order. Puig does not

25  seek discovery of the information for any purpose other than this litigation and to

26  defend against Roe's claims and damages. Puig does object to an Order quashing

27  production of this information, as it is directly relevant to the claims asserted in the

28  FAC and the damages sought in the FAC.

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

1    DATED:  August 5, 2021          **MANLY STEWART FINALDI**

2

3

4                                By:  /s/ Taylor Rayfield

5                                     TAYLOR RAYFIELD
                                      Attorneys for Plaintiff
6

7

8    Dated: August 5, 2021           DAILY ALJIAN LLP

9

10                                   By: /s/ Reed Aljian

11                                   Reed Aljian
                                     Attorneys for Defendant and Counter-
12                                   Complainant YASIEL PUIG

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION RE MOTION TO QUASH PUIG'S SUBPOENAS

MANLY STEWART FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone  (949) 252-9990